IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| POWER SYSTEMS TECHNOLOGIES, LTD., | ) ) ) | **REDACTED- PUBLIC VERSION**[1] |
| Plaintiff, | ) ) | C.A. No. 20-016-CFC |
| v. | ) ) | ████████████████ |
| JMC PLATFORM FUND I-A, L.P., | ) ) | |
| Defendant. | ) | |

**DEFENDANT'S CONCISE STATEMENT OF FACTS IN SUPPORT OF ITS**
**FIRST MOTION FOR SUMMARY JUDGMENT (NO BREACH)**

John W. Shaw (No. 3362)
David M. Fry (No. 5486)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
dfry@shawkeller.com
*Attorneys for Defendant*

Dated: August 24, 2021

---

[1] These redactions are made solely at the request of PSTL.

| Exhibit | Description | Pages |
|---|---|---|
| Exhibit A | Amended and Restated Mauritius Receivables Securitisation Agreement, as amended and restated on December 22, 2016 | A001-A043 |
| Exhibit B | Agreement for Manufacturing Services between Unipower, LLC and Power Systems Technologies, Ltd., dated July 15, 2016 | A044-A066 |
| Exhibit C | Second Amended and Restated Payment Guaranty between JMC Platform Fund I-A, L.P. and Power Systems Technologies, Ltd., dated December 5, 2017 | A067-A072 |
| Exhibit D | Email from Manish Panpaliya dated January 22, 2018, with PDF attachment | A073-A077 |
| Exhibit E | Compilation of invoices issued to Unipower, LLC | A078-A108 |
| Exhibit F | Email from Manish Panpaliya dated July 10, 2019, with PDF attachment | A109-A110 |
| Exhibit G | Plaintiff's Objections and Responses to Defendant's Second Set of Requests for Production, dated March 1, 2021 | A111-A115 |
| Exhibit H | Letter from B. Vijayandran dated April 14, 2021 | A116-A117 |

1.      Unipower, LLC ("Unipower") and Power Systems Technologies, Ltd. ("PSTL") entered into an Agreement for Manufacturing Services effective July 15, 2016 (the "MSA").  (A044).

2.      PSTL and JMC Platform Fund I-A, L.P. entered into a Second Amended and Restated Payment Guaranty dated December 5, 2017 (the "Guaranty").  (A067).

3.      Under the Guaranty, JMC is liable for "Guaranteed Obligations." (A067, §§ 1.1, 1.4).

4.      "Guaranteed Obligations" are "any amount or amounts that may become due and payable by Unipower . . . to PSTL pursuant to a bona fide invoice issued by PSTL to Unipower under, and in accordance with the terms and conditions of, the [MSA]."  (A067, § 1.2).

5.      The Guaranty is governed by Delaware law.  (A070, § 4.4).

6.      PSTL assigned all right, title, and interest in any amounts due and payable by Unipower to Flex Jersey Limited ("Flex Jersey").  (A005-06, § 1.2; A008, § 3.1; A009, § 3.4; A078-108; A073; A109-10).

7.      PSTL's assignment to Flex Jersey is "absolute and irrevocable[.]" (A009, § 3.6).

1

/s/ David M. Fry
John W. Shaw (No. 3362)
David M. Fry (No. 5486)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
dfry@shawkeller.com

Dated: August 24, 2021                    *Attorneys for Defendant*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to the Court's November 6, 2019 Standing Order, I hereby confirm that this statement complies with the type and number limitations set forth in the Standing Order. I certify that this document contains 167 words, which were counted using the word count feature in Microsoft Word, in 14-point Times New Roman font. The word count does not include the cover page, table, or the counsel blocks.

<div align="right">

*/s/ David M. Fry*

John W. Shaw (No. 3362)
David M. Fry (No. 5486)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
dfry@shawkeller.com
*Attorneys for Defendant*

</div>

# Exhibit A

**REDACTED IN ITS ENTIRETY**

# Exhibit B

**AGREEMENT FOR MANUFACTURING SERVICES**

**Unipower, LLC.**

**And**

**Power Systems Technologies, Ltd.**

**THIS AGREEMENT** ("**Agreement**") entered into and made effective as of July 15, 2016 (the "**Effective Date**"), is by and between:

**Power Systems Technologies, Ltd.**, a company organized under the laws of Mauritius, and having its place of business at Level 3, Alexander House, 35 Cybercity, Ebene, Mauritius ("**Supplier**"); and

**Unipower, LLC.**, a limited liability company organized under the laws of the State of Delaware, USA, and having its place of business at 3900 Coral Ridge Drive, Coral Springs, Florida, 33065 USA ("**Buyer**").

## 1.0    BACKGROUND

**Scope.** Buyer is in the business of developing, producing, and marketing products. Supplier manufactures products and provides services and, subject to the terms and conditions set forth herein, agrees to sell or license products and parts it will or has manufactured on behalf of Buyer, to Buyer, for Buyer's resale or license to Buyer's customers. The Parties may, from time to time, agree to additional or new products or services to be provided by Supplier for Buyer. Such additional or new products and/or services may be added as an amendment to this Agreement in the form and manner set out in the Appendix to Exhibit A.

## 2.0    DEFINITIONS

The following terms will have the meanings as set out herein:

**2.1**    **"Delivery Date"** - is defined in Section 4.

**2.2**    **"Forecast"** – Expresses Buyer's estimated Product, Part and/or service parts demand, typically in monthly buckets, spanning a minimum of twelve (12) months.

**2.3**    **"Intellectual Property"** - means all rights, title and interests of a Party in respect of or in connection with any:

(a)    discoveries, inventions, processes and manners of manufacture; patent rights; semiconductor, circuit layout or topographical rights; copyright and rights in the nature of or analogous to copyright (including without limitation moral rights); trademark or service mark rights; trade or business names; design rights; database rights; mask work rights; drawings; technical data; formulae; trade secrets; know-how; related information (including without limitation know how); or any other proprietary rights in any country, regardless of whether such rights are capable of registration, registered or otherwise; and

(b)    applications, registrations or renewals in any country in respect of or in connection with any of the foregoing.

1

ACTIVE/84843650.5

**2.4** "**Lead Time**" - The number of calendar days measured from the time Supplier receives a Purchase Order until Supplier ships Products and Parts.

**2.5** "**Long Lead Time Components**" – Any component or part that has a lead time longer than sixty (60) days, provided that for any such component or part to be designated a "Long Lead Time Component" hereunder, such designation will require advanced notification and further discussion with Buyer"

**2.6** "**MOQ Component(s)**" - Any Parts for which the minimum quantity of such Parts that the Supplier is required to procure from the relevant vendor, is greater than the quantity of such Parts required to fulfill:

(a)   any Purchase Order for a Product; or
(b)   any projected requirement for a Product,

as the case may be, and shall include Parts that are sold in bulk quantities, multiple-packs, reels or tapes, or purchased in specific quantities corresponding with the associated quoted costs of the Supplier. All MOQ Components will require notification and approval from Buyer.

**2.7** "**Part**" or "**Parts**" - Any materials, component, subassembly, field replaceable unit, or other module of the Product(s) sold under this Agreement.

**2.8** "**Party** or **Parties**" - means the Buyer and/or the Supplier, as the case may be.

**2.9** "**Person**" **-** means an individual, partnership, corporation, association, trust, joint venture, Limited Liability Company, limited liability partnership, unincorporated association or other entity.

**2.10** "**Product**" or "**Products**" – Any finished assembly, subassembly or module built by Supplier under this Agreement according to Buyer Specifications which are set out in Exhibit A including any and all modifications, changes and improvements made during the term of and pursuant to the terms of this Agreement.

**2.11** "**Purchase Order**" or "**Order**" - A document issued by Buyer for the purpose of ordering Products or Parts to be manufactured and/or procured pursuant to this Agreement.

**2.12** "**Specifications**" - The specifications specifically referenced as the Product Specifications for the Product(s) listed in Exhibit A, including any and all written modifications, amendments or changes thereto made pursuant to this Agreement.

**2.13** "**Supplier Affiliate**"**-** means, with respect to Supplier, any Person that directly or indirectly, through one or more intermediary's controls, is controlled by or is under common control with Supplier. For purposes of this definition, "control" means with respect to any Person, the power, direct or indirect, to control the management and policies of such Person by contract or otherwise. For purposes of this Agreement, any subcontractor utilized by Supplier shall not constitute a Supplier Affiliate.

2

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY PURSUANT TO D. DEL. LR 26.2            JMC0007241

### 3.0   FORECAST/ORDER PLACEMENT/FLEXIBILITY

**3.1   Buyer Forecast.**  Forecasts are for planning purposes only, and for the purpose of ordering Parts. Buyer will update Forecasts at least monthly and provide a rolling twelve (12) month Forecast.

Buyer hereby authorises Supplier to procure all Parts (including any MOQ Component, Long Lead Time Component, non-cancellable non-returnable component) during the Term, in accordance with Buyer's Monthly Forecast.

**3.2**   Except for Long Lead Time Components and MOQ Components, Supplier will plan to meet the remaining Forecast. Supplier will utilize the Forecast to identify Long Lead Time Component and MOQ Component issues and capacity constraints. Provided that Supplier only orders Parts within their lead time or as agreed, Buyer authorizes Supplier to place orders for Long Lead Time Components, MOQ Components and non-cancellable non-returnable components in order to meet the Forecast. Supplier agrees to provide Buyer a list of the Long Lead Time Components and MOQ Components and non-cancellable non-returnable components and provide periodic updates from time to time.

**3.3   Placement/Acceptance of Orders.**  On a daily basis Buyer will issue Purchase Orders.

Provided quantities in Purchase Orders are the same quantities of Products that were earlier forecasted by Buyer and Supplier has not notified Buyer of its objection, in writing, to any of the terms of any such Forecast, Supplier will acknowledge acceptance of the Purchase Order in writing within five (5) business days of Supplier's receipt of such Purchase Order. In addition, Supplier will acknowledge scheduled delivery date within ten (10) business days

**3.4   Purchase Order / Forecast Variation.**  Buyer may terminate a Purchase Order by giving Supplier forty-five (45) days prior written notice. Supplier will identify any costs within seven (7) business days associated with this termination. Notwithstanding the foregoing, Buyer will be responsible for:

(a)    Long Lead Time Components, MOQ Components and non-cancellable non-returnable components at the quoted cost in the possession of or on order with the vendors, which are ready for shipment to Supplier, and which cannot be cancelled or consumed by Supplier, or which cannot be sold or returned to the   vendors;

(b)    all Parts at the quoted cost purchased by the Supplier within applicable lead times to fill a Purchase Order or which Buyer has authorized to be purchased which are on hand or on order on the date of cancellation of Purchase Order;

(c)    work-in-progress which cannot be consumed or used in next three (3) months of Supplier's production schedule after date of cancellation or change of delivery date;

(d)    all actual, direct costs incurred by Supplier for the work–in-progress (including actual costs of any assembly and manufacturing, and labor costs directly related to work-in- progress);  and

(e)    finished goods conforming to the applicable Product specification, at the agreed price, ready for shipment to Buyer under the cancelled portion of the Purchase Order and without projected usage in the next three (3) months.

ACTIVE/84843650.5

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY PURSUANT TO D. DEL. LR 26.2     JMC0007242

**3.5   Excess and Obsolete Inventory ("E&O")**

(a)   Prior to invoicing Buyer for E&O, Buyer and Supplier will undertake commercially reasonable efforts and take like action to mitigate excess & obsolete inventory.

(b)   Supplier shall provide Buyer with a monthly update of excess & obsolete inventory which arises from, without limitation:

   (i)     program cancellation or unique configuration changes;
   (ii)    Product design changes pursuant to Change Order;
   (iii)   a Purchase Order variance or delay in shipment dates, which is specifically requested by Buyer;
   (iv)   a field replacement unit order variance, which is specifically requested by Buyer;
   (v)    any inventory of Products or Parts on hand or on order upon the termination of the Agreement; or

   Such items are "E&O Items".

(c)   Supplier and Buyer will utilize reasonable commercial efforts to attain maximum financial recovery of the identified E&O Items and will jointly work to establish a disposition process.

(d)   Buyer will pay invoices for E&O pursuant to the terms in Section 4.0.

**4.0   PAYMENT, LEAD TIME AND DELIVERY**

**4.1   Lead Time.** Buyer shall issue to Supplier Purchase Orders no less than four [4] weeks before the required shipment date

**4.2   Shipment.** Supplier shall notify Buyer when Supplier has knowledge of any potential delay in delivery due to the reasons set out in Section 18.1.  If only a portion of the Products is available for shipment to meet the Delivery Date, Supplier shall so notify Buyer and ship the available Product unless directed by Buyer to reschedule the entire shipment.

**4.3   Packaging.** All Products shall be packaged, marked, bar-coded, stored or otherwise prepared for shipment in accordance with any applicable Buyer Specifications communicated to, and accepted by Supplier.

**4.4   Risk of Loss and Title.** Title and risk of loss and damage to Products and Parts will pass from Supplier to Buyer EX WORKS (INCOTERMS 2010) Supplier's manufacturing facility (such date hereinafter referred to as the agreed "**Delivery Date**").

**4.5   Payment Terms.** Payment for Orders by Buyer to Supplier, and/or any other payments due by Buyer to Supplier under this Agreement, will be net sixty (60) days from the date of invoice. Supplier shall be entitled to invoice Buyer upon shipment of the relevant Products or Parts.  If Buyer fails to pay amounts due in accordance with the foregoing, Buyer shall pay one and one-half percent (1.5%) monthly interest on all late payments.

ACTIVE/84843650.5

4

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY PURSUANT TO D. DEL. LR 26.2          JMC0007243

## 5.0   PRODUCT AND ENGINEERING SERVICES PRICING

**5.1   Product / Parts Pricing.** The Supplier's pricing for Products and Parts shall be as quoted to Buyer on a six (6) months basis and may be changed at any time as agreed to in writing with ninety (90) days advanced notice. All prices for Products, Parts, assemblies and other material needed to manufacture the Products. Prices quoted will be as per Appendix 2 are in U.S. Dollars or such other agreed currencies and are EX WORKS (INCOTERMS 2010).

The prices of the Products or Parts shall be inclusive of all packaging, transportation, insurance and freight charges payable or incurred by Supplier in relation to the delivery by the Supplier of the Products or Parts to Buyer.

**5.2 Pricing Assumptions.**   Buyer acknowledges that the prices set forth in a quotation accepted by Buyer are based on the assumptions discussed between the Parties and accepted by Buyer.  If Supplier experiences any increase or decrease in cost as a result of changes in the assumptions, Parties shall review the prices/pricing model of the affected Products and/or Parts.

**5.3   Engineering Support Services for Buyer.** Supplier and Buyer will mutually agree to rates that Buyer will be charged for prototype services described below and/or Buyer's requests for certain sustaining engineering services as may be required from time to time.

**5.4   Prototypes.** Supplier's pricing for prototypes shall be as quoted to Buyer from time to time.

## 6.0   BUYER EQUIPMENT

**6.1.** Any Buyer equipment placed in Supplier's care, custody, and control shall be held at Supplier's risk and shall be insured by Supplier at its expense, with loss payable to Buyer, in an amount equal to replacement cost.  Supplier shall have no authority to dispose of any Buyer equipment without Buyer's prior written consent.

**6.2.** Supplier shall be responsible for the routine maintenance of Buyer equipment in good working condition (save and except normal wear and tear).  Routine maintenance costs are the responsibility of Supplier.  Repair and replacement costs due to fair wear and tear or end of service life of the Buyer equipment are the responsibility of Buyer.

**6.3.** Upon request or upon termination of this Agreement, Supplier will deliver all such Buyer equipment to Buyer in a timely manner and Buyer shall bear the costs.

**6.4.** Supplier will not permit any lien or other encumbrance to be placed against Buyer equipment when in Supplier's care, custody and control.  With respect to Buyer equipment purchased on Buyer's behalf, Supplier agrees that title to such Buyer equipment will transfer to Buyer upon full payment by Buyer

**6.5.** Supplier will provide all test equipment for production processes and acceptance testing. Reimbursement for test equipment that is unique to making and testing the Product said equipment shall be in accordance with the schedule outlined in appendix 6. Upon fulfillment of the amortization schedule, title will pass to Buyer. Supplier shall maintain an asset register along with a maintenance log. If the Buyer does not buy the necessary volume of Product over the agreed upon amortization period then the Buyer shall pay the lump sum unpaid balance.

## 7.0   TAXES

5

ACTIVE/84843650.5

**7.1** All Product and Part prices and service rates do not include any present or future sales tax, value added tax, goods and services tax, service tax, consumption tax, any foreign federal, state or local sales, use, property, custom duties, excise, or any similar taxes that may be levied upon Supplier as a result of sale or shipment of any Product or Part or provision of services provided under this Agreement other than those imposed on overall income, all of which shall be paid by Buyer solely. If Supplier has paid for any such amounts, Buyer shall, upon demand, reimburse Supplier forthwith.

**7.2** In the event, that any amounts payable by Buyer to Supplier under this Agreement are subject to any withholding tax, Buyer shall provide the necessary supporting documentation to Supplier relating to the payment of such withholding taxes to enable Supplier to obtain the credit for such tax payment in its country of incorporation.

## 8.0 WARRANTY

**8.1 General Warranty Terms.** Supplier warrants that all Products and Parts manufactured and supplied herein will conform to the Specifications, and Buyer has the right to inspect and reject nonconforming goods at Supplier's location prior to shipment, and shall, for a period of twenty four (24) months from date of shipment, be free from defect in:

(a) Workmanship; and

(b) Parts, save and except for latent defects, which could not be detected through the agreed quality control procedures in the manufacturing process.

**8.2** In no event shall Supplier be liable for any defects or failures resulting from:

(a) Buyer's product design or Specifications, including without limitation design functionality failures, Specification inadequacies, any waiver of or deviation from the Specifications approved by Buyer or failures relating to Products functioning in any intended manner, for any particular purpose or in any specific environment;

(b) Products damaged in shipment or otherwise without fault of Supplier;

(c) defects or non-conformance of Products due to negligence, misuse, accident, abuse, improper care or storage, abnormal temperature, moisture or other operating conditions, in each case to the extent caused by or attributable to Buyer and/or third parties;

(d) Damage to Products which have been tampered with or altered or modified in any way other than with the consent of Supplier;

(e) Defective Buyer-furnished or consigned items, including but not limited to, test equipment or test software or Parts;

(f) Latent defects in BOM Parts that Supplier could not reasonably discover utilizing Buyer-specified inspection and tests utilizing Industry standards;

(g) Buyer's failure or refusal to install engineering changes recommended by Supplier;

(h) Products without specified functional tests to allow adequate failure diagnosis or failures due to correlation differences between Buyer-approved testing at Supplier and any other tests performed by Buyer;

ACTIVE/84843650.5

6

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY PURSUANT TO D. DEL. LR 26.2

JMC0007245

(i)     Products found to be non-operable which have passed all Buyer-specified tests prior to shipment, and on return, yet failed some functionality or performance criteria in the field; or

(j)     BOM Parts specified or selected by Buyer.

**8.3     Warranty Period.** Claims for Products or Parts not complying with this warranty will be submitted by Buyer to Supplier within twenty-four (24) months (the "**Warranty Period**") from the agreed Delivery Date for such non-complying Product or Part (hereinafter referred to as "**Warranty Returns**"). All Warranty Returns are to be sent back to Supplier freight prepaid. Supplier shall, at its own cost within sixty (60) days of receipt, repair or replace and return such warranty returns to Buyer or Buyer's customer as directed by Buyer.   Such prepaid freight shall be reimbursed to Buyer if the Warranty Return is in breach of the warranty in Section 8.1.

### 8.4     RMA Procedure

(a)     In the event that the Buyer discovers that the warranty in Section 8.1 is breached in any respect in relation to any Warranty Returns, the Buyer shall, within fourteen (14) days of such discovery, notify the Supplier in writing, which notice shall contain:

      (i)     A full description of the Warranty Return;
      (ii)    The serial number of the Warranty Return;
      (iii)   The Supplier's product or part number for the Warranty Return;
      (iv)    A full and complete description of the manner in which the Warranty Return is in breach of the warranty in Section 8.1 and any and all alleged defects in the Warranty Return; and
      (vi)    a request for a RMA Number.

[b]     Upon receipt of the RMA Number (and no earlier), the Buyer shall, within thirty (30) days of such receipt, at the Buyer's risk, cost and expense, return the Warranty Return to the Supplier at the address specified by the Supplier, there will be separate addresses provided by Supplier for Europe, Asia and North America for that purpose in strict compliance with the following:

      (i)     the Warranty Return must be packed in the original packaging and containers in which the Warranty Return was delivered to the Buyer or failing which, the Warranty Return must be packed in packaging and containers which provide the Warranty Return with the same or greater level of protection against damage;

      (ii)    the Buyer shall utilize proper handling procedures in the packing and shipping of the Warranty Return;

      (iii)   Buyer will supply to Supplier the shipping documentation as required for customs purposes; and

      (iv)    the RMA number provided by the Supplier must be marked on the packaging of the Warranty Return in an obvious and indelible manner.

(c)     Supplier shall not be required to accept, and shall have no obligation in relation to any Out of Warranty Return in respect of which Section 8.4 have not been strictly complied or which is returned to the Supplier after the expiry of Warranty Period.

(d)     Where the Supplier's inspection indicates that the Warranty Return is not in breach of the warranty in Section 8.1 or that such Warranty Return had been modified, repaired or altered by any person other than the Supplier or a person duly authorized by the Supplier, the Supplier

7

ACTIVE/84843650.5

shall notify the Buyer of the same (together with supporting documentation) and the Supplier shall cease to have any further obligation in relation to such Warranty Return. The Supplier will arrange for the Warranty Return to be returned to the Buyer at the Buyer's risk and costs.

(e)     Where the Supplier's inspection indicates that the Warranty Return is in breach of the warranty in Section 8.1 and the failure has not been caused by any of the circumstances set out in Section 8.2, the Supplier shall either:

  (i)     repair the Returned Product at the Supplier's expense; or
  (ii)    replace the Returned Product at the Supplier's expense.

In either case, the warranty in Section 8.1 shall apply in respect of the repaired or replacement Product (as the case may be) until the later of (aa) the expiry of thirty (30) days after the date that the repaired or replacement Product is delivered by the Supplier to the Buyer and (bb) the date the Supplier's warranty under Section 8.1 in respect of the Warranty Return would have expired if such Warranty Return had not been in breach of the warranty in Section 8.1.

**8.5     No Implied Warranties.** There are no warranties other than those specifically set forth in this Agreement and all terms, conditions, warranties, undertakings and representations implied by statute, common law, custom, trade usage or otherwise are hereby wholly and expressly excluded, including, but not limited to, any implied warranty of quality or fitness for a particular purpose or any implied warranty of merchantability. Supplier further makes no warranty that the Products will meet any specifications or quality not made known to and/or expressly agreed to by Supplier in writing, or that the Products have or will receive the approval of or be certified by any federal, state, local, or foreign government agency or any other person or certifying entity, and Supplier assumes no responsibility for obtaining such any such approvals or certifications, unless specifically agreed.

**8.6     Parts Warranty.** Supplier will pass through any warranty provided by Parts vendors, but shall not independently warrant Parts. Supplier shall support Buyer with respect to the pass-through Parts warranties by working with Parts vendors in the return and failure analysis for failed Parts.     Support for Buyer in this regard may include, upon mutual agreement, commencing litigation against Parts vendors provided that Buyer agrees to pay the associated actual costs of such litigation and provide such assistance and evidence as may be required.

If a Product under warranty should fail due to a defective Part which is still within the Parts warranty, then at Buyer's request, Supplier shall obtain and install the replacement Parts in such Product.     If the Parts is no longer under warranty, Buyer shall pay for the Parts cost at quoted cost and agreed labour charges.

In the event of any Parts  failure or defect which arises out of any design specifications and/or application discussed and agreed between the Parts vendor or manufacturer and the Buyer, Buyer shall address the Parts  warranty issue with Parts  vendor or manufacturer directly.

## 9.0     LIABILITY

**9.1**     Other than with respect to any breach of Section 10.0, neither Party shall be liable to the other Party for any incidental, consequential, special and punitive damages, or for any damages resulting from loss or interruption of business, lost data or lost profits, arising out of or relating to this Agreement, whether liability is based on contract, breach of warranty (express, implied) or otherwise and whether asserted in contract, tort (including negligence and strict product liability) or otherwise, and irrespective of whether the Parties have advised or been advised of the possibility of any such damages.

8

ACTIVE/84843650.5

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY PURSUANT TO D. DEL. LR 26.2          JMC0007247

9.2    Except with respect to (i) Supplier's obligations of indemnification as set forth in this Agreement or (ii) a breach of Supplier's obligations of confidentiality hereunder or (iii) to the extent a trier of fact fails to uphold any other limitation of liability hereunder, then notwithstanding anything to the contrary in this Agreement, Supplier's total liability to Buyer hereunder shall be subject to an aggregate cap in accordance with the following: the total, aggregate and cumulative liability of Supplier, if any, for damages for all claims under this Agreement of any kind whatsoever, regardless of legal theory, and whether arising in tort or contract, shall not exceed at any given time an amount determined as follows:  ten percent (10%) multiplied by the total amounts received by Supplier from Buyer on account of the sale of Products hereunder in the immediately preceding twelve (12) months less any claim(s) previously paid by Supplier to Buyer at any time during the term of this Agreement.  Notwithstanding the foregoing, the cap set forth in the previous sentence shall not apply to limit (i) Buyer's obligation hereunder for payments for Product, Parts or other charges, (ii) a Party's obligation hereunder to indemnify the other Party or (iii) Supplier's warranty obligations hereunder.

**9.2**    Each Party shall take all commercially reasonable steps to mitigate any of its losses (including, to the extent consistent with sound business judgment, incurring costs only to the minimum extent necessary to remedy the breach which gives rise to the losses) upon becoming aware of any event which would reasonably be expected to, or does, give rise thereto.  The Parties shall cooperate with each other with respect to resolving any claim or liability with respect to which one Party is obligated to indemnify the other Party hereunder, including by making commercially reasonable efforts to mitigate or resolve any such claim or liability.

## 10.0  CONFIDENTIALITY

**10.1**    The exchange of Confidential Information will be governed by this Section 10. "**Confidential Information**" is any information reasonably related to this Agreement or belonging or relating to either Supplier or any Supplier Affiliate or Buyer or any Buyer affiliate, their respective business, affairs, activities, products or services which information is proprietary and confidential to the disclosing party.  Confidential Information disclosed in documents or other tangible form must be marked as confidential or reasonably recognizable as confidential at the time of disclosure. Confidential Information in oral or other intangible form must be identified (or reasonably recognizable) as confidential at the time of disclosure, to assure the receiving party's understanding with respect to its nature.   Confidential Information does not include information that: (a) is or becomes public knowledge through no wrongful act of the receiving party; (b) is already known to the receiving party through no wrongful act of the receiving party; (c) is rightfully obtained by the receiving party from any third party without similar restriction and without breach of any obligation owed to the disclosing party; (d) is independently developed (as evidenced in writing) by or for the receiving party without reference in any respect to any Confidential Information of the disclosing party; (e) is furnished to a third party by the disclosing party without a similar restriction on the third party's rights; (f) is approved for release by written authorization of the disclosing party; or (g) is disclosed pursuant to a lawful requirement or request of a governmental agency, regulatory authority or any securities exchange where the securities of the receiving party are listed, provided that in the event of disclosure pursuant to a lawful requirement or a request of a governmental agency, regulatory authority or any securities exchange, the receiving party provides to disclosing party with prompt  notice prior to such disclosure in order to allow the disclosing party reasonable time to seek a protective order or other appropriate remedy and/or waive compliance with the provisions of this Section 10.0 and, in the event that such protective order or remedy is not obtained, the receiving party will furnish only that portion of the Confidential Information as is required and will exercise its best efforts to obtain reliable assurances that confidential treatment will be accorded to such Confidential Information.

9

ACTIVE/84843650.5

**10.2**    Each Party undertakes to maintain and procure the maintenance of the confidentiality of the other Party's Confidential Information at all times and to keep and procure the keeping of all Confidential Information belonging to the other Party secure and protected against theft, damage, loss or unauthorized access, and not at any time, whether during the term of this Agreement or at any time thereafter, without the prior written consent of the other Party, directly or indirectly, use or authorize or permit the use of any of the other Party's Confidential Information other than as necessary for the sole purpose of the performance of its rights and obligations hereunder, or to disclose, exploit, copy or modify any of the other Party's Confidential Information, or authorize or permit any third party to do the same.    Each Party undertakes to disclose the other Party's Confidential Information only to those of its or its respective Affiliates' employees, agents and contractors to whom, and to the extent to which, such disclosure is necessary for the purposes contemplated under this Agreement, and to procure that such employees, agents and contractors are made aware of and agree in writing to observe the obligations contained in this Section 10. Supplier will not use any Buyer confidential information to make, procure or market Products except for Buyer.    Except as required by law or by the order of a court of competent jurisdiction or any securities, exchange or listing agency, neither Party will publicize or otherwise advertise the existence of this Agreement or its terms without the prior written consent of the other Party. Upon the expiration or the termination of this Agreement, either Party may request the other to return or destroy all documents containing Confidential Information of that Party in the other Party's possession or such other Party shall so promptly comply.

## 11.0    INTELLECTUAL PROPERTY

### 11.1    Buyer Intellectual Property
(a)    Supplier acknowledges and agrees that, except as expressly provided in this Agreement, it does not own, or have any entitlement to the Buyer Intellectual Property.

(b)    Buyer grants to Supplier, for the term of this Agreement a non-exclusive, royalty-free license to use the Buyer Intellectual Property, solely for the purposes of performing its obligations under this Agreement.

(c)    Supplier shall affix such trademarks and/or trade names of Buyer on Products manufactured by Supplier for sale to Buyer under this Agreement as set forth in the Specifications.    All such trademarks and/or trade names to be so affixed are recognized by Supplier to be the property of Buyer and Supplier shall not sell or otherwise distribute or dispose of Products bearing such trademarks or trade names to any third party.    No proprietary or other rights with respect to the trademarks, trade names or brand names of either Party hereto is conferred either expressly or by implication, upon the other Party.

### 11.2 Supplier Intellectual Property
(a)    Buyer acknowledges and agrees that, except as expressly provided in this Agreement, Supplier shall retain sole and exclusive ownership of any and all intellectual property owned or created by Supplier prior to, conceived or developed by Supplier independent of this Agreement. To the extent that Supplier creates any improvements to Unipower technology or otherwise creates new Intellectual Property based on Unipower's technology, Unipower shall have rights to that property under this Agreement.    Supplier hereby assigns and transfers, and will assign and transfer, to Buyer all right, title and interest in any such improvements and Intellectual Property, and all intellectual property rights in or to such improvements and Intellectual Property or that claim or cover such improvements and Intellectual Property.

ACTIVE/84843650.5

10

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY PURSUANT TO D. DEL. LR 26.2              JMC0007249

**11.3 Third Party Intellectual Property**
(a) To the best of Buyer's knowledge, the Products and use thereof do not infringe or misappropriate any third party Intellectual Property.

**11.4 Intellectual Property Warranties**
Each Party represents and warrants to the other that to the best of its knowledge, information and belief:

(a) it is fully entitled to grant a license of its Intellectual Property to the other Party in accordance with the preceding sections;

(b) the Party has no knowledge that its Intellectual Property, and the receipt, use or exploitation by it or the other Party of those Intellectual Property in accordance with this Agreement, infringe the rights of any third party; and

(c) there are no known legal actions, or proceedings that affect or might affect the Party's Intellectual Property, or its right to grant a license to the other Party in accordance with the preceding Sections.

## 12.0 INDEMNIFICATION FOR INTELLECTUAL PROPERTY INFRINGEMENT

**12.1 Buyer's Intellectual Property Indemnity.** Buyer agrees to defend, indemnify and hold harmless, Supplier from and against any loss, cost, liability and expense (including reasonable attorneys' fees and court costs) incurred by or assessed against Supplier arising from any suit or legal proceeding which may be brought or threatened against Supplier alleging acts or omissions by Supplier required of Supplier by this Agreement, including, without limitation, incorporating any design elements provided by Buyer, that resulted in infringement by the Products/Parts, except for any matter for which Supplier indemnifies Buyer pursuant to Section 12.2, provided that Buyer shall have the sole right to control and conduct the defense and/or settlement of such claim, threat, suit or legal proceeding. The Buyer may not reach any settlement which includes injunctive or other non-monetary relief without first obtaining Supplier's consent to such settlement, which consent shall not be unreasonably withheld or delayed. Supplier shall, at Buyer's request and expense, provide relevant information and reasonable cooperation in the defense of any claim, threat, suit or legal proceeding. Buyer shall have the right, at its own expense, to procure for Supplier the right to continue using the Buyer's Intellectual Property, specifications and technical information and Products/Parts so that it becomes non-infringing and in the event that it is unable to do so, Supplier may terminate this Agreement and the terms of Section 13.2 shall apply.

**12.2 Supplier's Intellectual Property Indemnity.** Supplier agrees to defend and indemnify and hold Buyer harmless from damages as a result of Supplier's manufacturing process or testing methodology, or any breach by Supplier of this Agreement and where Supplier has failed to: (i) procure the right for Buyer to continue using and selling the Products; (ii) replace with a non-infringing process or methodology; or (iii) modify the process or methodology to be non-infringing. Supplier has the sole right to control and conduct the defense and/or settlement of such claim, suit or legal proceeding, but Supplier may not reach any settlement to the detriment of Buyer without first obtaining Buyer's consent to such settlement, which consent will not be unreasonably withheld.

The foregoing indemnity fully defines Supplier's obligation for infringement. Such obligations

ACTIVE/84843650.5

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY PURSUANT TO D. DEL. LR 26.2       JMC0007250

shall specifically not apply to:

(a)    an infringement claim resulting from additions or changes in or to the Product made by Buyer or any third party or from use in combination with other equipment not supplied by Supplier; or

(b)    an infringement claim which results from compliance by Supplier with the Specifications furnished by Buyer.

## 13.0  TERM AND TERMINATION

13.1 Term.  This Agreement will continue for an initial term of three (3) years from its Effective Date and will be automatically renewed thereafter for successive one (1) year periods, unless notice of termination is given by Buyer or Supplier at least 180 days prior to such termination, or unless earlier terminated under any other provision of this Agreement.

Termination of this Agreement by either Party will not prejudice it or the other Party to recover any money amounts or require performance of any obligations due at the time or after the termination.

**13.2 Inventory Transition.**    Upon the expiration or termination of this Agreement for any reason, Buyer will be responsible for costs, charges and fees actually incurred by Supplier to cancel or return any portion of the inventory to vendors and, upon mutual agreement, the cost to modify the Products for other programs.  Supplier will invoice and Buyer will purchase and pay at Supplier quoted cost, the inventory remaining after applicable vendor cancellations and returns and after other program use, as follows:

(a)    Long Lead Time Components/ MOQ Components/ non-cancellable non-returnable components  in the possession of or on order with vendors, which are ready for shipment to Supplier, and which cannot be cancelled or consumed by Supplier;

(b)    all Parts purchased by the Supplier within applicable lead times including Long Lead Time Components/ MOQ Components/ non-cancellable non-returnable components to fill a Purchase Order or which Buyer has authorized to be purchased which are on hand or on order on the date of termination notice or notice period;

(c)    all work-in-progress under Purchase Order(s) received before the date of termination notice or notice period;

(d)    all actual, direct costs incurred by Supplier for the work in progress (including actual costs of any assembly and manufacturing, and labor costs directly related to work in progress); and

(e)    all finished goods conforming the applicable Product specification, at the agreed price, ready for shipment to Buyer under valid Purchase Order received before the date of termination notice or notice period.

Buyer will be responsible for any negative price differentials between the price Supplier paid for the Parts inventory, Long Lead Time Components, MOQ Components and non-cancellable non-returnable components, and/or Buyer approved economic order quantity and the price at which Supplier was able to return, dispose and/or utilize the items on other programs. Supplier will credit Buyer for any positive price differentials.

**13.3    Costs of Installation.**    In the event the termination of this Agreement for whatever reason, occurs before the expiry of the initial term, Buyer shall additionally reimburse Supplier

12

ACTIVE/84843650.5

for all the costs and expense Supplier has incurred for installation, commissioning and/or qualification of the production line which had been established specifically for the Product.

**13.4** The provisions and requirements of this Section 13 shall survive the term or termination of this Agreement.

## 14.0 BINDING AGREEMENT; ASSIGNMENT

Each of Buyer and Supplier acknowledges and agrees that this Agreement constitutes the valid and binding obligation of with respect to each of Buyer or Supplier, as the case may be, and such Agreement is enforceable against each of Buyer and Supplier, as the case may be, in accordance with its terms. This Agreement, including any rights and obligations it governs, may be assigned in whole to a Successor Entity (as defined below) with written notice from Buyer to Supplier at any time during performance of this Agreement. This Agreement will be binding upon any successor to which either Party directly or indirectly transfers all or a substantial part of its business and assets (including any operating unit of Buyer that has purchased Products or Parts under this Agreement), whether by merger, sale of assets, and sale of stock or otherwise (each, a "Successor Entity"). The Party making such a transfer will assign this Agreement and the rights and obligations hereunder and obtain from the assignee, in a reasonable form satisfactory to the other Party, an acceptance of such assignment and an assumption of all of the assignor party's obligations under this Agreement. Buyer, if it sells an operating unit that is using this Agreement, may, with the prior written consent of Supplier, assign this Agreement to such operating unit if it is a separate legal entity. Without limiting the foregoing, nothing in this Agreement shall be construed to prevent Supplier from assigning, selling or transferring to a third party lender the Supplier's right to receive payments due to it under this Agreement.

## 15.0 NOTICES AND COMMUNICATIONS.

All notices (including requests, consents or waivers) made under this Agreement will be in writing and delivered by facsimile, electronic mail, or other electronic means (in which case the recipient will provide acknowledgment within two business days separately from any machine-generated automatic reply); or by prepaid means providing proof of delivery. Notices are effective upon receipt, and will be sent to the addresses shown below:

Buyer:

Chief Financial Officer
Unipower, LLC
3900 Coral Ridge Drive
Coral Springs, Florida 33065
USA

Supplier:

President/Chief Financial Officer
Power Systems Technologies, Ltd.
Level 3, Alexander House, 35 Cybercity
Ebene, Mauritius

Either party may change its address upon notice as required by this Section.

## 16.0 SPECIFICATION, ENGINEERING AND OTHER CHANGES.

**16.1 Buyer Changes.** Product Specifications may only be amended by the Buyer development release as evidenced in writing to Supplier ("**Change Order**"). Prior to any change becoming effective, all Products shipped by Supplier to Buyer will conform to the existing Specifications, unless Buyer otherwise requests and Supplier agrees. If any change occurs that affects the price, delivery, quality or performance of the Product, an equitable adjustment will be negotiated and agreed to between the Parties prior to the implementation of the change. After

13

ACTIVE/84843650.5

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY PURSUANT TO D. DEL. LR 26.2   JMC0007252

an agreed upon effective date between Buyer and the Supplier site for implementing changes, all Products shipped by Supplier will conform to the changed Specifications. Drawing corrections and minor changes, which have no effect on form, fit, function or interchangeability will not be considered a change in the Specifications.

As a result of any implemented Change Order requested by Buyer, Buyer shall reimburse Supplier for Parts purchased by the Supplier within applicable lead times including Long Lead Time Components, MOQ Components and non-cancellable non-returnable components which are on hand or on order which cannot be cancelled or returned or which cannot be used in conjunction with the Products, or are no longer required for the manufacture of the Products.

**16.2    Supplier Changes.** Supplier shall not make any component part changes to Product(s) manufactured for Buyer without submitting a written Request for Change ("**RFC**") notice and Buyer approving the changes and Buyer will not unreasonably reject such changes. Buyer will review Supplier's RFC and shall consider the feasibility of all proposed changes. Within fourteen (14) days of receipt of Supplier's RFC, Buyer will furnish to Supplier a written response regarding the proposed changes, including its willingness to implement the change, and the time schedule required for implementation if appropriate.

## 17.0    ESCALATION PROCESS AND DISPUTE RESOLUTION.

**17.1**    Any claim, controversy, disagreement or failure to mutually agree where required or necessary ("**Dispute**") which cannot be resolved by the Parties' contacts at a working level, shall be resolved as set out in the Escalation Process set out below.

**17.2**    The Supplier shall designate a manager ("**Supplier Manager**") and Buyer shall designate a manager ("**Buyer Manager**"), who shall be individuals responsible for day-to-day oversight and management relative to the problem, issue and dispute involved. When a problem or dispute arises which the Supplier Manager and the Buyer Manager are unable to resolve promptly through routine communication and day-to-day interaction the Managers shall submit the Dispute to a senior manager in the executive management team ("**Executive Managers**") of each Party.

**17.3**    Unless resolved sooner, the Executive Managers shall meet in person or via telephone conference, to evaluate, discuss and attempt to resolve the Dispute within a period not later than fourteen (14) business days after the Dispute has been submitted to them. If the Executive Managers are unable to resolve the Dispute within the next fourteen (14) business day period, the Executive Managers shall refer the dispute to binding arbitration before one arbitrator. The arbitration shall be administered by JAMS and conducted in accordance with the expedited procedures set forth in the JAMS Comprehensive Arbitration Rules and Procedures as those Rules exist on the effective date of this Agreement. Notwithstanding anything to the contrary in this Agreement, the Federal Arbitration Act shall govern the arbitrability of all Disputes. The arbitration shall be held in New York, New York, and it shall be conducted in the English language. The parties shall maintain the confidential nature of the arbitration proceedings and any award, including the hearing, except as may be necessary to prepare for or conduct the arbitration hearing on the merits, or except as may be necessary in connection with a court application for a preliminary remedy, a judicial challenge to an award or its enforcement, or unless otherwise required by law or judicial decision. The arbitrator shall have authority to award compensatory damages only and shall not award any punitive, exemplary, or multiple damages, and the parties waive any right to recover any such damages. Judgment on any award in arbitration may be entered in any court of competent jurisdiction. Either party may apply to the arbitrator seeking injunctive relief until the arbitration award is rendered or the controversy is otherwise resolved. Either party also, without waiving any remedy under this agreement, may

14

ACTIVE/84843650.5

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY PURSUANT TO D. DEL. LR 26.2          JMC0007253

seek from any U.S. Court having personal and subject matter jurisdiction over the parties any interim or provisional relief that is necessary to protect the rights or property of that party, pending the establishment of the arbitration tribunal. This specifically includes, without limitation, the right to seek temporary restraining orders, preliminary injunctions, writs of prejudgment attachment and other security liens, and orders of mandamus or prohibition, but specifically precludes the right to seek monetary damages of any kind outside of the arbitration proceeding.

17.4    Each Party shall pay their own expenses in connection with the resolution of Disputes pursuant to this Section 17, including reasonable attorneys' fees. The fees and expenses of the arbitrator shall be borne by the party that is determined by the arbitrator not to have prevailed. Notwithstanding the foregoing sentence, should any party to this Agreement hereafter institute any legal action or administrative proceeding against the other by any method other than set forth in this Section 17, the responding party shall be entitled to recover from the initiating party all damages, costs, expenses, and attorneys' fees incurred as a result of such action

**17.5    Escalation Process Not Applicable**. The Parties agree that Disputes between them shall not be subject to the above Escalation Process, if formal proceedings are necessary to avoid the expiration of any applicable limitations or other time period.

## 18.0    GENERAL TERMS.

**18.1    Excused Performance.** Notwithstanding anything in this Agreement, neither Party will be liable for damages because of delays in or failure of performance when the delay or failure is due to, without limitation, Parts Shortages (as defined below), acts of God, acts of civil or military authority, fire, flood, strikes, war, acts of terrorism, epidemics, shortage of power, embargo, Buyer's failure to qualify Parts vendors in a timely manner, if the Party (a) uses reasonable efforts to promptly notify the other of conditions upon becoming aware of any condition, which will or may result in a delay in or failure of performances; (b) uses reasonable efforts to avoid or remove the conditions (including transferring production to other manufacturers who are not affiliated with Supplier) provided that if this results in increased costs for Supplier, Supplier shall not be obliged to take any steps to avoid or remove those conditions but shall discuss such steps with Buyer; and/or (c) immediately continues performance when the conditions are removed. As used herein, the term **"Parts Shortages"** shall mean (i) a shortage of any Parts necessary to produce a Product if such shortage of the applicable Parts can be verified independently through industry publications or other outside industry sources; or (ii) vendor has without adequate prior notice informed Supplier that the lead time has changed to a longer period. Supplier shall provide Buyer with notice of such shortage immediately upon becoming aware if such shortage shall cause Supplier to miss any committed ship date.

**18.2    Entire Agreement/Headings.** This Agreement (which term as used throughout includes and incorporates all the Exhibits attached hereto) and the attached Exhibits contain the entire agreement between the Parties and may not be altered, amended or modified, except by an agreement in writing signed by authorized representatives of both Parties. This Agreement supersedes any other agreement or communication, whether written or oral, that may have been made or entered into with regard to the subject matter hereof by Supplier and Buyer, as well as any terms stated on any Purchase Order, invoice, acknowledgment, acceptance form, or other printed document used by either Party, even if acknowledged by the Party sought to be bound. In the event of any conflicting terms in this Agreement, the exhibits/appendices or any valid Purchase Order (or the like), the order of precedence shall be the following: the Agreement, the Exhibits/Appendices, valid Purchase Orders save that information relating to pricing, delivery particulars and particulars of Products and Parts shall be taken from the Purchase Orders. The Section headings in this Agreement are for convenience only and will not affect the interpretation of this Agreement.

ACTIVE/84843650.5

15

**18.3    Waiver/Severability.**  Failure to enforce any provision of this Agreement is not a waiver of future enforcement of that or any other provision. The provisions of this Agreement are severable; if any provision is unenforceable, invalid or illegal, this Agreement will be construed and enforced as if such unenforceable, invalid or illegal provision had never comprised a part of this Agreement and the remaining provisions will remain in effect.

**18.4    Laws.**  This Agreement interpreted in accordance with the laws of the State of New York, exclusive of conflict or choice-of-law rules, except to the extent there may be any conflict between the law of the State of New York and the Incoterms of the International Chamber of Commerce, 2010 edition, in which case the Incoterms shall control.  The parties specifically agree that the 1980 United Nations Convention on Contracts for the International Sale of Goods, as may be amended from time to time, shall not apply to this Agreement.

**18.5    Relationship of Parties.**  The relationship of Supplier and Buyer as established under this Agreement will be and remain one of independent contractors.  Neither Party will at any time or in any way represent itself as being a dealer, agent or other representative of the other Party or as having authority to assume or create obligations or act in any manner on behalf of the other Party. Nothing in this Agreement creates a partnership, joint venture, agency, or franchise relationship.

**18.6    Periods of Time.**  Saturdays, Sundays, and holidays will be included when computing the number of days required or permitted for notice, response, or other action on the part of either Party, except as otherwise stated where the term "business days" applies.  Business days means all days except Saturdays, Sundays, and public holidays in country where performance is required of the Party concerned.

**18.7    Jury.**  In the event of any dispute between the Parties, which results in proceedings in any court in any jurisdiction, the Parties hereby knowingly and voluntarily, and having had an opportunity to consult with counsel, waive all rights to trial by jury, and agree that any and all matters shall be decided by a judge or arbitrator without a jury to the fullest extent permissible under applicable law. In the event of any lawsuit between the Parties arising out of or related to this Agreement, the Parties agree to prepare and to timely file in the applicable court a mutual consent to waive any statutory or other requirements for a trial by jury.

**19.0    EXHIBITS.**

This Agreement consists of and incorporates all of the following Exhibits:

      Exhibit A   -   Product Specifications

16

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY PURSUANT TO D. DEL. LR 26.2          JMC0007255

A059

The Parties have caused this Agreement to be signed in duplicate by their respective authorised representatives.

**Power Systems Technologies, Ltd.**

By: _____

Name: ___Manny  Marimuttu___

Title: _____Director_____

Date: _____7- 28 - 2016_____

**Unipower, LLC.**

By: _____

Name: ___WILLIAM KIRK___

Title: _____CFO_____

Date: _____7-26-2016_____

ACTIVE/84843650.5

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY PURSUANT TO D. DEL. LR 26.2          JMC0007256

## EXHIBIT A

### PRODUCT SPECIFICATIONS

This Exhibit specifies Buyer's Products. Buyer owns all right, title and interest in the design of these Products, Supplier will be providing the manufacturing services for these Products.

#### 1.0 BUYER PRODUCTS:

All Products and Parts with specification and services to be manufactured and/or performed by Supplier pursuant to this Agreement shall be set as out in appendices to this Exhibit A.

Both Parties hereto agree that additional Products and/or Parts may, by the execution of an appendix to this Exhibit A, be manufactured by Supplier pursuant to this Agreement.

### Exhibit A
### Appendix 1 – [insert date or reference as suitable]
### List of Product and/or Part to be covered by the Manufacturing Agreement

This Appendix dated this [ ] day of [      20XX], entered into between Buyer and Supplier pursuant to Exhibit A of the Agreement for Manufacturing Services dated [          ] between the Parties hereto (the "**Manufacturing Agreement**") sets out Buyer's Products and/or Part requirement to be manufactured by Supplier pursuant to the terms of the Manufacturing Agreement.

Products and Services
[To list products/parts or attach list or specs of products/parts as required]



Products_Appendix-1.
xlsx

ACTIVE/84843650.5

18

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY PURSUANT TO D. DEL. LR 26.2

JMC0007257

**Appendix 2 – [insert date or reference as suitable]**
Quotation and pricing process describing the format and formulas to determine the cost to Buyer

1.  The attached is based on China Solution

## 2. The Europe solution and cost need to be TBD



Appendix-2.xlsx

ACTIVE/84843650.5

19

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY PURSUANT TO D. DEL. LR 26.2          JMC0007258

**Appendix 3 – [insert date or reference as suitable]**
**Definition of Obsolete and Excess**

Excess Inventory: Any Quantity of a specific product/component where by the on hand inventory has no Demand outlook for nest 6 months
Obsolete: Any product/component for which it has no demand for the past 12 months.

Buyer will take financial liability and cover for the component where the shelf life of the component has expired as specified in the table below:

| Item | Material Category | Shelf Life |
|------|------------------|-----------|
| 1 | Electronics component Diode, Transistor, IC | 2year |
| 2 | Metal parts Chassis, Top/Bot Cover etc. | 1year |
| 3 | Plastic parts | 3year |
| 4 | Normal PCB | 6months |
| | Multilayer PCB | 6months |
| 5 | PCBA | 1year |

ACTIVE/84843650.5

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY PURSUANT TO D. DEL. LR 26.2          JMC0007259

**Appendix 4 – [insert date or reference as suitable]**
Expected Safety stock and lead times, refresh clause for ordering and replenishment (to be furnished by
Unipower)

Appendix 4 shows estimated material lead times plus manufacturing lead time for different products



Products_Appendix-4
_Lead Times.xlsx

- Material Safety Stock needs to be TBD
- All the products will be built to order

ACTIVE/84843650.5

21

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY PURSUANT TO D. DEL. LR 26.2          JMC0007260

A064

**Appendix 5 – [insert date or reference as suitable]**
European solution agreement and process proposed by Supplier

- **TBD**

ACTIVE/84843650.5

22

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY PURSUANT TO D. DEL. LR 26.2          JMC0007261

## Appendix 6 – [insert date or reference as suitable]

Purchased test equipment and amortization schedule.

- **Depreciation for Common Equipment is 5 years**
- **Depreciation for Custom Equipment is 2 years**
- **Volume considered for depreciation is 50,000**
- **Below is example of deprecation:**

2.Tester for Rectifier FMP25.48G /FPP30.48G

| Section | Station | Time | Machine | Cost | | Quanty | Total Cost | | |
|---|---|---|---|---|---|---|---|---|---|
| Control Board | ICT | 60S | TR-518 | $ | 22,000 | 1 | $ | 11,000.00 | |
| | Programing | 60S | Customization | $ | 8,900 | 1 | $ | 8,900.00 | |
| | FREQ | 100S | FT8000 | $ | 32,000 | 2 | $ | 64,000.00 | Change chroma8000 to FT8000 per customer required |
| Main Board | ICT | 60S | TR-518 | $ | 22,000 | 1 | $ | 11,000.00 | |
| | BringUp | 150S | FT8000 | $ | 32,000 | 2 | $ | 64,000.00 | Change chroma8000 to FT8000 per customer required |
| Final Ass'y | SNLINK | 60S | FT8000 | $ | 32,000 | 1 | $ | 32,000.00 | Change chroma8000 to FT8000 per customer required |
| | Hi-Pot1 | 60S | Chroma 19053 | $ | 2,590 | 1 | $ | 1,295.06 | Refresh price |
| | Pre-ATE | 300S | Chroma 8000 | $ | 70,000 | 2 | $ | 140,000.00 | Per customer required ,change Pre-Ate qty from 3 to 2 to keep Pre-ATE & Final-ATE tol8ay 4 sets |
| | Burn-In Chamb | 4Hr | | $ | 258,923 | 1 | $ | 258,923.36 | Burn- In Time based on 4Hrs,Assume current 13# burn-in chamber can use for rectifier |
| | Burn-In Carrier | | Customization | $ | 150 | 167 | $ | 25,050.00 | |
| | Hi-Pot2 | 60S | Chroma 19053 | $ | 2,590 | 1 | $ | 1,295.06 | Refresh price |
| | Final ATE | 200S | Chroma 8000 | $ | 70,000 | 2 | $ | 140,000.00 | |

Customization $ 33,530.00
Common Machine in Power $ 721,513.24
Depr Period (yrs) for Customization Machine 2.00
Depr Period (yrs) for Common Machine 5.00
Annual Volume 50,000.00 Assume these machine can be using to all Rectifier
Full Capacity 159,120.00 Assume these machine can be using to other model
Depr Unit Cost $ 1.2424

3.Tester for Rectifier XP208.48G

| Section | Station | Time | Machine | Cost | | Quanty | Total Cost | | |
|---|---|---|---|---|---|---|---|---|---|
| Control Board | ICT | 60S | TR-518 | $ | 22,000 | 1 | $ | 11,000.00 | |
| | Programing | 60S | Customization | $ | 8,500 | 1 | $ | 8,500.00 | |
| Main Board | ICT | 60S | TR-518 | $ | 22,000 | 1 | $ | 11,000.00 | |
| Final Ass'y | SNLINK | 60S | FT8000 | $ | 32,000 | 1 | $ | 32,000.00 | Change chroma8000 to FT8000 per customer required |
| | Pre-ATE | 300S | Chroma 8000 | $ | 70,000 | 2 | $ | 140,000.00 | Per customer required ,change Pre-Ate qty from 3 to 2 to keep Pre-ATE & Final-ATE tol8ay 4 sets |
| | Burn-In Chamb | 4Hr | | $ | 258,923 | 1 | $ | 258,923.08 | Burn- In Time based on 4Hrs,Assume current 13# burn-in chamber can use for rectifier |
| | Burn-In Carrier | | Customization | $ | 150 | 167 | $ | 25,050.00 | |
| | Hi-Pot2 | 60S | Chroma 19053 | $ | 2,590 | 1 | $ | 1,295.06 | Refresh price |
| | Final ATE | 200S | Chroma 8000 | $ | 70,000 | 2 | $ | 140,000.00 | |

Customization $ 33,550.06
Common Machine in Power $ 592,215.16
Depr Period (yrs) for Customization Machine 2.00
Depr Period (yrs) for Common Machine 5.00
Annual Volume 50,000.00 Assume these machine can be using to all Rectifier
Full Capacity 159,120.00 Assume these machine can be using to other model
Depr Unit Cost $ 1.0799

ACTIVE/84843650.5

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY PURSUANT TO D. DEL. LR 26.2     JMC0007262

A066

# Exhibit C



**SECOND AMENDED AND RESTATED PAYMENT GUARANTY**

THIS SECOND AMENDED AND RESTATED PAYMENT GUARANTY (this "**Agreement**") dated as of December 5, 2017 is made by JMC Platform Fund I-A. L.P., with offices located at 125 Summer Street, Boston, MA 02110, a Delaware limited partnership ("**Guarantor**"), for the benefit of Power Systems Technologies, Ltd., for itself and its affiliates, a company organized under the laws of Mauritius with offices located at Level 3, Alexander House, 35 Cybercity, Ebene, Mauritius ("PSTL").

RECITALS

A.    WHEREAS, the Guarantor entered into a certain PAYMENT GUARANTY with PSTL, dated June 3, 2016, which was amended and restated by that certain Amended and Restated Payment Guaranty dated as of June 26, 2017 (as amended and restated, the "**Payment Guaranty**").

B.    WHEREAS, JMC and PSTL desire to amend and restate the PAYMENT GUARANTY agreement in its entirety and enter into this Agreement.

NOW, THEREFORE, in consideration of the mutual covenants in this Agreement, the parties hereto agree as follows::

ARTICLE I
NATURE AND SCOPE OF GUARANTY

Section 1.1    Guaranty of Guaranteed Obligations. Guarantor hereby irrevocably and unconditionally guarantees to PSTL the payment of the Guaranteed Obligations as and when the same shall be due and payable. Guarantor hereby irrevocably and unconditionally covenants and agrees that it is liable for the Guaranteed Obligations as a primary obligor.

Section 1.2    Definition of Guaranteed Obligations. As used herein, the term "**Guaranteed Obligations**" means any amount or amounts that may become due and payable by Unipower, LLC, a Delaware limited liability company ("Unipower") to PSTL pursuant to a bona fide invoice issued by PSTL to Unipower under, and in accordance with the terms and conditions of, the Agreement.

Section 1.3    Nature of Guaranty. This Guaranty is an irrevocable, absolute and continuing guaranty of payment and not a guaranty of collection. This Guaranty may not be revoked by Guarantor and shall continue to be effective with respect to any Guaranteed Obligations arising or created after any attempted revocation by Guarantor.

Section 1.4    Payment by Guarantor. Upon a failure by Unipower to pay any Guaranteed Obligation within thirty (30) days after notice of default by PSTL, Guarantor shall, immediately upon demand by PSTL, pay the amount due on the Guaranteed Obligations to PSTL at PSTL's address as set forth herein or as otherwise instructed by PSTL.

Section 1.5    No Duty to Pursue Others. PSTL shall not be required (and Guarantor hereby waives any rights to require PSTL), in order to enforce the obligations of Guarantor hereunder, first to institute suit or otherwise exhaust its remedies against Unipower or against any other person or entity.

Section 1.6    Payment of Expenses. If Guarantor fails to timely perform any provisions of this Guaranty, Guarantor shall reimburse PSTL for any and all reasonable and documented costs and expenses (including court costs and reasonable attorneys' fees and expenses) incurred by PSTL in the enforcement hereof or the preservation of PSTL's rights hereunder.

## ARTICLE II
## REPRESENTATIONS AND WARRANTIES

Section 2.1    Representations and Warranties. To induce PSTL to enter into the Agreement, Guarantor represents and warrants to PSTL that: (a) Guarantor will receive a direct or indirect benefit from the entry into the Agreement by Unipower; (b) Guarantor is familiar with, and has independently reviewed books and records regarding, the financial condition of Unipower; (c) after giving effect to this Guaranty, Guarantor is and intends to remain solvent; (d) to Guarantor's knowledge, the execution, delivery and performance by Guarantor of this Guaranty and the consummation of the transactions contemplated hereunder do not and will not contravene or conflict with any law, statute or regulation to which Guarantor is subject, or constitute a default (or which with notice, or lapse of time, or both, would constitute a default) under, or result in the breach of, any indenture, mortgage, charge, lien, or any contract or agreement to which Guarantor is a party or which may be applicable to Guarantor; (e) to Guarantor's knowledge, no approval, authorization, order, license or consent of, or registration or filing with, any federal, state, provincial or municipal court, board or other governmental or administrative agency (each, a "**Governmental Authority**") or other person or entity, and no approval, authorization or consent of any other person or entity is required in connection with this Guaranty; (f) to Guarantor's knowledge, there are no actions, suits or proceedings at law or in equity by or before any Governmental Authority or other agency now pending and served or threatened, involving or concerning Guarantor that would reasonably be expected to materially and adversely affect Guarantor's ability to perform its obligations hereunder; (g) this Guaranty is a legal, valid and binding obligation of Guarantor, and is enforceable in accordance with its terms, except as may be limited by principles of equity, bankruptcy, insolvency or other laws of general application relating to the enforcement of creditors' rights; and (h) no judgment, decree or order of any Governmental Authority has been issued against Guarantor that would reasonably be expected to materially and adversely affect Guarantor's ability to perform its obligations hereunder.

## ARTICLE III
## SUBORDINATION OF CERTAIN INDEBTEDNESS

Section 3.1    Subordination of All Guarantor Claims. As used herein, the term "**Guarantor claims**" shall mean any and all debts and liabilities of Unipower owed to Guarantor, whether now existing or hereafter incurred, including, all rights and claims of Guarantor against Unipower (arising as a result of subrogation or otherwise) as a result of Guarantor's payment of all or any portion of the Guaranteed Obligations up to and not to exceed $5.5 million.

Section 3.2    Payments Held in Trust. If, notwithstanding anything to the contrary contained in this Guaranty, Guarantor should receive any funds, payment, claim or distribution which is prohibited hereunder, Guarantor covenants and agrees to hold in trust for PSTL an amount up to and not to exceed $5.5 million of outstanding Guaranteed Obligations, and Guarantor acknowledges and agrees that it shall have absolutely no dominion over the amount of such funds, payments, claims or distributions so received, except to pay them promptly to PSTL, and Guarantor hereby covenants and agrees promptly to pay the same to PSTL.

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY PURSUANT TO D. DEL. LR 26.2

JMC0000367

Section 3.3   Liens Subordinate; Standstill. Guarantor acknowledges and agrees that any liens, security interests, judgment liens, charges or other encumbrances that Guarantor may have upon Unipower's assets securing payment of the Guarantor Claims shall be and remain inferior and subordinate to any liens, security interests, judgment liens, charges or other encumbrances upon Unipower's assets securing payment of the Guaranteed Obligations, regardless of whether such encumbrances in favor of Guarantor or PSTL presently exist or are hereafter created or attach. Guarantor shall not (a) exercise or enforce any creditor's right it may have against Unipower, or (b) foreclose. repossess. sequester or otherwise take steps or institute any action or proceedings (judicial or otherwise, including, without limitation, the commencement of, or joinder in, any liquidation, bankruptcy, rearrangement, debtor's relief or insolvency proceeding) to enforce any liens, mortgages, deeds of trust, security interests, collateral rights, judgments or other encumbrances on assets of Unipower held by Guarantor.

ARTICLE IV
MISCELLANEOUS

Section 4.1   Termination. This Guaranty shall automatically terminate and be of no further force or effect, and Guarantor shall be released from all liability hereunder, upon the earliest to occur of (a) the termination of the Agreement, provided that no Guaranteed Obligations remain outstanding, (b) ninety (90) days following the receipt of written notice of Guarantor's ceasing to own, directly or indirectly, any equity interest in Unipower or (c) the mutual written agreement of Guarantor and PSTL.

Section 4.2   Waiver. No failure to exercise, and no delay in exercising, on the part of PSTL, any right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise thereof preclude any other or further exercise thereof  or the exercise of any other right.  The rights of PSTL hereunder shall be in addition to all other rights provided by law. No notice or demand given in any case shall constitute a waiver of the right to take other action in the same, similar or other instances without such notice or demand.

Section 4.3   Notices.  All notices required or permitted hereunder shall be given and shall become effective as provided below of the Agreement; provided, however, that notices to Guarantor shall be addressed to:

<div style="margin-left: 3em;">

JMC Platform Fund I-A, L.P.
125 Summer Street, Suite 1840
Boston, Massachusetts 02110
Attention: G. Lawrence Bero

with copy to:            Goodwin Proctor LLP
100 Northern Avenue
Boston, Massachusetts 02210
Attn: Michael J. Kendall, Esq.

</div>

A party receiving a notice which does not comply with the technical requirements for notice under this Section 4.3 may elect to waive any deficiencies and treat the notice as having been properly given.  A notice shall be deemed to have been given: (a) in the case of hand delivery, at the time of delivery; (b) in the case of registered or certified mail, when delivered or the first attempted delivery on a business day;

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY PURSUANT TO D. DEL. LR 26.2   JMC0000368

or (c) in the case of expedited prepaid delivery upon the first attempted delivery on a business day. Notice for any party may be given by its respective counsel. Each party may change its information for notices by delivery of written notice as provided in this Section 4.3.

Section 4.4    Governing Law; Submission to Jurisdiction. This Guaranty shall be governed in accordance with the laws of the state of Delaware.

Section 4.5    Severability. Wherever possible, each provision of this Guaranty shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Guaranty shall be prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Guaranty.

Section 4.6    Modification; Waiver in Writing. No modification, amendment, extension, discharge, termination or waiver of any provision of this Guaranty, nor consent to any departure by Guarantor therefrom, shall in any event be effective unless the same shall be in a writing signed by the party against whom enforcement is sought, and then such waiver or consent shall be effective only in the specific instance, and for the purpose, for which given.

Section 4.7    Number and Gender. All references to sections contained herein are to sections of this Guaranty unless otherwise specified. Unless otherwise specified, the words "hereof," "herein" and "hereunder" and words of similar import when used in this Guaranty shall refer to this Guaranty as a whole and not to any particular provision, article, section or other subdivision of this Guaranty. Unless otherwise specified, all meanings attributed to defined terms herein shall be equally applicable to both the singular and plural forms of the terms so defined. Whenever the context may require, any pronouns used herein shall include the corresponding masculine, feminine or neuter forms, and the singular form of nouns and pronouns shall include the plural and vice versa.

Section 4.8    Headings. The headings and captions of various paragraphs of this Guaranty are for the convenience of reference only and are not to be construed as defining or limiting, in any way, the scope or intent of the provisions hereof.

Section 4.9    Counterparts. This Guaranty may be executed in several counterparts, each of which shall be deemed an original instrument and all of which together shall constituted a single Guaranty.

Section 4.10    Entire Agreement. This Guaranty embodies the final, entire agreement of Guarantor and PSTL with respect to Guarantor's guaranty of the Guaranteed Obligations and supersedes any and all other prior commitments, agreements, representations, and understandings, whether written or oral, relating to the subject matter hereof. This Guaranty is intended by Guarantor and PSTL as a final and complete expression of the terms of the Guaranty, and no course of dealing between Guarantor and PSTL, no course of performance, no trade practices, and no evidence of prior, contemporaneous or subsequent oral agreements or discussions or other extrinsic evidence of any nature shall be used to contradict, vary, supplement or modify any term of this Guaranty. There are no oral agreements between Guarantor and PSTL with respect to the subject matter hereof.

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY PURSUANT TO D. DEL. LR 26.2    JMC0000369

Section 4.11    Waiver of Right to Trial by Jury. GUARANTOR AND PSTL (BY ITS ACCEPTANCE HEREOF) HEREBY AGREE NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY, AND WAIVE ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHI SHALL NOW OR HEREAFTER EXIST WITH REGARD TO THIS GUARANTY, OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION THEREWITH (OTHER THAN COMPULSORY COUNTERCLAIMS). THIS WAIVER OF RIGIIT TO TRIAL BY JURY IS GIVEN KNOWINGLY AND VOLUNTARILY BY GUARANTOR AND PSTL, AND IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE. GUARANTOR AND PSTL ARE HEREBY AUTHORIZED TO FILE A COPY OF THIS PARAGRAPH IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER BY THE OTHER.

*****



IN WITNESS WHEREOF, the undersigned has executed this Guaranty as of the day and year first above written.

**GUARANTOR:**

JMC PLATFORM FUND I-A, L.P.
a Delaware limited partnership

By: _____

Name: G. Lawrence Bero
Title: Treasurer

AGREED AND ACCEPTED:

Power Systems Technologies, Ltd.
a Mauritius Corporation

By: _____

Name: Manny Marimuthu
Title: Managing Director

*Signature Page to Second Amended and Restated Payment Guaranty*

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY PURSUANT TO D. DEL. LR 26.2          JMC0000371

# Exhibit D

**To:** Jessica Turchetta[jessica.turchetta@unipowerco.com]; William Kirk[william.kirk@unipowerco.com]; Nadine Comly[nadine.comly@unipowerco.com]; Philip Haynes [philip.haynes@unipowerco.com]; Ed Lilley[ed.lilley@unipowerco.com]

**Cc:** Rishi Mahajan[rishi.mahajan@flex.com]; Dick Zhang[dick.zhang@flex.com]; Pankaj Srivastava[pankaj.srivastava@flex.com]; Aakash Kumar[aakash.kumar@flex.com]; Rahul Bhure [rahul.bhure@flex.com]; Alice Liu[alice.liu@flex.com]; Cecilia Picco[cecilia.picco@unipowerco.com]; Jeff Kelley[jeffrey.kelley@flex.com]; Dick Zhang[dick.zhang@flex.com]; Pankaj Srivastava[pankaj.srivastava@flex.com]; TY Lai[ty.lai@flex.com]; TH Teoh[th.teoh@flex.com]; Nina Peng(DON)[nina.peng2@flex.com]

**From:** Manish Panpaliya[manish.panpaliya@flex.com]

**Sent:** Mon 1/22/2018 6:13:38 AM Coordinated Universal Time

**Subject:** RE: ***Urgent*** Unipower Statement - Past Due Invoices

**Attachment:** Unipower Past Due invoices as of 22nd Jan 2018.xlsx

**Attachment:** Flex Jersey 850.pdf

Hi Jessica & Unipower Team,

Good Day!!!

I hope, everything is ok over there. Here we are having past due of **$525k** and I request you to please pay this into the same (Power System) bank account.

For all the future payments, here we are requesting you to only change in bank account for payment (instead of Power System need to pay in Flex Jersey account) and the billing entity will be same as Power System.
Please confirm once the changes done and If you still have any concern, please feel free to call.

Thank you.

Regards,
Manish Panpaliya
GBS AR Invoicing | Pune



**LIVE SMARTER**
"Creating value that increases customer *competitiveness*"
☎ *VOIP* + 6666 924 9462 |
☎ Mobile +91-9403054007

✉ manish.panpaliya@flex.com  l www.flextronics.com

*Level 1 – (Not responded within 24 hrs) – Aakash.Kumar@flex.com*
*Level 2 – (Not responded within 48 hrs) – Sreejith.Ravindran@flex.com*

**From:** Nina Peng(DON)
**Sent:** Friday, January 19, 2018 1:58 PM
**To:** Manish Panpaliya <manish.panpaliya@flex.com>; Jessica Turchetta <jessica.turchetta@unipowerco.com>; William Kirk <william.kirk@unipowerco.com>; Nadine Comly <nadine.comly@unipowerco.com>; Philip Haynes <philip.haynes@unipowerco.com>; Ed Lilley <ed.lilley@unipowerco.com>
**Cc:** Rishi Mahajan <rishi.mahajan@flex.com>; Dick Zhang <dick.zhang@flex.com>; Pankaj Srivastava <pankaj.srivastava@flex.com>; Aakash Kumar <aakash.kumar@flex.com>; Rahul Bhure <rahul.bhure@flex.com>; Alice Liu <alice.liu@flex.com>; Cecilia Picco <cecilia.picco@unipowerco.com>; Jeff Kelley <jeffrey.kelley@flex.com>; Dick Zhang <dick.zhang@flex.com>; Pankaj Srivastava <pankaj.srivastava@flex.com>; TY Lai <ty.lai@flex.com>; TH Teoh <th.teoh@flex.com>
**Subject:** RE: ***Urgent*** Unipower Statement - Past Due Invoices
**Importance:** High

Dear Jessica

Pls help advise what else information you needed on the bank account information change? Pls call Manishi if you still has problems.

The payment past due must be resolved as soon as possible to avoid shipment delay.

Thanks
Nina

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY PURSUANT TO D. DEL. LR 26.2

UNI0047396



Thu 1/18/2018 8:19 PM

Jessica Turchetta <jessica.turchetta@unipowerco.com>

RE: ***Urgent*** Unipower Statement - Past Due Invoices

To    Nina Peng(DON)

Cc    William Kirk;   Nadine Comly;   Patrice Irons;   Philip Haynes;   Ed Lilley

You forwarded this message on 1/19/2018 8:49 AM.
This message was sent with High importance.

Electronic Funds Auth...     Flex Jersey 850.pdf
51 KB                        227 KB

Bing Maps

Hello Nina,

Unipower received an email that Flex had changed their bank instructions and we have been trying to get in touch with your finance team to verify if this correct. The letter we rece
bank instructions in our system.

I have sent individual emails to Manish Panpaliya, Rahual Bhure and Alice Liu and am waiting for a response, can you please forward this email to whom we can verify the new instr
New Wire Authorization form and once that is complete we will need to arrange a time for a call since we are in different time zones so we can have verbal confirmation over the pl
I have attached the letter we received from your company along with Unipower Wire Authorization form to be filled out if the bank instructions have changed.

Thank you,

**Jessica Turchetta**
Staff Accountant

Thanks
Nina

**From:** Manish Panpaliya
**Sent:** Friday, January 19, 2018 3:54 PM
**To:** Jessica Turchetta <jessica.turchetta@unipowerco.com>; William Kirk <william.kirk@unipowerco.com>; Nadine Comly <nadine.comly@unipowerco.com>;
Philip Haynes <philip.haynes@unipowerco.com>; Ed Lilley <ed.lilley@unipowerco.com>
**Cc:** Rishi Mahajan <rishi.mahajan@flex.com>; Dick Zhang <dick.zhang@flex.com>; Pankaj Srivastava <pankaj.srivastava@flex.com>; Aakash Kumar
<aakash.kumar@flex.com>; Rahul Bhure <rahul.bhure@flex.com>; Alice Liu <alice.liu@flex.com>; Cecilia Picco <cecilia.picco@unipowerco.com>; Jeff Kelley
<jeffrey.kelley@flex.com>; Dick Zhang <dick.zhang@flex.com>; Pankaj Srivastava <pankaj.srivastava@flex.com>; TY Lai <ty.lai@flex.com>; TH Teoh
<th.teoh@flex.com>; Nina Peng(DON) <nina.peng2@flex.com>
**Subject:** RE: ***Urgent*** Unipower Statement - Past Due Invoices
**Importance:** High

Hi Unipower Team,

Good Day!!!

Please help to release payment for all past due invoices which is of $525k on priority and refer the attached file for your reference.

Regards,
Manish Panpaliya
GBS AR Invoicing | Pune



**LIVE SMARTER**
"Creating value that increases customer **competitiveness**"
☎ *VOIP* + 6666 924 9462 |
☎Mobile +91-9403054007

✉ manish.panpaliya@flex.com  I www.flextronics.com

*Level 1 – (Not responded within 24 hrs) – Aakash.Kumar@flex.com*
*Level 2 – (Not responded within 48 hrs)* – Sreejith.Ravindran@flex.com

**From:** Nina Peng(DON)
**Sent:** Thursday, January 18, 2018 4:07 PM
**To:** Jessica Turchetta <jessica.turchetta@unipowerco.com>; William Kirk <william.kirk@unipowerco.com>; Nadine Comly <nadine.comly@unipowerco.com>;
Manish Panpaliya <manish.panpaliya@flex.com>
**Cc:** Rishi Mahajan <rishi.mahajan@flex.com>; Dick Zhang <dick.zhang@flex.com>; Pankaj Srivastava <pankaj.srivastava@flex.com>; Aakash Kumar
<aakash.kumar@flex.com>; Rahul Bhure <rahul.bhure@flex.com>; Alice Liu <alice.liu@flex.com>; Philip Haynes <philip.haynes@unipowerco.com>; Ed Lilley
<ed.lilley@unipowerco.com>; Cecilia Picco <cecilia.picco@unipowerco.com>; Jeff Kelley <jeffrey.kelley@flex.com>; Dick Zhang <dick.zhang@flex.com>;
Pankaj Srivastava <pankaj.srivastava@flex.com>; TY Lai <ty.lai@flex.com>; TH Teoh <th.teoh@flex.com>
**Subject:** FW: ***Urgent*** Unipower Statement - Past Due Invoices
**Importance:** High

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY PURSUANT TO D. DEL. LR 26.2          UNI0047397

Loop in Philip, Ed,

Dear Philip, Ed,

As talked this morning, pls help push your finance team to pay $525k Past Due Payment as soon as possible to avoid impact on the FG shipments planned next week. Thanks.

| Item | Model Name | Qty (pcs) |
|------|------------|-----------|
| 1 | 1-MS0023G*900024 | 80 |
| 2 | 1-M00035*700002 | 470 |
| 3 | MS0031G*900048 | 24 |
| 4 | 1-MS0031G*900054 | 90 |
| 5 | MS0031G*900060 | 60 |
| 6 | MS0031G*900005 | 45 |
| 7 | MS0031G*900013 | 90 |
| 8 | FMP20.24S101G | 120 |
| 9 | FMP25.48G | 292 |
| 10 | FMP25.48S200G | 280 |
| 11 | FMPE30.48G | 164 |
| 12 | XPGE12.48G | 426 |
| 13 | YCU.00069 | 1,100 |
| 14 | YCU.00045.0 | 172 |
| 15 | XG1948G | 520 |
| 16 | FMP20.48G | 322 |
| | Total | 4,255 |

Thanks
Nina

**From:** Manish Panpaliya
**Sent:** Monday, January 15, 2018 5:27 PM
**To:** Jessica Turchetta <jessica.turchetta@unipowerco.com>; William Kirk <william.kirk@unipowerco.com>; Nadine Comly <nadine.comly@unipowerco.com>
**Cc:** Rishi Mahajan <rishi.mahajan@flex.com>; Dick Zhang <dick.zhang@flex.com>; Pankaj Srivastava <pankaj.srivastava@flex.com>; Aakash Kumar <aakash.kumar@flex.com>; Rahul Bhure <rahul.bhure@flex.com>; Alice Liu <alice.liu@flex.com>
**Subject:** RE: ***Urgent*** Unipower Statement - Past Due Invoices
**Importance:** High

Hi Jessica & William,

Good Day!!!

Kindly refer the attached overdue list of invoices which is almost of **$525k** so please release the payment and confirm the payment date on priority.

Please feel free to contact if you have any concern. Thank you.

Regards,
Manish Panpaliya
GBS AR Management | Pune



**LIVE SMARTER**
*"Creating value that increases customer competitiveness"*
☎ *VOIP* + 6666 924 9462 |
☎ Mobile +91-9403054007

✉ manish.panpaliya@flex.com  I www.flextronics.com

*Level 1 – (Not responded within 24 hrs) – Aakash.Kumar@flex.com*
*Level 2 – (Not responded within 48 hrs) – Sreejith.Ravindran@flex.com*

**From:** Manish Panpaliya
**Sent:** Wednesday, January 03, 2018 4:30 PM
**To:** 'Jessica Turchetta' <jessica.turchetta@unipowerco.com>; William Kirk <william.kirk@unipowerco.com>; Nadine Comly <nadine.comly@unipowerco.com>
**Cc:** Rishi Mahajan <rishi.mahajan@flex.com>; Dick Zhang <dick.zhang@flex.com>; Pankaj Srivastava <pankaj.srivastava@flex.com>; Aakash Kumar <aakash.kumar@flex.com>; Rahul Bhure <rahul.bhure@flex.com>; Alice Liu <alice.liu@flex.com>
**Subject:** ***Urgent*** Unipower Statement - Past Due Invoices
**Importance:** High

Hi Jessica & William,

Good Day!!!

Kindly refer the attached overdue list of invoices which is almost of $469k so please release the payment and confirm the payment date for the same.

Please feel free to contact if you have any concern. Thank you.

Regards,
Manish Panpaliya
GBS AR Management | Pune



LIVE SMARTER
"Creating value that increases customer *competitiveness*"
☎ *VOIP* + 6666 924 9462 |
☎Mobile +91-9403054007

✉ manish.panpaliya@flex.com   I www.flextronics.com

*Level 1 – (Not responded within 24 hrs) – Aakash.Kumar@flex.com*
*Level 2 – (Not responded within 48 hrs) – Sreejith.Ravindran@flex.com*

---

**From:** Jessica Turchetta [mailto:jessica.turchetta@unipowerco.com]
**Sent:** Tuesday, January 02, 2018 8:05 PM
**To:** Manish Panpaliya <manish.panpaliya@flex.com>
**Subject:** Unipower Statement

Happy New Year!!

Can you please email me a copy of Unipower most recent statement with our PO #'s and your SO #'s on it like you had done before?

Thank you,

**Jessica Turchetta**
Staff Accountant

Jessica.turchetta@unipowerco.com

UNIPOWER | www.unipowerco.com
3900 Coral Ridge Dr
Coral Springs FL, 33065

Follow us @unipowerco

*UNIPOWER is a JMC Company*

This electronic mail message may contain information that is legally privileged, confidential and exempt from disclosure. It is intended only for the use of the individual or organization to whom it is addressed. If you are not the intended recipient it is strictly prohibited to disclose, use or copy this information.
Legal Disclaimer:
The information contained in this message may be privileged and confidential. It is intended to be read only by the individual or entity to whom it is addressed or by their designee. If the reader of this message is not the intended recipient, you are on notice that any distribution of this message, in any form, is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete or destroy any copy of this message!



March 8, 2017

Dear Sir or Madam,

We are writing in connection with the arrangements we currently have with you in relation to the supply of goods to you.

As part of our continuous drive to improve the services we can offer customers and the efficiency of our operations, we are considering undertaking a reorganisation of our internal and external funding arrangements for the Flextronics International Limited group of companies. As part of this reorganisation, we are proposing to sell and assign our rights to receive payment under agreements with customers (including the right to receive all payments from you) to Flex Jersey Limited, a finance vehicle.

We hereby inform you that you shall make all future payments under the abovementioned receivables to **Flex Jersey Limited** and into the following account:

> Account Name:  Flex Jersey Limited
> Account: 1291469330
> Bank Name:  Bank of America
> Account Holder Address: 26 New Street St Helier, Jersey
> ABA/Transit for Wires:   026009593
> ABA/Transit for ACH: 121000358
> Swift: BOFAUS3N

We will continue to administrate the receivables as agent for Flex Jersey Limited until further notice from Flex Jersey Limited. Please acknowledge receipt of this notification by signing and returning a copy of this letter.

We look forward to serving you in the future.

Yours faithfully

**Power Systems Technologies Ltd.**

Signature: _____

Name: Manny Marimuthu

Title:  Director


We hereby acknowledge receipt of this notification.

Date:

Customer Signature: _____

Power Systems Technologies Ltd.
www.flex.com

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY PURSUANT TO D. DEL. LR 26.2          UNI0047401

# Exhibit E



**POWER SYSTEMS TECHNOLOGIES LTD**
Level 3, Alexander House
35 Cybercity, Ebene
Mauritius

Sold to:                                    Sales Invoice
  **Unipower LLC**                                           Page :    **1**

ATTN: Accounts Payables /Stephanie Martin /JESSICA TURCHETTA
3900 Coral Ridge Drive
33065 Coral Springs
UNITED STATES

                                Invoice Number : 850/40000601
                                Invoice Date   : 04-29-19
Ship To :
  **Unipower LLC**                          Customer ID    :CUDG23153
                           Customer PO no  :NA
ATTN: Stephanie Martin / JESSI            Reference A    :
Dunlap Facility 65 Industrial             Reference B    :
37327 Dunlap                              Sales Order no :715C02118
UNITED STATES                             Packing List no :
                           Term of Payment :Net 60 Days
                                 FC850
                         Terms of Delivery:

| POPos | Part Number | Item Description | Quantity | Price | Sales Tax | Amount in USD |
|---|---|---|---|---|---|---|
| | Cust Part No | | | | | |
| 10 | FLX_UPR_S_MISC | Unipower MISC SALES for Ser | 1.0000 ea | ############ | | 4373,798.00 |
| | Shipment no : 105186177 | | | | | |
| 20 | FLX_UPR_S_MISC | Unipower MISC SALES for Ser | 1.0000 ea | 250515.000000 | | 250,515.00 |
| | Shipment no : 105186177 | | | | | |

                             Sales Total   :      4624,313.00
                             Sales Tax     :            0.00

                           **Invoice Total : USD   4624,313.00**

        **When paying, please refer to invoice number :  000/850/40000601**

      (This is a computer generated document, no Signature required)
    Bank to   : HongKong and Shanghai Banking Corp
    Address   : 5th Floor, Les Cascades
    .         Edith Cavell Street
    ACCT NO   : 080-098296-020
    SWIFT CODE : HSBCMUMUOBU

CONFIDENTIAL                                                    PSTL040145



**POWER SYSTEMS TECHNOLOGIES LTD**
Level 3, Alexander House
35 Cybercity, Ebene
Mauritius

Sold to:                              Sales Invoice
  **Unipower LLC**                                              Page :    **2**

  ATTN: Accounts Payables /Stephanie Martin /JESSICA TURCHETTA
  3900 Coral Ridge Drive
  33065 Coral Springs
  UNITED STATES

                                    Invoice Number : 850/40000601
                                    Invoice Date   : 04-29-19
Ship To :
  **Unipower LLC**                    Customer ID       :CUDG23153
                                      Customer PO no    :NA
  ATTN: Stephanie Martin / JESSI      Reference A       :
  Dunlap Facility 65 Industrial       Reference B       :
  37327 Dunlap                        Sales Order no    :715C02118
  UNITED STATES                       Packing List no   :
                                      Term of Payment   :Net 60 Days
                                                          FC850
                                      Terms of Delivery:

| POPos Part Number | Item Description | Quantity | Price | Sales Tax | Amount in USD |
|---|---|---|---|---|---|
| Cust Part No | | | | | |

This is to notify you that Power Systems Technologies Ltd. has assigned all its right, title and interest in the receivable
under this invoice to Flex Jersey Ltd. You are instructed to make payment to Flex Jersey Ltd., account no. 1291469330,
SWIFT: BOFAUS3N with Bank of America. This invoice and all amounts due and payable hereunder shall be
governed by the laws of Mauritius.

                          Carry Forward      :            0.00

CONFIDENTIAL                                              PSTL040146

                                A079



**POWER SYSTEMS TECHNOLOGIES LTD**
Level 3, Alexander House
35 Cybercity, Ebene
Mauritius

Sold to:                                    Sales Invoice
**Unipower LLC**                                                    Page :    **1**

ATTN: Accounts Payables /Stephanie Martin /JESSICA TURCHETTA
3900 Coral Ridge Drive
33065 Coral Springs
UNITED STATES

                              Invoice Number : 850/40000093
                              Invoice Date   : 04-08-19
Ship To :
**Unipower LLC**                      Customer ID    :CUDG23153
                              Customer PO no :092006 - 00
ATTN: Stephanie Martin / JESSI        Reference A    :
Dunlap Facility 65 Industrial         Reference B    :
37327 Dunlap                          Sales Order no :715T22801
UNITED STATES                         Packing List no :
                              Term of Payment :Net 60 Days
                                              FC850
                              Terms of Delivery:

| POPos | Part Number | Item Description | Quantity | Price | Sales Tax | Amount in USD |
|---|---|---|---|---|---|---|
| | Cust Part No | | | | | |
| 10 | UPR-FMP20.24S101G-006 | POWER SUPPLY;GUARDIAN RECTI | 304.0000 ea | 129.810000 | | 39,462.24 |

     Shipment no : 105128813

                              Sales Total  :        39,462.24
                              Sales Tax    :             0.00

                              **Invoice Total : USD    39,462.24**

     **When paying, please refer to invoice number :  000/850/40000093**

     (This is a computer generated document, no Signature required)
     Bank to   : HongKong and Shanghai Banking Corp
     Address   : 5th Floor, Les Cascades
     .           Edith Cavell Street
     ACCT NO   : 080-098296-020
     SWIFT CODE : HSBCMUMUOBU

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY PURSUANT TO D. DEL. LR 26.2          UNI0114199



**POWER SYSTEMS TECHNOLOGIES LTD**
Level 3, Alexander House
35 Cybercity, Ebene
Mauritius

Sold to:                                    Sales Invoice
  **Unipower LLC**                                               Page :    **2**

  ATTN: Accounts Payables /Stephanie Martin /JESSICA TURCHETTA
  3900 Coral Ridge Drive
  33065 Coral Springs
  UNITED STATES

                                    Invoice Number : 850/40000093
                                    Invoice Date   : 04-08-19

Ship To :
  **Unipower LLC**                        Customer ID    :CUDG23153
                                    Customer PO no  :092006 - 00
  ATTN: Stephanie Martin / JESSI         Reference A     :
  Dunlap Facility 65 Industrial          Reference B     :
  37327 Dunlap                           Sales Order no  :715T22801
  UNITED STATES                          Packing List no :
                                    Term of Payment :Net 60 Days
                                                     FC850
                                    Terms of Delivery:

POPos Part Number              Item Description      Quantity      Price      Sales Tax   Amount in USD
    Cust Part No
This is to notify you that Power Systems Technologies Ltd. has assigned all its right, title and interest in the receivable
under this invoice to Flex Jersey Ltd. You are instructed to make payment to Flex Jersey Ltd., account no. 1291469330,
SWIFT: BOFAUS3N with Bank of America. This invoice and all amounts due and payable hereunder shall be
governed by the laws of Mauritius.

                                    Carry Forward        :              0.00

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY PURSUANT TO D. DEL. LR 26.2          UNI0114200



**POWER SYSTEMS TECHNOLOGIES LTD**
Level 3, Alexander House
35 Cybercity, Ebene
Mauritius

Sold to:                                  Sales Invoice
**Unipower LLC**                                                          Page :   **1**

ATTN: Accounts Payables /Stephanie Martin /JESSICA TURCHETTA
3900 Coral Ridge Drive
33065 Coral Springs
UNITED STATES

                                               Invoice Number : 850/40000173
                                               Invoice Date   : 04-12-19

Ship To :
**Unipower LLC**                          Customer ID    :CUDG23153
                                            Customer PO no  :092006 - 00
ATTN: Stephanie Martin / JESSI           Reference A    :
Dunlap Facility 65 Industrial            Reference B    :
37327 Dunlap                             Sales Order no  :715T22802
UNITED STATES                            Packing List no :
                                            Term of Payment :Net 60 Days
                                                    FC850
                                            Terms of Delivery:

| POPos | Part Number | Item Description | Quantity | Price | Sales Tax | Amount in USD |
|---|---|---|---|---|---|---|
| | Cust Part No | | | | | |
| 10 | UPR-FMP20.24S101G-006 | POWER SUPPLY;GUARDIAN RECTI | 268.0000 ea | 129.810000 | | 34,789.08 |

     Shipment no : 105141120

                                                    Sales Total  :        34,789.08
                                                    Sales Tax    :             0.00

                                           **Invoice Total : USD    34,789.08**

                **When paying, please refer to invoice number :  000/850/40000173**

       (This is a computer generated document, no Signature required)
     Bank to   : HongKong and Shanghai Banking Corp
     Address   : 5th Floor, Les Cascades
     .         Edith Cavell Street
     ACCT NO   : 080-098296-020
     SWIFT CODE : HSBCMUMUOBU

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY PURSUANT TO D. DEL. LR 26.2          UNI0114181



**POWER SYSTEMS TECHNOLOGIES LTD**
Level 3, Alexander House
35 Cybercity, Ebene
Mauritius

Sold to:                                    Sales Invoice
  **Unipower LLC**                                                        Page :    **2**

  ATTN: Accounts Payables /Stephanie Martin /JESSICA TURCHETTA
  3900 Coral Ridge Drive
  33065 Coral Springs
  UNITED STATES

                                    Invoice Number : 850/40000173
                                    Invoice Date   : 04-12-19

Ship To :
  **Unipower LLC**                   Customer ID    :CUDG23153
                                    Customer PO no  :092006 - 00
  ATTN: Stephanie Martin / JESSI    Reference A    :
  Dunlap Facility 65 Industrial     Reference B    :
  37327 Dunlap                      Sales Order no :715T22802
  UNITED STATES                     Packing List no :
                                    Term of Payment :Net 60 Days
                                                     FC850
                                    Terms of Delivery:

| POPos Part Number | Item Description | Quantity | Price | Sales Tax | Amount in USD |
|---|---|---|---|---|---|
| Cust Part No | | | | | |

This is to notify you that Power Systems Technologies Ltd. has assigned all its right, title and interest in the receivable
under this invoice to Flex Jersey Ltd. You are instructed to make payment to Flex Jersey Ltd., account no. 1291469330,
SWIFT: BOFAUS3N with Bank of America. This invoice and all amounts due and payable hereunder shall be
governed by the laws of Mauritius.

                              Carry Forward       :              0.00

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY PURSUANT TO D. DEL. LR 26.2                UNI0114182



**POWER SYSTEMS TECHNOLOGIES LTD**
Level 3, Alexander House
35 Cybercity, Ebene
Mauritius

Sold to:                                    Sales Invoice
**Unipower LLC**                                                        Page :    **1**

ATTN: Accounts Payables /Stephanie Martin /JESSICA TURCHETTA
3900 Coral Ridge Drive
33065 Coral Springs
UNITED STATES

                                      Invoice Number : 850/40000174
                                      Invoice Date   : 04-12-19

Ship To :
**Unipower LLC**                        Customer ID    :CUDG23153
                                      Customer PO no :092006 - 00
ATTN: Stephanie Martin / JESSI        Reference A    :
Dunlap Facility 65 Industrial         Reference B    :
37327 Dunlap                          Sales Order no :715T22803
UNITED STATES                         Packing List no :
                                      Term of Payment :Net 60 Days
                                                        FC850
                                      Terms of Delivery:

| POPos | Part Number | Item Description | Quantity | Price | Sales Tax | Amount in USD |
|---|---|---|---|---|---|---|
|  | Cust Part No |  |  |  |  |  |
| 10 | UPR-FMP20.24S101G-006 | POWER SUPPLY;GUARDIAN RECTI | 256.0000 ea | 129.810000 |  | 33,231.36 |

     Shipment no : 105141127

                                      Sales Total   :        33,231.36
                                      Sales Tax     :             0.00

                                      **Invoice Total : USD     33,231.36**

       **When paying, please refer to invoice number :  000/850/40000174**

       (This is a computer generated document, no Signature required)
       Bank to   : HongKong and Shanghai Banking Corp
       Address   : 5th Floor, Les Cascades
       .           Edith Cavell Street
       ACCT NO   : 080-098296-020
       SWIFT CODE : HSBCMUMUOBU

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY PURSUANT TO D. DEL. LR 26.2          UNI0114190



**POWER SYSTEMS TECHNOLOGIES LTD**
Level 3, Alexander House
35 Cybercity, Ebene
Mauritius

Sold to:                          Sales Invoice

**Unipower LLC**                                                      Page :   **2**

ATTN: Accounts Payables /Stephanie Martin /JESSICA TURCHETTA
3900 Coral Ridge Drive
33065 Coral Springs
UNITED STATES

Invoice Number : 850/40000174
Invoice Date   : 04-12-19

Ship To :
**Unipower LLC**

ATTN: Stephanie Martin / JESSI        Customer ID      :CUDG23153
Dunlap Facility 65 Industrial          Customer PO no   :092006 - 00
37327 Dunlap                           Reference A      :
UNITED STATES                          Reference B      :
                                       Sales Order no   :715T22803
                                       Packing List no  :
                                       Term of Payment  :Net 60 Days
                                                          FC850
                                       Terms of Delivery:

| POPos Part Number | Item Description | Quantity | Price | Sales Tax | Amount in USD |
|---|---|---|---|---|---|
| Cust Part No | | | | | |

This is to notify you that Power Systems Technologies Ltd. has assigned all its right, title and interest in the receivable
under this invoice to Flex Jersey Ltd. You are instructed to make payment to Flex Jersey Ltd., account no. 1291469330,
SWIFT: BOFAUS3N with Bank of America. This invoice and all amounts due and payable hereunder shall be
governed by the laws of Mauritius.

                          Carry Forward       :            0.00

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY PURSUANT TO D. DEL. LR 26.2                    UNI0114191



**POWER SYSTEMS TECHNOLOGIES LTD**
Level 3, Alexander House
35 Cybercity, Ebene
Mauritius

Sold to:                                    Sales Invoice

**Unipower LLC**                                              Page :   **1**

ATTN: Accounts Payables /Stephanie Martin /JESSICA TURCHETTA
3900 Coral Ridge Drive
33065 Coral Springs
UNITED STATES

                                    Invoice Number : 850/40000175
                                    Invoice Date   : 04-12-19

Ship To :
**Unipower LLC**                        Customer ID     :CUDG23153
                                    Customer PO no  :096181 - 00
ATTN: Stephanie Martin / JESSI          Reference A     :
Dunlap Facility 65 Industrial           Reference B     :
37327 Dunlap                            Sales Order no  :715T22804
UNITED STATES                           Packing List no :
                                    Term of Payment :Net 60 Days
                                                     FC850
                                    Terms of Delivery:

| POPos Part Number | Item Description | Quantity | Price | Sales Tax | Amount in USD |
|---|---|---|---|---|---|
| Cust Part No | | | | | |
| 10  UPR-YCU.00100-011 | HCC Extended Controller | 20.0000 ea | 99.900000 | | 1,998.00 |

        Shipment no : 105141119

                                    Sales Total   :        1,998.00
                                    Sales Tax     :            0.00

                                    **Invoice Total : USD        1,998.00**

          **When paying, please refer to invoice number :  000/850/40000175**

        (This is a computer generated document, no Signature required)
        Bank to   : HongKong and Shanghai Banking Corp
        Address   : 5th Floor, Les Cascades
        .           Edith Cavell Street
        ACCT NO   : 080-098296-020
        SWIFT CODE : HSBCMUMUOBU

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY PURSUANT TO D. DEL. LR 26.2                UNI0114184



**POWER SYSTEMS TECHNOLOGIES LTD**
Level 3, Alexander House
35 Cybercity, Ebene
Mauritius

Sold to:                                          Sales Invoice

**Unipower LLC**                                                          Page :    **2**

ATTN: Accounts Payables /Stephanie Martin /JESSICA TURCHETTA
3900 Coral Ridge Drive
33065 Coral Springs
UNITED STATES

                                    Invoice Number : 850/40000175
                                    Invoice Date   : 04-12-19

Ship To :
**Unipower LLC**
                                    Customer ID    :CUDG23153
ATTN: Stephanie Martin / JESSI      Customer PO no :096181 - 00
Dunlap Facility 65 Industrial       Reference A    :
37327 Dunlap                        Reference B    :
UNITED STATES                       Sales Order no :715T22804
                                    Packing List no :
                                    Term of Payment :Net 60 Days
                                                     FC850
                                    Terms of Delivery:

| POPos Part Number | Item Description | Quantity | Price | Sales Tax | Amount in USD |
|---|---|---|---|---|---|
| Cust Part No | | | | | |

This is to notify you that Power Systems Technologies Ltd. has assigned all its right, title and interest in the receivable
under this invoice to Flex Jersey Ltd. You are instructed to make payment to Flex Jersey Ltd., account no. 1291469330,
SWIFT: BOFAUS3N with Bank of America. This invoice and all amounts due and payable hereunder shall be
governed by the laws of Mauritius.

                                    Carry Forward        :              0.00

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY PURSUANT TO D. DEL. LR 26.2        UNI0114185



**POWER SYSTEMS TECHNOLOGIES LTD**
Level 3, Alexander House
35 Cybercity, Ebene
Mauritius

Sold to:                                      Sales Invoice

**Unipower LLC**                                                       Page :    **1**

ATTN: Accounts Payables /Stephanie Martin /JESSICA TURCHETTA
3900 Coral Ridge Drive
33065 Coral Springs
UNITED STATES

                                        Invoice Number : 850/40000176
                                        Invoice Date   : 04-12-19

Ship To :
**Unipower LLC**                        Customer ID      :CUDG23153
                                        Customer PO no   :092005-00
ATTN: Stephanie Martin / JESSI          Reference A      :
Dunlap Facility 65 Industrial           Reference B      :
37327 Dunlap                            Sales Order no   :715T22942
UNITED STATES                           Packing List no  :
                                        Term of Payment  :Net 60 Days
                                                          FC850
                                        Terms of Delivery:

| POPos | Part Number<br>Cust Part No | Item Description | Quantity | Price | Sales Tax | Amount in USD |
|---|---|---|---|---|---|---|
| 10 | UPR-1-MS0023G900024-035 | Aspiro  19"/2U/4 pos ACX | 2.0000 ea | 453.750000 | | 907.50 |
| | Shipment no : 105141236 | | | | | |
| 20 | UPR-1-MS0023G900024-036 | Aspiro  19"/2U/4 pos ACX | 52.0000 ea | 453.750000 | | 23,595.00 |
| | Shipment no : 105141236 | | | | | |

                                        Sales Total  :         24,502.50
                                        Sales Tax    :              0.00

                                        **Invoice Total** : USD     **24,502.50**

        **When paying, please refer to invoice number** :  000/850/40000176

        (This is a computer generated document, no Signature required)
        Bank to   : HongKong and Shanghai Banking Corp
        Address   : 5th Floor, Les Cascades
        .           Edith Cavell Street
        ACCT NO   : 080-098296-020
        SWIFT CODE : HSBCMUMUOBU

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY PURSUANT TO D. DEL. LR 26.2          UNI0114187



**POWER SYSTEMS TECHNOLOGIES LTD**
Level 3, Alexander House
35 Cybercity, Ebene
Mauritius

Sold to:                                          Sales Invoice
  **Unipower LLC**                                                          Page :    **2**

  ATTN: Accounts Payables /Stephanie Martin /JESSICA TURCHETTA
  3900 Coral Ridge Drive
  33065 Coral Springs
  UNITED STATES

                                        Invoice Number : 850/40000176
                                        Invoice Date   : 04-12-19

Ship To :
  **Unipower LLC**                      Customer ID      :CUDG23153
                                        Customer PO no   :092005-00
  ATTN: Stephanie Martin / JESSI        Reference A      :
  Dunlap Facility 65 Industrial         Reference B      :
  37327 Dunlap                          Sales Order no   :715T22942
  UNITED STATES                         Packing List no  :
                                        Term of Payment  :Net 60 Days
                                                          FC850
                                        Terms of Delivery:

| POPos Part Number | Item Description | Quantity | Price | Sales Tax | Amount in USD |
|---|---|---|---|---|---|
| Cust Part No | | | | | |

This is to notify you that Power Systems Technologies Ltd. has assigned all its right, title and interest in the receivable
under this invoice to Flex Jersey Ltd. You are instructed to make payment to Flex Jersey Ltd., account no. 1291469330,
SWIFT: BOFAUS3N with Bank of America. This invoice and all amounts due and payable hereunder shall be
governed by the laws of Mauritius.

                                  Carry Forward        :            0.00

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY PURSUANT TO D. DEL. LR 26.2        UNI0114188



**POWER SYSTEMS TECHNOLOGIES LTD**
Level 3, Alexander House
35 Cybercity, Ebene
Mauritius

Sold to:                                          Sales Invoice

**Unipower LLC**                                                         Page :    **1**

ATTN: Accounts Payables /Stephanie Martin /JESSICA TURCHETTA
3900 Coral Ridge Drive
33065 Coral Springs
UNITED STATES

Invoice Number : 850/40000177
Invoice Date   : 04-12-19

Ship To :

**Unipower LLC**

ATTN: Stephanie Martin / JESSI          Customer ID    :CUDG23153
Dunlap Facility 65 Industrial            Customer PO no :092005-00
37327 Dunlap                             Reference A    :
UNITED STATES                            Reference B    :
                                         Sales Order no :715T22943
                                         Packing List no :
                                         Term of Payment :Net 60 Days
                                                          FC850
                                         Terms of Delivery:

| POPos Part Number<br>Cust Part No | Item Description | Quantity | Price | Sales Tax | Amount in USD |
|---|---|---|---|---|---|
| 10  UFR-1-MS0023G900024-036 | Aspiro  19"/2U/4 pos ACX | 48.0000 ea | 453.750000 | | 21,780.00 |

Shipment no : 105141118

Sales Total  :        21,780.00
Sales Tax    :             0.00

**Invoice Total : USD      21,780.00**

**When paying, please refer to invoice number :  000/850/40000177**

(This is a computer generated document, no Signature required)
Bank to    : HongKong and Shanghai Banking Corp
Address    : 5th Floor, Les Cascades
.            Edith Cavell Street
ACCT NO    : 080-098296-020
SWIFT CODE : HSBCMUMUOBU



**POWER SYSTEMS TECHNOLOGIES LTD**
Level 3, Alexander House
35 Cybercity, Ebene
Mauritius

Sold to:                              Sales Invoice
  **Unipower LLC**                                              Page :    **2**

  ATTN: Accounts Payables /Stephanie Martin /JESSICA TURCHETTA
  3900 Coral Ridge Drive
  33065 Coral Springs
  UNITED STATES

                                   Invoice Number : 850/40000177
                                   Invoice Date   : 04-12-19
Ship To :
  **Unipower LLC**                      Customer ID    :CUDG23153
                                   Customer PO no  :092005-00
  ATTN: Stephanie Martin / JESSI      Reference A     :
  Dunlap Facility 65 Industrial       Reference B     :
  37327 Dunlap                        Sales Order no  :715T22943
  UNITED STATES                       Packing List no :
                                   Term of Payment :Net 60 Days
                                                    FC850
                                   Terms of Delivery:

| POPos Part Number | Item Description | Quantity | Price | Sales Tax | Amount in USD |
|---|---|---|---|---|---|
| Cust Part No | | | | | |

This is to notify you that Power Systems Technologies Ltd. has assigned all its right, title and interest in the receivable
under this invoice to Flex Jersey Ltd. You are instructed to make payment to Flex Jersey Ltd., account no. 1291469330,
SWIFT: BOFAUS3N with Bank of America. This invoice and all amounts due and payable hereunder shall be
governed by the laws of Mauritius.

                              Carry Forward       :            0.00

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY PURSUANT TO D. DEL. LR 26.2          UNI0114194



**POWER SYSTEMS TECHNOLOGIES LTD**
Level 3, Alexander House
35 Cybercity, Ebene
Mauritius

Sold to:                               Sales Invoice
  **Unipower LLC**                                                      Page :    **1**

ATTN: Accounts Payables /Stephanie Martin /JESSICA TURCHETTA
3900 Coral Ridge Drive
33065 Coral Springs
UNITED STATES

                                    Invoice Number : 850/40000399
                                    Invoice Date   : 04-22-19

Ship To :
  **Unipower LLC**                  Customer ID       :CUDG23153
                                    Customer PO no    :092006 - 00
ATTN: Stephanie Martin / JESSI      Reference A       :
Dunlap Facility 65 Industrial       Reference B       :
37327 Dunlap                        Sales Order no    :715T22947
UNITED STATES                       Packing List no   :
                                    Term of Payment   :Net 60 Days
                                                       FC850
                                    Terms of Delivery :

| POPos | Part Number | Item Description | Quantity | Price | Sales Tax | Amount in USD |
|---|---|---|---|---|---|---|
|  | Cust Part No |  |  |  |  |  |
| 10 | UFR-FMP20.24S101G-006 | POWER SUPPLY;GUARDIAN RECTI | 20.0000 ea | 129.810000 |  | 2,596.20 |

Shipment no : 105160855

                                    Sales Total  :          2,596.20
                                    Sales Tax    :              0.00

                                    **Invoice Total : USD      2,596.20**

        **When paying, please refer to invoice number :  000/850/40000399**

        (This is a computer generated document, no Signature required)
        Bank to   : HongKong and Shanghai Banking Corp
        Address   : 5th Floor, Les Cascades
        .           Edith Cavell Street
        ACCT NO   : 080-098296-020
        SWIFT CODE : HSBCMUMUOBU

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY PURSUANT TO D. DEL. LR 26.2          UNI0114101



**POWER SYSTEMS TECHNOLOGIES LTD**
Level 3, Alexander House
35 Cybercity, Ebene
Mauritius

Sold to:                                    Sales Invoice

**Unipower LLC**                                                    Page :    **2**

ATTN: Accounts Payables /Stephanie Martin /JESSICA TURCHETTA
3900 Coral Ridge Drive
33065 Coral Springs
UNITED STATES

                                Invoice Number : 850/40000399
                                Invoice Date   : 04-22-19

Ship To :
**Unipower LLC**                    Customer ID    :CUDG23153
                                Customer PO no  :092006 - 00
ATTN: Stephanie Martin / JESSI      Reference A    :
Dunlap Facility 65 Industrial       Reference B    :
37327 Dunlap                        Sales Order no  :715T22947
UNITED STATES                       Packing List no :
                                Term of Payment :Net 60 Days
                                                 FC850
                                Terms of Delivery:

| POPos Part Number | Item Description | Quantity | Price | Sales Tax | Amount in USD |
|---|---|---|---|---|---|
| Cust Part No | | | | | |

This is to notify you that Power Systems Technologies Ltd. has assigned all its right, title and interest in the receivable
under this invoice to Flex Jersey Ltd. You are instructed to make payment to Flex Jersey Ltd., account no. 1291469330,
SWIFT: BOFAUS3N with Bank of America. This invoice and all amounts due and payable hereunder shall be
governed by the laws of Mauritius.

                                Carry Forward      :              0.00

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY PURSUANT TO D. DEL. LR 26.2            UNI0114102



**POWER SYSTEMS TECHNOLOGIES LTD**
Level 3, Alexander House
35 Cybercity, Ebene
Mauritius

Sold to:                              Sales Invoice

**Unipower LLC**                                          Page :   **1**

ATTN: Accounts Payables /Stephanie Martin /JESSICA TURCHETTA
3900 Coral Ridge Drive
33065 Coral Springs
UNITED STATES

                              Invoice Number : 850/40002079
                              Invoice Date   : 07-03-19

Ship To :
**Unipower LLC**                         Customer ID      :CUDG23153
                              Customer PO no   :NA
ATTN: Stephanie Martin / JESSI           Reference A      :
Dunlap Facility 65 Industrial            Reference B      :
37327 Dunlap                             Sales Order no   :715C02202
UNITED STATES                            Packing List no  :
                              Term of Payment  :Net 60 Days
                                             FC850
                              Terms of Delivery:

| POPos | Part Number | Item Description | Quantity | Price | Sales Tax | Amount in USD |
|-------|-------------|------------------|----------|-------|-----------|---------------|
|       | Cust Part No |                 |          |       |           |               |
| 10    | FLX_UPR_S_MISC | Unipower MISC SALES for Ser | 1.0000 ea | 21399.790000 | | 21,399.79 |
|       | Shipment no : 105376389 |       |          |       |           |               |
| 20    | FLX_UPR_S_MISC | Unipower MISC SALES for Ser | 1.0000 ea | 2884.000000 | | 2,884.00 |
|       | Shipment no : 105376389 |       |          |       |           |               |

                              Sales Total  :        24,283.79
                              Sales Tax    :             0.00

                              **Invoice Total : USD    24,283.79**

          **When paying, please refer to invoice number :  000/850/40002079**


     (This is a computer generated document, no Signature required)
     Bank to   : HongKong and Shanghai Banking Corp
     Address   : 5th Floor, Les Cascades
     .           Edith Cavell Street
     ACCT NO   : 080-098296-020
     SWIFT CODE : HSBCMUMUOBU

CONFIDENTIAL                                          PSTL042687



**POWER SYSTEMS TECHNOLOGIES LTD**
Level 3, Alexander House
35 Cybercity, Ebene
Mauritius

Sold to:                          Sales Invoice

**Unipower LLC**                                                    Page :   **2**

ATTN: Accounts Payables /Stephanie Martin /JESSICA TURCHETTA
3900 Coral Ridge Drive
33065 Coral Springs
UNITED STATES

                                  Invoice Number : 850/40002079
                                  Invoice Date   : 07-03-19

Ship To :
**Unipower LLC**                   Customer ID        :CUDG23153
                                   Customer PO no     :NA
ATTN: Stephanie Martin / JESSI     Reference A        :
Dunlap Facility 65 Industrial      Reference B        :
37327 Dunlap                       Sales Order no     :715C02202
UNITED STATES                      Packing List no    :
                                   Term of Payment    :Net 60 Days
                                                        FC850
                                   Terms of Delivery:

| POPos Part Number | Item Description | Quantity | Price | Sales Tax | Amount in USD |
|---|---|---|---|---|---|
| Cust Part No | | | | | |

This is to notify you that Power Systems Technologies Ltd. has assigned all its right, title and interest in the receivable
under this invoice to Flex Jersey Ltd. You are instructed to make payment to Flex Jersey Ltd., account no. 1291469330,
SWIFT: BOFAUS3N with Bank of America. This invoice and all amounts due and payable hereunder shall be
governed by the laws of Mauritius.

                                  Carry Forward      :           0.00

CONFIDENTIAL                                                      PSTL042688

A095



**POWER SYSTEMS TECHNOLOGIES LTD**
Level 3, Alexander House
35 Cybercity, Ebene
Mauritius

Sold to:                              Sales Invoice                    **ORIGINAL**
   **Unipower LLC**                                                    Page :   **1**

ATTN: Accounts Payables /Stephanie Martin /JESSICA TURCHETTA
3900 Coral Ridge Drive
33065 Coral Springs
UNITED STATES

                                      Invoice Number : 850/40002974
                                      Invoice Date   : 08-09-19

Ship To :
   **Unipower LLC**                   Customer ID       :CUDG23153
                                      Customer PO no    :097411-00
ATTN: Stephanie Martin / JESSI        Reference A       :
Dunlap Facility 65 Industrial         Reference B       :
37327 Dunlap                          Sales Order no    :715T23920
UNITED STATES                         Packing List no :
                                      Term of Payment :Net 60 Days
                                                        FC850
                                      Terms of Delivery:

| POPos | Part Number | Item Description | Quantity | Price | Sales Tax | Amount in USD |
|-------|-------------|------------------|----------|-------|-----------|---------------|
|       | Cust Part No |                 |          |       |           |               |
| 10    | UPR-ZTMJ002-G-AA | Mosfet 80 V, 100 A, 2.8 mOh | 28406.0000 ea | 1.339000 | | 38,035.63 |
|       | ZTMJ002-G-AA |                  |          |       |           |               |
|       | Shipment. no : 105548711 |        |          |       |           |               |

                                      Sales Total   :        38,035.63
                                      Sales Tax     :             0.00

                                      **Invoice Total : USD     38,035.63**

            **When paying, please refer to invoice number :  000/850/40002974**

        (This is a computer generated document, no Signature required)
        Bank to    : HongKong and Shanghai Banking Corp
        Address    : 5th Floor, Les Cascades
        .            Edith Cavell Street
        ACCT NO    : 080-098296-020
        SWIFT CODE : HSBCMUMUOBU

CONFIDENTIAL                                                    PSTL043839



**POWER SYSTEMS TECHNOLOGIES LTD**
Level 3, Alexander House
35 Cybercity, Ebene
Mauritius

Sold to:                          Sales Invoice
  **Unipower LLC**                                           Page :    **2**

  ATTN: Accounts Payables /Stephanie Martin /JESSICA TURCHETTA
  3900 Coral Ridge Drive
  33065 Coral Springs
  UNITED STATES

                                    Invoice Number : 850/40002974
                                    Invoice Date   : 08-09-19
Ship To :
  **Unipower LLC**                    Customer ID      :CUDG23153
                                      Customer PO no   :097411-00
  ATTN: Stephanie Martin / JESSI      Reference A      :
  Dunlap Facility 65 Industrial       Reference B      :
  37327 Dunlap                        Sales Order no   :715T23920
  UNITED STATES                       Packing List no  :
                                      Term of Payment  :Net 60 Days
                                                         FC850
                                    Terms of Delivery:

| POPos Part Number | Item Description | Quantity | Price | Sales Tax | Amount in USD |
|---|---|---|---|---|---|
| Cust Part No | | | | | |

This is to notify you that Power Systems Technologies Ltd. has assigned all its right, title and interest in the receivable
under this invoice to Flex Jersey Ltd. You are instructed to make payment to Flex Jersey Ltd., account no. 1291469330,
SWIFT: BOFAUS3N with Bank of America. This invoice and all amounts due and payable hereunder shall be
governed by the laws of Mauritius.

                                    Carry Forward      :           0.00

CONFIDENTIAL                                                    PSTL043840

A097



**POWER SYSTEMS TECHNOLOGIES LTD**
Level 3, Alexander House
35 Cybercity, Ebene
Mauritius

Sold to:                          Sales Invoice                    **ORIGINAL**
**Unipower LLC**                                                    Page :   **1**

ATTN: Accounts Payables /Stephanie Martin /JESSICA TURCHETTA
3900 Coral Ridge Drive
Coral Springs
33065
USA
                              Invoice Number : 850/40003939
                              Invoice Date   : 09-24-19
Ship To :
**Unipower LLC**                   Customer ID       :CUDG23153
                                   Customer PO no    :MSA201900547
ATTN: Stephanie Martin / JESSI     Reference A       :
Dunlap Facility 65 Industrial      Reference B       :
Dunlap                             Sales Order no    :715C02281
37327                              Packing List no   :
USA                                Term of Payment   :Net 60 Days
                                                      FC850
                                   Terms of Delivery :

| POPos Part Number | Item Description | Quantity | Price | Sales Tax | Amount in USD |
|---|---|---|---|---|---|
| Cust Part No |  |  |  |  |  |
| 10  FLX_UPR_S_MISC | Unipower MISC SALES for Ser | 1.0000 ea | 325.000000 |  | 325.00 |

Shipment no : 105804056

                              Sales Total  :          325.00
                              Sales Tax    :            0.00

                              **Invoice Total : USD      325.00**

        **When paying, please refer to invoice number :  000/850/40003939**


(This is a computer generated document, no Signature required)
Bank to   : HongKong and Shanghai Banking Corp
Address   : 5th Floor, Les Cascades
.           Edith Cavell Street
ACCT NO   : 080-098296-020
SWIFT CODE : HSBCMUMUOBU

CONFIDENTIAL                                              PSTL047449



**POWER SYSTEMS TECHNOLOGIES LTD**
Level 3, Alexander House
35 Cybercity, Ebene
Mauritius

Sold to:                          Sales Invoice
  **Unipower LLC**                                          Page :    **2**

  ATTN: Accounts Payables /Stephanie Martin /JESSICA TURCHETTA
  3900 Coral Ridge Drive
  Coral Springs
  33065
  USA
                                    Invoice Number : 850/40003939
                                    Invoice Date   : 09-24-19
Ship To :
  **Unipower LLC**                  Customer ID      :CUDG23153
                                    Customer PO no   :MSA201900547
  ATTN: Stephanie Martin / JESSI    Reference A      :
  Dunlap Facility 65 Industrial     Reference B      :
  Dunlap                            Sales Order no   :715C02281
  37327                             Packing List no  :
  USA                               Term of Payment  :Net 60 Days
                                                      FC850
                                    Terms of Delivery:

| POPos Part Number | Item Description | Quantity | Price | Sales Tax | Amount in USD |
|---|---|---|---|---|---|
| Cust Part No | | | | | |

This is to notify you that Power Systems Technologies Ltd. has assigned all its right, title and interest in the receivable
under this invoice to Flex Jersey Ltd. You are instructed to make payment to Flex Jersey Ltd., account no. 1291469330,
SWIFT: BOFAUS3N with Bank of America. This invoice and all amounts due and payable hereunder shall be
governed by the laws of Mauritius.

                              Carry Forward      :            0.00

CONFIDENTIAL                                                      PSTL047450

                                   A099



**POWER SYSTEMS TECHNOLOGIES LTD**
Level 3, Alexander House
35 Cybercity, Ebene
Mauritius

```
Sold to:                          Sales Invoice
  Unipower LLC                                              Page :    1

  ATTN: Accounts Payables /Stephanie Martin /JESSICA TURCHETTA
  3900 Coral Ridge Drive
  Coral Springs
  33065
  USA
                                    Invoice Number : 850/40004003
                                    Invoice Date   : 09-25-19
Ship To :
  Unipower LLC                      Customer ID     :CUDG23153
                                    Customer PO no  :097747 - 00
  ATTN: Stephanie Martin / JESSI    Reference A     :
  Dunlap Facility 65 Industrial     Reference B     :
  Dunlap                            Sales Order no  :715T24319
  37327                             Packing List no :
  USA                               Term of Payment :Net 60 Days
                                                     FC850
                                    Terms of Delivery:
```

| POPos Part Number | Item Description | Quantity | Price | Sales Tax | Amount in USD |
|---|---|---|---|---|---|
| **Cust Part No** | | | | | |
| 10 UPR-1-114258-G-AA-3 | Terminal plug 3p.MCV1.5/3-G | 549.0000 ea | 0.190000 | | 104.31 |
| 1-114258-G-AA-3 | | | | | |
| Shipment no : 105808966 | | | | | |
| 20 UPR-1-151432-G-AA2-3 | Compact Power Shelf Control | 411.0000 ea | 2.790000 | | 1,146.69 |
| 1-151432-G-AA2 | | | | | |
| Shipment no : 105808966 | | | | | |
| 30 UPR-1-152353-G-AA-3 | COMPACT Leading slot | 1169.0000 ea | 0.700000 | | 818.30 |
| 1-152353-G-AA-3 | | | | | |
| Shipment no : 105808966 | | | | | |
| 40 UPR-1-155467-G-AA1-3 | COMPACT Front plate Breaker | 596.0000 ea | 0.940000 | | 560.24 |
| 1-155467-G-AA1-3 | | | | | |
| Shipment no : 105808966 | | | | | |
| 50 UPR-XAB.00113.0-AB-3 | BRACKET;LEFT MOUNTING BRACK | 647.0000 ea | 1.720000 | | 1,112.84 |
| XAB.00113.0-AB-3 | | | | | |
| Shipment no : 105808966 | | | | | |

```
                          Carry Forward    :        3,742.38
```

CONFIDENTIAL                                              PSTL048026

A100



**POWER SYSTEMS TECHNOLOGIES LTD**
Level 3, Alexander House
35 Cybercity, Ebene
Mauritius

Sold to:                              Sales Invoice
  **Unipower LLC**                                                Page :   **2**

  ATTN: Accounts Payables /Stephanie Martin /JESSICA TURCHETTA
  3900 Coral Ridge Drive
  Coral Springs
  33065
  USA
                                    Invoice Number : 850/40004003
                                    Invoice Date   : 09-25-19
Ship To :
  **Unipower LLC**                  Customer ID      :CUDG23153
                                    Customer PO no   :097747 - 00
  ATTN: Stephanie Martin / JESSI    Reference A      :
  Dunlap Facility 65 Industrial     Reference B      :
  Dunlap                            Sales Order no   :715T24319
  37327                             Packing List no  :
  USA                               Term of Payment  :Net 60 Days
                                                      FC850
                                    Terms of Delivery:

| POPos | Part Number | Item Description | Quantity | Price | Sales Tax | Amount in USD |
|-------|-------------|------------------|----------|-------|-----------|---------------|
|       | Cust Part No |                 |          |       |           |               |
| 60 | UPR-XAB.00114.0-AB-3 | BRACKET;RIGHT MOUNTING BRAC | 656.0000 ea | 1.720000 | | 1,128.32 |
|    | XAB.00114.0-AB-3 | | | | | |
|    | Shipment no : 105808966 | | | | | |
| 70 | UPR-XAB.00147.0-AB-3 | BRACKET;FOR CONTACTOR;;SPCC | 540.0000 ea | 0.580000 | | 313.20 |
|    | XAB.00147.0-AB-3 | | | | | |
|    | Shipment no : 105808966 | | | | | |
| 80 | UPR-XAB.00148.0-AA-3 | BRACKET;FOR MCB;;SPCC-SD 1. | 791.0000 ea | 0.950000 | | 751.45 |
|    | XAB.00148.0-AA-3 | | | | | |
|    | Shipment no : 105808966 | | | | | |
| 90 | UPR-XBB.00250.0-AB-3 | BUSBAR;NEGATIVE -48V COMPAC | 824.0000 ea | 2.270000 | | 1,870.48 |
|    | XBB.00250.0-AB-3 | | | | | |
|    | Shipment no : 105808966 | | | | | |
| 100 | UPR-XBB.00251.0-AC-3 | BUSBAR;POSITIVE -48V COMPAC | 1022.0000 ea | 1.990000 | | 2,033.78 |
|    | XBB.00251.0-AC-3 | | | | | |
|    | Shipment no : 105808966 | | | | | |

                       Carry Forward       :        6,097.23



**POWER SYSTEMS TECHNOLOGIES LTD**
Level 3, Alexander House
35 Cybercity, Ebene
Mauritius

Sold to:                          Sales Invoice
**Unipower LLC**                                              Page :   **3**

ATTN: Accounts Payables /Stephanie Martin /JESSICA TURCHETTA
3900 Coral Ridge Drive
Coral Springs
33065
USA
                               Invoice Number : 850/40004003
                               Invoice Date   : 09-25-19
Ship To :
**Unipower LLC**                    Customer ID    :CUDG23153
                               Customer PO no :097747 - 00
ATTN: Stephanie Martin / JESSI      Reference A    :
Dunlap Facility 65 Industrial       Reference B    :
Dunlap                              Sales Order no :715T24319
37327                               Packing List no :
USA                                 Term of Payment :Net 60 Days
                                                   FC850
                               Terms of Delivery:

| POPos | Part Number | Item Description | Quantity | Price | Sales Tax | Amount in USD |
|-------|-------------|------------------|----------|-------|-----------|---------------|
|       | Cust Part No |                 |          |       |           |               |
| 110   | UPR-XBB.00252.0-AC-3 | BUSBAR;POS PARALLEL -48V CO | 615.0000 ea | 2.880000 | | 1,771.20 |
|       | XBB.00252.0-AC-3 | | | | | |
|       | Shipment no : 105808966 | | | | | |
| 120   | UPR-XBB.00253.0-AC-3 | BUSBAR;POS CONNECT -48V COM | 675.0000 ea | 3.110000 | | 2,099.25 |
|       | XBB.00253.0-AC-3 | | | | | |
|       | Shipment no : 105808966 | | | | | |
| 130   | UPR-XBB.00254.0-AC-3 | BUSBAR;POS TERMINAL -48V CO | 541.0000 ea | 9.060000 | | 4,901.46 |
|       | XBB.00254.0-AC-3 | | | | | |
|       | Shipment no : 105808966 | | | | | |
| 140   | UPR-XBB.00255.0-AC-3 | BUSBAR;NEG PARALLEL -48V CO | 614.0000 ea | 1.700000 | | 1,043.80 |
|       | XBB.00255.0-AC-3 | | | | | |
|       | Shipment no : 105808966 | | | | | |
| 150   | UPR-XBB.00256.0-AC-3 | BUSBAR;NEG CONNECT -48V COM | 589.0000 ea | 2.880000 | | 1,696.32 |
|       | XBB.00256.0-AC-3 | | | | | |
|       | Shipment no : 105808966 | | | | | |

                               Carry Forward      :      11,512.03

CONFIDENTIAL                                              PSTL048028



**POWER SYSTEMS TECHNOLOGIES LTD**
Level 3, Alexander House
35 Cybercity, Ebene
Mauritius

Sold to:                         Sales Invoice
**Unipower LLC**                                          Page :   **4**

ATTN: Accounts Payables /Stephanie Martin /JESSICA TURCHETTA
3900 Coral Ridge Drive
Coral Springs
33065
USA

Invoice Number : 850/40004003
Invoice Date   : 09-25-19

Ship To :
**Unipower LLC**                  Customer ID      :CUDG23153
                                  Customer PO no   :097747 - 00
ATTN: Stephanie Martin / JESSI    Reference A      :
Dunlap Facility 65 Industrial     Reference B      :
Dunlap                            Sales Order no   :715T24319
37327                             Packing List no  :
USA                               Term of Payment  :Net 60 Days
                                                    FC850
                                  Terms of Delivery:

| POPos | Part Number | Item Description | Quantity | Price | Sales Tax | Amount in USD |
|---|---|---|---|---|---|---|
| | **Cust Part No** | | | | | |
| 160 | UPR-XBB.00257.0-AC-3 | BUSBAR;TO SHUNT -48V COMPAC | 617.0000 ea | 1.200000 | | 740.40 |
| | XBB.00257.0-AC-3 | | | | | |
| | Shipment no : 105808966 | | | | | |
| 170 | UPR-XBB.00258.0-AC-3 | BUSBAR;SH-CONTACTOR -48V CO | 571.0000 ea | 2.520000 | | 1,438.92 |
| | XBB.00258.0-AC-3 | | | | | |
| | Shipment no : 105808966 | | | | | |
| 180 | UPR-XBB.00259.0-AC-3 | BUSBAR;TO CONTACTOR -48V CO | 605.0000 ea | 1.200000 | | 726.00 |
| | XBB.00259.0-AC-3 | | | | | |
| | Shipment no : 105808966 | | | | | |
| 190 | UPR-XBB.00260.0-AB-3 | BUSBAR;NEG BATTERY -48V COM | 626.0000 ea | 3.110000 | | 1,946.86 |
| | XBB.00260.0-AB-3 | | | | | |
| | Shipment no : 105808966 | | | | | |
| 200 | UPR-XBB.00261.0-AC-3 | BUSBAR;NEG TERMINAL -48V CO | 925.0000 ea | 3.110000 | | 2,876.75 |
| | XBB.00261.0-AC-3 | | | | | |
| | Shipment no : 105808966 | | | | | |

Carry Forward      :      7,728.93

CONFIDENTIAL                                              PSTL048029

A103



**POWER SYSTEMS TECHNOLOGIES LTD**
Level 3, Alexander House
35 Cybercity, Ebene
Mauritius

Sold to:                          Sales Invoice
**Unipower LLC**                                          Page :  **5**

ATTN: Accounts Payables /Stephanie Martin /JESSICA TURCHETTA
3900 Coral Ridge Drive
Coral Springs
33065
USA
                                   Invoice Number : 850/40004003
                                   Invoice Date  : 09-25-19
Ship To :
**Unipower LLC**                   Customer ID      :CUDG23153
                                   Customer PO no   :097747 - 00
ATTN: Stephanie Martin / JESSI     Reference A      :
Dunlap Facility 65 Industrial      Reference B      :
Dunlap                             Sales Order no   :715T24319
37327                              Packing List no  :
USA                                Term of Payment  :Net 60 Days
                                                     FC850
                                   Terms of Delivery:

| POPos | Part Number<br>Cust Part No | Item Description | Quantity | Price | Sales Tax | Amount in USD |
|---|---|---|---|---|---|---|
| 210 | UPR-XEE.00393.0-AB-3<br>XEE.00393.0-AB-3<br>Shipment no : 105808966 | ENCL;SHELF MOUNTING;-48V CO | 500.0000 ea | 34.260000 | | 17,130.00 |
| 220 | UPR-XEE.00394.0-AC-3<br>XEE.00394.0-AC-3<br>Shipment no : 105808966 | ENCL;RIGHT WALL;-48V COMPAC | 498.0000 ea | 10.760000 | | 5,358.48 |
| 220 | UPR-XEE.00395.0-AB-3<br>XEE.00395.0-AB-3<br>Shipment no : 105808966 | ENCL;REAR COVER;-48V COMPAC | 517.0000 ea | 3.110000 | | 1,607.87 |
| 240 | UPR-XEE.00396.0-AB-3<br>XEE.00396.0-AB-3<br>Shipment no : 105808966 | ENCL;TOP COVER;-48V COMPACT | 527.0000 ea | 6.910000 | | 3,641.57 |
| 250 | UPR-XEE.00397.0-AB-3<br>XEE.00397.0-AB-3<br>Shipment no : 105808966 | ENCL;SUPPORT CONTROLLER BAC | 639.0000 ea | 1.170000 | | 747.63 |

                    Carry Forward       :       28,485.55

CONFIDENTIAL                                          PSTL048030

A104



**POWER SYSTEMS TECHNOLOGIES LTD**
Level 3, Alexander House
35 Cybercity, Ebene
Mauritius

Sold to:                              Sales Invoice
  **Unipower LLC**                                              Page :  **6**

ATTN: Accounts Payables /Stephanie Martin /JESSICA TURCHETTA
3900 Coral Ridge Drive
Coral Springs
33065
USA
                              Invoice Number : 850/40004003
                              Invoice Date   : 09-25-19
Ship To :
  **Unipower LLC**                    Customer ID      :CUDG23153
                              Customer PO no   :097747 - 00
ATTN: Stephanie Martin / JESSI        Reference A      :
Dunlap Facility 65 Industrial         Reference B      :
Dunlap                                Sales Order no   :715T24319
37327                                 Packing List no  :
USA                                   Term of Payment  :Net 60 Days
                                                         FC850
                              Terms of Delivery:

| POPos | Part Number | Item Description | Quantity | Price | Sales Tax | Amount in USD |
|---|---|---|---|---|---|---|
| | Cust Part No | | | | | |
| 260 | UPR-XEF.00080.0-AB-3 | FRONT PANEL;BLEND FOR -48V | 685.0000 ea | 1.200000 | | 822.00 |
| | XEF.00080.0-AB-3 | | | | | |
| | Shipment no : 105808966 | | | | | |
| 270 | UPR-XFM.00023.0-AA-3 | SCREW;;SLOTTED COUNTERSUNK | 15107.0000 ea | 0.070000 | | 1,057.49 |
| | XFM.00023.0-AA-3 | | | | | |
| | Shipment no : 105808966 | | | | | |
| 280 | UPR-XFM.00025.0-AA1-3 | SCREW;;PAN TORX;M4.0x06mm;; | 14930.0000 ea | 0.030000 | | 447.90 |
| | XFM.00025.0-AA1-3 | | | | | |
| | Shipment no : 105808966 | | | | | |
| 290 | UPR-XFN.00001.0-AA-3 | NUT;HEX NUT M8 WITH CONICAL | 6953.0000 ea | 0.060000 | | 417.18 |
| | XFN.00001.0-AA-3 | | | | | |
| | Shipment no : 105808966 | | | | | |
| 300 | UPR-ZEQ.00017.0-AA-3 | CONTACTOR;SW80- 48V 125A;;; | 534.0000 ea | 12.500000 | | 6,675.00 |
| | ZEQ.00017.0-AA-3 | | | | | |
| | Shipment no : 105808966 | | | | | |

                    Carry Forward      :       9,419.57

CONFIDENTIAL                                    PSTL048031



**POWER SYSTEMS TECHNOLOGIES LTD**
Level 3, Alexander House
35 Cybercity, Ebene
Mauritius

Sold to:                          Sales Invoice

**Unipower LLC**                                        Page :    **7**

ATTN: Accounts Payables /Stephanie Martin /JESSICA TURCHETTA
3900 Coral Ridge Drive
Coral Springs
33065
USA

                          Invoice Number : 850/40004003
                          Invoice Date   : 09-25-19
Ship To :
**Unipower LLC**          Customer ID     :CUDG23153
                          Customer PO no  :097747 - 00
ATTN: Stephanie Martin / JESSI   Reference A     :
Dunlap Facility 65 Industrial    Reference B     :
Dunlap                    Sales Order no  :715T24319
37327                     Packing List no :
USA                       Term of Payment :Net 60 Days
                                           FC850
                          Terms of Delivery:

| POPos | Part Number | Item Description | Quantity | Price | Sales Tax | Amount in USD |
|-------|-------------|------------------|----------|-------|-----------|---------------|
|       | Cust Part No |                 |          |       |           |               |
| 310   | UPR-ZGN.00090.0-AB-3 | PCB;COMCELL POWER SHELF BAC | 816.0000 ea | 4.470000 | | 3,647.52 |
|       | ZGN.00090.0-AB-3 | | | | | |
|       | Shipment no : 105808966 | | | | | |
| 320   | UPR-ZGX.00045.0-AC-3 | PCB;NEW MODCELL AC INPUT FI | 397.0000 ea | 2.860000 | | 1,135.42 |
|       | ZGX.00045.0-AC-3 | | | | | |
|       | Shipment no : 105808966 | | | | | |
| 330   | UPR-XKI.00697.0-AA1 | INSULATOR;COMPACTFILTER INS | 1778.0000 ea | 0.340000 | | 604.52 |
|       | XKI.00697.0-AA1 | | | | | |
|       | Shipment no : 105808967 | | | | | |
| 340   | UPR-XKI.00584.0-AA1 | INS;BUSBAR;GE VALOX;0.25mm; | 1816.0000 ea | 0.320000 | | 581.12 |
|       | XKI.00584.0-AA1 | | | | | |
|       | Shipment no : 105808967 | | | | | |
| 350   | UPR-899-28020-G-0A | CONN HDR ST 3P .100 CRS 3A | 27567.0000 ea | 0.030000 | | 827.01 |
|       | 899-28020-G-0A | | | | | |
|       | Shipment no : 105808967 | | | | | |

                          Carry Forward      :        6,795.59

CONFIDENTIAL                                            PSTL048032

A106



**POWER SYSTEMS TECHNOLOGIES LTD**
Level 3, Alexander House
35 Cybercity, Ebene
Mauritius

Sold to:                                Sales Invoice
   **Unipower LLC**                                                          Page :   **8**

   ATTN: Accounts Payables /Stephanie Martin /JESSICA TURCHETTA
   3900 Coral Ridge Drive
   Coral Springs
   33065
   USA
                                        Invoice Number : 850/40004003
                                        Invoice Date   : 09-25-19
Ship To :
   **Unipower LLC**                     Customer ID     :CUDG23153
                                        Customer PO no  :097747 - 00
   ATTN: Stephanie Martin / JESSI       Reference A     :
   Dunlap Facility 65 Industrial        Reference B     :
   Dunlap                               Sales Order no  :715T24319
   37327                                Packing List no :
   USA                                  Term of Payment :Net 60 Days
                                                         FC850
                                        Terms of Delivery:

| POPos | Part Number | Item Description | Quantity | Price | Sales Tax | Amount in USD |
|---|---|---|---|---|---|---|
| | Cust Part No | | | | | |
| 360 | UPR-1-100004-G-AA4 | Fastener strips T18R 2.5X13 | 14889.0000 ea | 0.010000 | | 148.89 |
| | 1-100004-G-AA4 | | | | | |
| | Shipment no : 105808967 | | | | | |
| 370 | UPR-1-101845-G-AA1 | Programming jumper 2pins (2 | 6987.0000 ea | 0.040000 | | 279.48 |
| | 1-101845-G-AA1 | | | | | |
| | Shipment no : 105808967 | | | | | |

                               Sales Total  :      74,209.65
                               Sales Tax    :           0.00

                               **Invoice Total : USD   74,209.65**

          **When paying, please refer to invoice number :  000/850/40004003**


        (This is a computer generated document, no Signature required)
         Bank to   : HongKong and Shanghai Banking Corp
         Address   : 5th Floor, Les Cascades
         .           Edith Cavell Street
         ACCT NO   : 080-098296-020
         SWIFT CODE : HSBCMUMUOBU

CONFIDENTIAL                                              PSTL048033

                            A107



**POWER SYSTEMS TECHNOLOGIES LTD**
Level 3, Alexander House
35 Cybercity, Ebene
Mauritius

Sold to:                          Sales Invoice
  **Unipower LLC**                                              Page :   **9**

  ATTN: Accounts Payables /Stephanie Martin /JESSICA TURCHETTA
  3900 Coral Ridge Drive
  Coral Springs
  33065
  USA
                              Invoice Number : 850/40004003
                              Invoice Date   : 09-25-19
Ship To :
  **Unipower LLC**                Customer ID      :CUDG23153
                                  Customer PO no   :097747 - 00
  ATTN: Stephanie Martin / JESSI  Reference A      :
  Dunlap Facility 65 Industrial   Reference B      :
  Dunlap                          Sales Order no   :715T24319
  37327                           Packing List no  :
  USA                             Term of Payment  :Net 60 Days
                                                    FC850
                                  Terms of Delivery :

| POPos Part Number | Item Description | Quantity | Price | Sales Tax | Amount in USD |
|---|---|---|---|---|---|
| Cust Part No | | | | | |

This is to notify you that Power Systems Technologies Ltd. has assigned all its right, title and interest in the receivable
under this invoice to Flex Jersey Ltd. You are instructed to make payment to Flex Jersey Ltd., account no. 1291469330,
SWIFT: BOFAUS3N with Bank of America. This invoice and all amounts due and payable hereunder shall be
governed by the laws of Mauritius.

                              Carry Forward       :          0.00

CONFIDENTIAL                                              PSTL048034

A108

# Exhibit F

**From:** Manish Panpaliya[manish.panpaliya@flex.com]
**Sent:** Wed 7/10/2019 3:21:23 AM Coordinated Universal Time
**Subject:** Important: Change in Payment instructions - Power System Technologies Ltd
**Attachment:** Flex Jersey 850.pdf

Dear Customer,

Good Day!!

This Notice is to inform you that we have assigned to Flex Jersey Limited, our right to receive payments from you. All payments to this account of Flex Jersey Limited will Discharge your Payment obligation to the same extent as though paid to **"Power System Technologies Ltd".**

Please send all your future invoice payments to attached Bank Details.



Manish Panpaliya
Specialist - GBS AR Management

Direct : +91-20 6689-9285
Email : manish.panpaliya@flex.com
Web : flex.com
Shift Time – 7:00 am- 4:00 pm (IST)

*Level 1 – (Not responded within 24 hrs) – Atul.Kashid@flex.com*
*Level 2 – (Not responded within 48 hrs) – Aakash.Kumar@flex.com*

Legal Disclaimer :

The information contained in this message may be privileged and confidential.
It is intended to be read only by the individual or entity to whom it is addressed
or by their designee. If the reader of this message is not the intended recipient,
you are on notice that any distribution of this message, in any form,
is strictly prohibited. If you have received this message in error,
please immediately notify the sender and delete or destroy any copy of this message!



19 June 2019

Dear Sir or Madam,

This notice is to inform you that we have assigned to Flex Jersey Limited our rights to receive payments from you, in conjunction with our Asset Backed Securitization funding program.

Please send all future invoice payments the following account:

> Account Name: Power Systems Technologies Ltd.
> Account: 1291469330
> Bank Name: Bank of America
> ABA/Transit for Wires: 026009593
> ABA/Transit for ACH: 121000358
> Swift: BOFAUS3NXXX

All payments to this account of Flex Jersey Limited will discharge your payment obligation to the same extent as though paid to Power Systems Technologies Ltd. directly.

We will continue to administer the receivables as agent for Flex Jersey Limited until further notice from Flex Jersey Limited.

We look forward to serving you in the future.


Yours faithfully,


**Power Systems Technologies Ltd.**

Signature: _____

Name: Manny Marimuthu

Title: Authorized Signatory

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY PURSUANT TO D. DEL. LR 26.2          UNI0034785

A110

# Exhibit G

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

POWER SYSTEMS TECHNOLOGIES, LTD.,    )
                                      )
          Plaintiff,             )
                                        )
   v.                              )   C.A. No. 20-016-CFC
                                        )
JMC PLATFORM FUND I-A, L.P.,         )
                                        )
         Defendant.           )

**PLAINTIFF'S OBJECTIONS AND RESPONSES TO
DEFENDANT'S SECOND SET OF REQUESTS FOR PRODUCTION**

Plaintiff Power Systems Technologies, Ltd. (the "Plaintiff") hereby serves these objections and responses to *Defendant's Second Set of Requests for Production* (the "Requests") propounded by Defendant JMC Platform Fund I-A, L.P. (the "Defendant"), and states as follows:

**GENERAL OBJECTIONS**

1.     The following general objections form a part of Plaintiff's response to each Request, and are set forth here to avoid the duplication and repetition of restating them for each individual response.  One or more general objection may also be specifically referred to in the response or objection to certain Requests for purposes of clarity.  Failure to make a specific reference, however, should not be construed as a waiver of any general objection, nor should any specific reference to one or more general objection(s) be construed as a waiver of any other general objection.

2.     By responding affirmatively to any Request, Plaintiff in no way concedes the relevance or materiality of the Request, or of the subject matter of the Request, or Defendant's characterization of any facts, events, or statements.  Plaintiff's responses are made subject to its right to object at any time to the relevancy, admissibility, or competency of any information.

3.      Plaintiff's responses to the Requests are made to the best of Plaintiff's knowledge and are based on information currently known and materials currently available to Plaintiff. Plaintiff's responses are also based upon its best, good-faith understanding and interpretation of each Request.  As such, Plaintiff's responses are given without prejudice to Plaintiff's right to produce evidence of any subsequently discovered information and to supplement, revise, correct, or clarify their responses in accordance with the Federal Rules of Civil Procedure (the "<u>Federal Rules</u>") and applicable law.

4.      Plaintiff objects to the Requests, including the "Instructions" set forth therein, to the extent they are inconsistent with or purport to expand the scope of permissible discovery under the Federal Rules.  Plaintiff responds to the Requests in accordance with its obligations under the Federal Rules.

5.      Plaintiff objects to the Requests to the extent that they call for the production of information or communications that are protected by the attorney-client privilege, work-product doctrine, or any other statute, rule, doctrine, privilege, or immunity from disclosure.  Plaintiff's responses shall not include any information or documents protected by such privileges, doctrines, statutes, or rules, and any inadvertent disclosure of such information or documents shall not be deemed a waiver of any such privileges, doctrines, statutes, or rules.

2

<u>**SPECIFIC RESPONSES AND OBJECTIONS TO REQUESTS FOR PRODUCTION**</u>

<u>**REQUEST FOR PRODUCTION NO. 43:**</u>

Any agreement by which PSTL has "assigned all its right, title and interest in the receivable under this invoice to Flex Jersey Ltd.," as reflected in

| | | | | |
|---|---|---|---|---|
| PSTL042687, | PSTL040145, | PSTL037424, | PSTL037419, | PSTL022109, |
| PSTL022119, | PSTL022117, | PSTL022115, | PSTL022113, | PSTL022111, |
| PSTL022107, | PSTL022105, | PSTL022103, | PSTL022101, | PSTL022099, |
| PSTL022097, | PSTL022095, | PSTL022093, | PSTL048026, | PSTL047449, |
| PSTL043839, | PSTL038557, | PSTL035905, | PSTL035900, | PSTL029338, |
| PSTL021879, | PSTL020907, | PSTL020899, | PSTL020901, | PSTL019275, |
| PSTL018380, | PSTL018082, | PSTL019940, | PSTL003532, | PSTL042219, |
| PSTL021881, and | PSTL011223. | | | |

**RESPONSE:  In Response to this Request, Plaintiff is contemporaneously producing the following agreements: (1) Amended and Restated Mauritius Receivables Securitisation Agreement, (2) Third Amended and Restated Servicing Agreement, and (3) Fourth Amended and Restated Receivables Purchase Agreement.**

<u>**REQUEST FOR PRODUCTION NO. 44:**</u>

Any agreement that implemented PSTL's assignment "to Flex Jersey Limited our rights to receive payments from you, in conjunction with our Asset Backed Securitization funding program," as reflected in PSTL042988.

**RESPONSE:  Plaintiff objects to this Request because the phrase "that implemented PSTL's assignment" is vague and ambiguous.   In Response to this Request, Plaintiff is**

contemporaneously producing the following agreements: (1) Amended and Restated Mauritius Receivables Securitisation Agreement, (2) Third Amended and Restated Servicing Agreement, and (3) Fourth Amended and Restated Receivables Purchase Agreement.

**REQUEST FOR PRODUCTION NO. 45:**

All agreements related to PSTL's assignment of any right, title, or interest in receivables to Flex Jersey Ltd.

**RESPONSE:  Plaintiff objects to this Request because the phrase "related to" is vague, and, as a result, the Request fails to describe with reasonable particularity the documents requested.   In Response to this Request, Plaintiff is contemporaneously producing the following agreements: (1) Amended and Restated Mauritius Receivables Securitisation Agreement, (2) Third Amended and Restated Servicing Agreement, and (3) Fourth Amended and Restated Receivables Purchase Agreement.**

BENESCH, FRIEDLANDER,
COPLAN & ARONOFF LLP

*/s/ William M. Alleman, Jr.*
William M. Alleman, Jr. (No. 5449)
1313 North Market Street, Suite 1201
Wilmington, Delaware 19801
Telephone: (302) 442-7010
Facsimile: (302) 442-7012
walleman@beneschlaw.com

Dated: March 1, 2021                    *Counsel to Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 1, 2021, a true and correct copy of the foregoing *Plaintiff's*

*Objections and Responses to Defendant's Second Set of Requests for Production* was served upon

the following via e-mail:

John W. Shaw (No. 3362)
David M. Fry (No. 5486)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801

*Attorneys for Defendant*

_____*/s/ William M. Alleman, Jr.*_____
William M. Alleman, Jr. (I.D. No. 5449)

# Exhibit H

Power System Technologies, Ltd.
Suite 402
St. James Court, St. Denis Street
Port Louis, Mauritius

Chief Financial Officer
Unipower, LLC
3900 Coral Ridge Drive
Coral Springs, FL 33065

14 April 2021

Re:  Past Due Invoices; Notice of Default

Ladies and Gentlemen:

As you are aware, we have sent the following invoice for excess and obsolete materials
generated by Unipower for which Unipower is responsible under the Agreement for
Manufacturing Services dated July 15, 2016:

| Invoice # | Original Amount | Inv. Date | Due Date |
|---|---|---|---|
| 850/40000601 | $4,624,313.00 | 4/29/2019 | 6/28/2019 |

As of today's date, due to our ongoing mitigation efforts, the current balance of the foregoing
invoice has been reduced to $4,153,967.  This is now past due the contractual 60 day payment
term.  We demand payment in full of this amount.

Additionally, we have sent the following invoices for finished goods and other materials for
which Unipower is responsible under the Agreement:

| Invoice # | Original Amount | Balance | Inv. Date | Due Date |
|---|---|---|---|---|
| 850/40000093 | $39,462.24 | $1,109.67 | 4/8/2019 | 6/7/2019 |
| 850/40000174 | $33,231.36 | $33,231.36 | 4/12/2019 | 6/11/2019 |
| 850/40000177 | $21,780.00 | $21,780.00 | 4/12/2019 | 6/11/2019 |
| 850/40000175 | $1,998.00 | $1,998.00 | 4/12/2019 | 6/11/2019 |
| 850/40000176 | $24,502.50 | $24,502.50 | 4/12/2019 | 6/11/2019 |
| 850/40000173 | $34,789.08 | $34,789.08 | 4/12/2019 | 6/11/2019 |
| 850/40000399 | $2,596.20 | $2,596.20 | 4/22/2019 | 6/21/2019 |
| 850/40002079 | $24,283.79 | $24,283.79 | 7/3/2019 | 9/1/2019 |
| 850/40002974 | $38,035.63 | $38,035.63 | 8/9/2019 | 10/8/2019 |
| 850/40003939 | $325.00 | $325.00 | 9/24/2019 | 11/23/2019 |
| 850/40004003 | $74,209.65 | $74,209.65 | 9/25/2019 | 11/24/2019 |

These are also now past due the contractual 60 day payment term. We demand payment of the total amount.

Please note that, pursuant to Section 4.5 of the Agreement, Unipower further owes an additional 1.5% monthly interest on all of the identified late payments. As of March 31, 2021, the total amount of interest payable pursuant to this Section is $87,607.28, and interest continues to accrue. We demand payment of all interest under the Agreement.

We look forward to your prompt payment.

Regards,

B. Vijayandran A/L S. Balasingam
Director

CC:  JMC Platform Fund I-A, L.P.
125 Summer Street, Suite 1840
Boston, MA 02110
Attention: G. Lawrence Bero

## <u>CERTIFICATE OF SERVICE</u>

I, David M. Fry, hereby certify that on August 24, 2021, this document was

served on the persons listed below in the manner indicated:

**<u>BY EMAIL</u>**

William M. Alleman, Jr.
BENESCH, FRIEDLANDER, COPLAN
  & ARONOFF LLP
1313 N. Market Street, Suite
1201Wilmington, DE 19801
(302) 442-7010
walleman@beneschlaw.com

Andrew J. Jarzyna
BENESCH, FRIEDLANDER, COPLAN
  & ARONOFF LLP
71 South Wacker Drive,
Suite 1600  Chicago, IL 60606
(312) 212-4950
ajarzyna@beneschlaw.com

/s/ David M. Fry
John W. Shaw (No. 3362)
David M. Fry (No. 5486)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
dfry@shawkeller.com
*Attorneys for Defendant*

**Other Documents**

1:20-cv-00016-CFC Power Systems Technologies, Ltd. v. JMC Platform Fund I-A, L.P.

MEDIATION-MPT

<div align="center">

**U.S. District Court**

**District of Delaware**

</div>

## Notice of Electronic Filing

The following transaction was entered by Fry, David on 8/24/2021 at 4:43 PM EDT and filed on 8/24/2021

**Case Name:**       Power Systems Technologies, Ltd. v. JMC Platform Fund I-A, L.P.

**Case Number:**     1:20-cv-00016-CFC

**Filer:**            JMC Platform Fund I-A, L.P.

**Document Number:** 95

**Docket Text:**
**[SEALED] STATEMENT re [92] First MOTION for Summary Judgment *(No Breach) (Concise Statement of Facts)* by JMC Platform Fund I-A, L.P.. (Attachments: # (1) Certificate of Compliance, # (2) (Exhibits A to H) [A001-A117])(Fry, David)**

**1:20-cv-00016-CFC Notice has been electronically mailed to:**

David M. Fry     dfry@shawkeller.com, cal@shawkeller.com

John W. Shaw     jshaw@shawkeller.com, cal@shawkeller.com

William M. Alleman , Jr     WAlleman@beneschlaw.com, docket@beneschlaw.com, lmolinaro@beneschlaw.com

**1:20-cv-00016-CFC Filer will deliver document by other means to:**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=8/24/2021] [FileNumber=4617938-0
] [9864d91e745390ce8569843355090155e196175c5af61c69fc170a5e50fb52ead21
dc897f825c69e25a072e07ddec8387600929ecc8202f29cc60c7ed300929b]]
**Document description:**Certificate of Compliance
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=8/24/2021] [FileNumber=4617938-1
] [31c9bd576ccf4bcd03b7a8888210f74046206b0ac7b2027d14797bc69f4905cf4cc
4e42d3ab4b370960add4d411459f1354f3349807bcf86a2b05e9595a6fc12]]
**Document description:** (Exhibits A to H) [A001-A117]
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=8/24/2021] [FileNumber=4617938-2
] [d92101b260fae869ece55b7f508513c61bc9776fe83b6027ff75fb2bdecc2829538
cbc184cf2cff517bc7a4a740d978387bc2b77ad12817b7f4a8e4a94ee360a]]