# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| POWER SYSTEMS TECHNOLOGIES, LTD., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> JMC PLATFORM FUND I-A, L.P., ) <br> ) <br> Defendant. ) | C.A. No. 20-016-CFC <br><br> **PUBLIC VERSION –** <br> **FILED: October 13, 2021** |

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S FIRST MOTION FOR SUMMARY JUDGMENT (CONTENDING THERE IS NO BREACH)

Of Counsel:
Andrew J. Jarzyna (*pro hac vice*)
**BENESCH, FRIEDLANDER,**
  **COPLAN & ARONOFF LLP**
71 South Wacker Drive, Suite 1600
Chicago, Il 60606
Phone: (312) 212-4950
Email:  ajarzyna@beneschlaw.com

William M. Alleman, Jr. (No. 5449)
**BENESCH, FRIEDLANDER,**
  **COPLAN & ARONOFF LLP**
1313 N. Market Street, Suite 1201
Wilmington, DE 19801-1611
Phone: (302) 442-7010
Email:  walleman@beneschlaw.com

*Attorneys for Plaintiff Power Systems Technologies, Ltd.*

Dated:  October 6, 2021

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... ii

TABLE OF EXHIBITS ......................................................................................... iii

NATURE AND STAGE OF THE PROCEEDINGS ...............................................1

SUMMARY OF ARGUMENT ................................................................................2

STATEMENT OF FACTS .......................................................................................3

    I.     Three Agreements Govern PSTL's Relationship with Flex Jersey Vis-à-Vis the Receivables, but JMC Provides the Court with Only One, and Even with Respect to that One, Ignores Key Provisions.................................................3

    II.    Flex Jersey Appointed PSTL as its Servicer to Take All Actions Necessary to Collect the Amounts Due from JMC. .........................................................................................4

    III.   JMC Never Disputed PSTL's Ability to Enforce the Guaranty. .........................................................................................6

ARGUMENT .............................................................................................................7

CONCLUSION ....................................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*CWCapital Asset Mgmt., LLC v. Chi. Props., LLC*,
    610 F.3d 497 (7th Cir. 2010) ................................................................................9

*Greer v. O'Dell*,
    305 F.3d 1297 (11th Cir. 2002) ............................................................................9

*ICON Group, Inc. v. Mahogany Run Dev. Corp.*,
    829 F.2d 473 (3d Cir. 1987) ................................................................................11

*Intercept Pharma., Inc. v. Fiorucci*,
    277 F. Supp. 3d 678 (D. Del. 2017) ......................................................................8

*U.S. Bank Nat'l Ass'n v. Gunn*,
    31 F. Supp. 3d 636 (D. Del. 2014) ........................................................................9

**Other Authorities**

Fed. R. Civ. P. 17(a)(3) ................................................................................................3

# TABLE OF EXHIBITS

| Exhibit No. | DESCRIPTION | APPENDIX RANGE |
|---|---|---|
|  | Declaration of Trevor J. Illes in Support of Plaintiff's Opposition to Defendant's First Motion for Summary Judgment (Contending There Is No Breach) |  |
| 1. | Third Amended and Restated Servicing Agreement dated September 19, 2014, among Power Systems Technologies, Ltd., Flex Jersey Limited, and others | B001 – B077 |
| 2. | Fourth Amended and Restated Receivables Purchase Agreement dated September 19, 2014 among Flex Jersey Limited, Flex Ltd., and others | B078 – B304 |
| 3. | Declaration of Shane Michael Hollywood and Notice of Ratification on Behalf of Flex Jersey Limited, dated September 8, 2021 | B305 – B307 |

## NATURE AND STAGE OF THE PROCEEDINGS

This is an action to recover amounts due under a payment guaranty that Defendant JMC Platform Fund I-A, L.P. ("JMC") gave for the benefit of Plaintiff Power Systems Technologies, Ltd. ("PSTL"). PSTL and JMC's affiliate, Unipower, LLC ("Unipower"), were parties to an Agreement for Manufacturing Services (the "MSA"). JMC guaranteed, pursuant to a Second Amended and Restated Payment Guaranty dated December 5, 2017 (the "Guaranty"), the payment of any amount that may become due and payable by Unipower to PSTL pursuant to a bona fide invoice issued by PSTL under and in accordance with the terms of the MSA. Despite that unequivocal Guaranty, JMC has refused PSTL's repeated demands for payment of amounts owed by Unipower under the MSA.

PSTL filed this action against JMC on January 7, 2020. D.I. 1. In total, this action seeks payment of approximately $4.4 million pursuant to the Guaranty, comprised of (i) approximately $4.1 million for excess and obsolete inventory that is Unipower's responsibility under the MSA; and (ii) $256,860.88 related to unpaid invoices for goods delivered by PSTL to Unipower, plus interest and fees. JMC answered PSTL's complaint on February 28, 2020. D.I. 6. On October 14, 2020, PSTL filed an amended complaint (D.I. 29), which JMC answered on October 28, 2020. D.I. 30. Discovery has closed.

1

This is PSTL's response to JMC's first motion for summary judgment (contending there was no breach). *See* D.I. 92.

## SUMMARY OF ARGUMENT

1. JMC ignores a dispositive fact: Flex Jersey appointed PSTL to act as its servicer to collect the debt owed by JMC (and Unipower). Flex Jersey gave PSTL broad authority to "carry out all servicing and collection functions in relation to the Receivables." B012 (§ 3.1.1). PSTL has "full power and authority to do any and all things in connection with such servicing and collection functions, which it may deem necessary or desirable." B012 (§ 3.1.3). And PSTL agreed to endeavor "at its own expense to recover amounts due from defaulting Obligors…and, in particular…, procur[e] the exercise of all enforcement measures available concerning amounts due from defaulting Obligors." B014 (§ 3.3.1(p)).

2. The receivables at issue in this litigation were originated by PSTL and are "due and payable…to PSTL" as servicer for Flex Jersey. JMC has breached the plain language of the Guaranty by failing to pay the amounts owed.

3. PSTL is damaged by JMC's failure to pay the amounts at issue in this litigation because (i) PSTL has a contractual obligation to recover those amounts, enforceable by Flex Jersey; (ii) PSTL has incurred significant costs pursuing recovery of those amounts from JMC; (iii) JMC's failure to pay may reduce the fees

payable to PSTL under the Servicing Agreement; and (iv) PSTL may be obligated to indemnify Flex Jersey for JMC's non-payment.

4.      Further foreclosing any doubt that PSTL is the correct party to pursue this action and collect on the Guaranty, Flex Jersey has ratified PSTL's continuation of this action and has agreed to be bound by its result.  B306-07; *see* Fed. R. Civ. P. 17(a)(3).

## STATEMENT OF FACTS

**I.      Three Agreements Govern PSTL's Relationship with Flex Jersey Vis-à-Vis the Receivables, but JMC Provides the Court with Only One, and Even with Respect to that One, Ignores Key Provisions.**

JMC acknowledges that "PSTL produced three agreements" relating to PSTL's assignment of receivables to Flex Jersey, but JMC provided the Court with only one of them:  the Receivables Agreement.  Op. Br. at 3; *see* A113.

Although JMC does not mention it, the Receivables Agreement states that *PSTL "will procure…the collection of all Collections in respect of the Receivables* and the servicing of such Receivables and any related Contracts upon the terms and subject to the conditions of this Agreement and the Servicing Agreement."  A004 (¶ D) (emphasis added).  The "Collections" and "Receivables" that PSTL is to procure expressly include "any payments under any guarantees" and "all rights to sue for and recover such amounts."  *See* A005-006 (definition of "Receivables"); A005 (§ 1.1) (providing that terms not defined in the Receivables Agreement, like "Collections,"

3

have the same meaning as in the Fourth Amended and Restated Receivables Purchase Agreement dated September 19, 2014); B169 (definition of "Collections").

JMC never provides the Court with the "Servicing Agreement"[1] or the related Fourth Amended and Restated Receivables Purchase Agreement dated as of September 19, 2014 (the "RPA").  Nor does JMC address in any way PSTL's obligations under the Receivables Agreement to "procure…the collection of all Collections in respect of the Receivables."  A004 (¶ D).

JMC's analysis is incomplete.

## II. Flex Jersey Appointed PSTL as its Servicer to Take All Actions Necessary to Collect the Amounts Due from JMC.

The Servicing Agreement is a critical agreement in the context of JMC's motion.  It shows that JMC's motion is without merit.

Pursuant to the Servicing Agreement, PSTL was "appointed to carry out the functions specified in Clause 3 [of the Servicing Agreement], including, as applicable, servicing and collecting Receivables."  B010 (§ 2); *see also* B011-015 (§§ 2.2.2, 3.1, 3.2, 3.3).  The Servicing Agreement provides that PSTL "shall have full power and authority to do any and all things in connection with such servicing and collection functions, which it may deem necessary or desirable."  B012 (§ 3.1.3).

---

[1]  *I.e.*, the Third Amended and Restated Servicing Agreement between PSTL and Flex Jersey (among others) dated September 19, 2014 (the "Servicing Agreement").  *See* B003-77.

The Servicing Agreement provides that "the servicing functions of [PSTL] shall include…giving such time and attention, and exercising such reasonable skill, care and diligence in the performance of its duties hereunder as it would in servicing the Receivables if it were the owner thereof." B012-13 (§ 3.3.1(j)).

The Servicing Agreement also specifically provides that "the servicing functions of [PSTL] shall include…endeavouring, at its own expense to recover amounts due from defaulting Obligors in respect of Receivables…and, in particular…procuring the exercise of all enforcement measures available concerning amounts due from defaulting Obligors, which would customarily be exercised by a beneficial owner of such Receivables…." B012, B014 (§ 3.3.1(p)).

Pursuant to section 6.1.11 of the Servicing Agreement, PSTL agreed to hold in trust for the benefit of Flex Jersey and remit to a "Collections Account" any payments that PSTL may receive directly from any obligor. B037 (§ 6.1.11).

The Servicing Agreement provides that the "servicing arrangements" set forth therein "shall operate as a full discharge of any of [Flex Jersey's] duties and obligations in respect of the Receivables hereunder that are so delegated." B011 (§ 2.2.2).

Pursuant to sections 4.1, 4.2, and 4.3 of the Servicing Agreement, PSTL is entitled to fees for its servicing activities under the Servicing Agreement. B020-21.

5

Pursuant to section 8.1 of the Servicing Agreement, PSTL agreed to indemnify Flex Jersey from and against any losses relating to or arising from, among other things, (i) any failure of PSTL to perform its duties, covenants, or other obligations in accordance with the provisions of the Servicing Agreement; and (ii) "any dispute, claim, offset or defense…of the Obligor to the payment of any Receivable (including a defense based on such Receivable or the related Contract not being a legal, valid binding obligation of such Obligor enforceable against it in accordance with its terms)…." B047-48 (§ 8.1(c), (e)).

Flex Jersey and Flex Ltd., among others, are also parties to the RPA. B079-304. In section 8.1 of the RPA, Flex Jersey again acknowledged that PSTL has "been appointed by [Flex Jersey]" to "service and administer" the receivables subject to the Servicing Agreement. B121-22. (§ 8.1(a), (b)).

Flex Jersey ratified this action, authorized the continuation of this action commenced by PSTL as plaintiff, and has agreed to be bound by its result. B306-07 (¶¶ 3-5).

**III.   JMC Never Disputed PSTL's Ability to Enforce the Guaranty.**

Unipower knew long before this litigation that PSTL "will continue to administer the receivables as agent for Flex Jersey Limited," because PSTL sent letters informing Unipower of that fact on or around January 18, 2018 and July 10, 2019. A074 (referencing document at A077), A110.

6

At no point before this motion did JMC contend that PSTL's disclosed financing and servicing arrangement with Flex Jersey precluded PSTL from enforcing the Guaranty. To the contrary, JMC re-affirmed the Guaranty during this litigation as a basis to collect from JMC amounts that Unipower failed to pay to PSTL. JMC's corporate designee testified at his deposition that:

> if it's a bona fide invoice and for some reason, Unipower didn't pay it, ***that's what the guarantee is there for***.
>
> Q: So JMC would honor these obligations and pay for the $256,000 if that's true?
>
> A: If it's bona fide and Unipower recognizes that it is bona fide and for some reason Unipower doesn't pay it, yes.

D.I. 111 (A129-30 (Bero Tr. 196:19-197:9 (objections omitted; emphasis added))).

## **ARGUMENT**

JMC does not deny that it and Unipower failed to pay the invoices at issue in this litigation. Instead, JMC claims that it has not breached the Guaranty because, according to JMC, the invoices do not represent amounts "due and payable…to PSTL," and, consequently, PSTL has not suffered any damages due to JMC's failure to pay. Op. Br. at 2 (¶ 3), 9-10. JMC's position conflicts with the facts and the law.

The amounts at issue in this litigation are "due and payable…to PSTL" as the servicer of the debt owed by JMC. The amounts at issue are "due and payable…to PSTL" because Flex Jersey appointed PSTL to collect those amounts, and PSTL

7

agreed to do so. By failing to pay the amounts "due and payable…to PSTL," JMC has breached the plain language of the Guaranty.

JMC would have the Court interpret the Guaranty's phrase "payable…to PSTL" to mean only "payable…to PSTL as the owner of the debt." JMC's restrictive interpretation is inappropriate; it would render the Guaranty meaningless, contrary to the parties' plain intent. If JMC's interpretation of its Guaranty were accepted, no amounts would ever be "payable…to PSTL" under the Guaranty since PSTL assigns its receivables to Flex Jersey the moment they arise. *See* Op. Br. at 3-6. JMC's interpretation would render the Guaranty a nullity, contrary to Delaware law that requires the Court to interpret a contract so as to give effect to its terms. *See, e.g.*, *Intercept Pharma., Inc. v. Fiorucci*, 277 F. Supp. 3d 678, 686 (D. Del. 2017) ("Delaware law states that contractual language should be interpreted in a way that gives effect to all terms…."). And it is clear from the deposition of JMC's corporate representative that JMC of course did not understand the Guaranty to be a complete nullity, but rather as creating enforceable, contractual payment obligations. He testified:

> if it's a bona fide invoice and for some reason, Unipower didn't pay it, ***that's what the guarantee is there for***.
>
> Q: So JMC would honor these obligations and pay for the $256,000 if that's true?
>
> A: If it's bona fide and Unipower recognizes that it is bona fide and for some reason Unipower doesn't pay it, yes.

8

D.I. 111 (A129-30 (Bero Tr. 196:19-197:9 (objections omitted; emphasis added))). Indeed, sophisticated parties do not enter into guarantees thinking that nothing will be guaranteed. Interpreting "payable…to PSTL" to include all amounts payable to PSTL in any capacity (regardless of whether PSTL has separately agreed to then pay that money to someone else) gives meaning to the Guaranty's plain language, consistent with the parties' clear intent.[2]

Numerous cases, including from this Court, have held that a debt servicer such as PSTL is the real party in interest in a collection action such as this one. *See, e.g.*, *U.S. Bank Nat'l Ass'n v. Gunn*, 31 F. Supp. 3d 636, 639 (D. Del. 2014) (agreeing that "a servicer is a real party in interest with standing in cases where the loan serviced by the servicer is the subject of litigation"); *CWCapital Asset Mgmt., LLC v. Chi. Props., LLC*, 610 F.3d 497, 500-01 (7th Cir. 2010) ("The servicer is much like an assignee for collection, who must render to the assignor the money collected by the assignee's suit on his behalf…but can sue in his own name…."); *Greer v. O'Dell*, 305 F.3d 1297, 1302 (11th Cir. 2002) ("[T]he sole issue before us is whether a loan servicer is a 'real party in interest' with standing to conduct, through licensed

---

[2] The MSA also contains Unipower's acknowledgement and agreement that PSTL may assign, sell or, transfer to a third party lender PSTL's rights to receive payments due to it under the MSA. A056 (§ 14.0).

9

counsel, the legal affairs of the investor relating to the debt that it services. We answer this question in the affirmative.").

PSTL's status as servicer to whom JMC's debt is payable is clear. Flex Jersey gave PSTL broad authority to "carry out all servicing and collection functions." B012 (§ 3.1.1). PSTL has "full power and authority to do any and all things in connection with such servicing and collection functions, which it may deem necessary or desirable." B012 (§ 3.1.3). And PSTL agreed to endeavor "at its own expense to recover amounts due from defaulting Obligors…and, in particular…, procur[e] the exercise of all enforcement measures available concerning amounts due from defaulting Obligors." B014 (§ 3.3.1(p)). Consequently, PSTL has a contractual obligation to collect from JMC the amounts owing under the invoices at issue and remit collections to Flex Jersey. B010-15, B037 (§§ 2, 2.2.2, 3.1, 3.3.1, 6.1.11).

PSTL has also suffered direct injury as a result of JMC's failure to pay because PSTL has incurred considerable cost at its own expense to pursue collection of the amounts owed by JMC, including attorneys' fees in this litigation. At the same time, failure to pursue JMC would expose PSTL to potential contractual liability to Flex Jersey. And JMC's failure to pay the amounts owing has diminished the potential servicing fee payable to PSTL because PSTL (or its parent, Flex) is entitled to

servicing fees that include any collections beyond what Flex Jersey is required to pay to others in accordance with various agreements. *See* B021 (§ 4.3).

JMC's concern that "payment of the invoices to PSTL does not extinguish Flex Jersey's right to collect" is misplaced. Op. Br. at 10 (emphasis omitted). Flex Jersey delegated all of its servicing and collection duties to PSTL. B011 (§ 2.2.2). PSTL must remit any collections to Flex Jersey pursuant to the terms of the parties' agreements. B037 (§ 6.1.11). And Flex Jersey ratified PSTL's continuation of this action and agreed to be bound by its result. B306-07. Thus, while it was never the case that Flex Jersey might also collect the amounts at issue in this litigation a second time through a separate lawsuit, the impossibility of that has now been formalized. *See ICON Group, Inc. v. Mahogany Run Dev. Corp.*, 829 F.2d 473, 477 (3d Cir. 1987) ("[R]atification has *res judicata* effect on ratifying parties….").

For these reasons, JMC is in breach of its obligations under the Guaranty, and JMC's motion for summary judgment should be denied.

[*Remainder of Page Intentionally Blank*]

## **CONCLUSION**

For the foregoing reasons, PSTL respectfully requests that the Court deny Defendant's motion for summary judgment and grant PSTL such other relief as may be just and proper.

|  |  |
|---|---|
|  | /s/ William M. Alleman, Jr. |
|  | William M. Alleman, Jr. (No. 5449) |
|  | **BENESCH, FRIEDLANDER,** |
|  | **COPLAN & ARONOFF LLP** |
| Of Counsel: | 1313 N. Market Street, Suite 1201 |
| Andrew J. Jarzyna (*pro hac vice*) | Wilmington, DE 19801-1611 |
| **BENESCH, FRIEDLANDER,** | Phone: (302) 442-7010 |
| **COPLAN & ARONOFF LLP** | Email: walleman@beneschlaw.com |
| 71 South Wacker Drive, Suite 1600 |  |
| Chicago, Il 60606 |  |
| Phone: (312) 212-4950 | *Attorneys for Plaintiff Power Systems* |
| Email: ajarzyna@beneschlaw.com | *Technologies, Ltd.* |

Dated: October 6, 2021

## **CERTIFICATE OF COMPLIANCE**

Pursuant to the Court's November 6, 2019 Standing Order, I hereby confirm that this brief complies with the type and number limitations set forth in the Standing Order.  I certify that this document contains 2,521 words, which were counted using the word count feature of Microsoft Word, in 14-pt Times New Roman font.  The word count does not include the cover page, tables, or the counsel block.

|  |  |
|---|---|
|  | /s/   William M. Alleman, Jr.<br>William M. Alleman, Jr. (No. 5449)<br>**BENESCH, FRIEDLANDER,**<br>      **COPLAN & ARONOFF LLP** |
| Of Counsel:<br>Andrew J. Jarzyna (*pro hac vice*)<br>**BENESCH, FRIEDLANDER,**<br>      **COPLAN & ARONOFF LLP**<br>71 South Wacker Drive, Suite 1600<br>Chicago, Il 60606<br>Phone: (312) 212-4950<br>Email:  ajarzyna@beneschlaw.com | 1313 N. Market Street, Suite 1201<br>Wilmington, DE 19801-1611<br>Phone: (302) 442-7010<br>Email:  walleman@beneschlaw.com<br><br>*Attorneys for Plaintiff Power Systems Technologies, Ltd.* |

Dated:  October 6, 2021

## CERTIFICATE OF SERVICE

I, William M. Alleman, Jr., hereby certify that on October 13, 2021, a true and correct copy of the foregoing public version of *Plaintiff's Opposition to Defendant's First Motion for Summary Judgment (Contending There Is No Breach)* was served upon the following via e-mail:

John W. Shaw (No. 3362)
David M. Fry (No. 5486)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th
Floor Wilmington, DE 19801

*Attorneys for Defendant*


    */s/ William M. Alleman, Jr.*
William M. Alleman, Jr. (I.D. No. 5449)