IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| POWER SYSTEMS TECHNOLOGIES, LTD., | ) ) **Redacted - Public Version** |
| Plaintiff, | ) ) C.A. No. 20-016-CFC |
| v. | ) ) ) |
| JMC PLATFORM FUND I-A, L.P., | ) ) |
| Defendant. | ) |

### DEFENDANT'S REPLY BRIEF IN SUPPORT OF ITS FIRST MOTION FOR SUMMARY JUDGMENT (NO BREACH)

John W. Shaw (No. 3362)
David M. Fry (No. 5486)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
dfry@shawkeller.com
*Attorneys for Defendant*

Dated: October 27, 2021

## Table of Contents

Table of Authorities ................................................................................................ ii

Preliminary Statement ............................................................................................. 1

Argument ................................................................................................................. 3

    I.    PSTL's additional documents are inadmissible and support JMC's motion. ............................................................................................ 3

    II.   PSTL's status as a debt servicer is irrelevant. ............................................ 5

    III.  The Court should not rewrite the Guaranty as PSTL suggests ................... 7

    IV.  PSTL suffered no damages because JMC did not breach any payment obligations under the Guaranty. ................................................ 10

Conclusion ............................................................................................................ 11

i

## Table of Authorities

**Cases**                                                                                                                                       **Page(s)**

*Bacon v. Avis Budget Grp., Inc.*,
  959 F.3d 590 (3d Cir. 2020) ................................................................................. 3, 4

*CWCapital Asset Mgmt., LLC v. Chi. Props., LLC*,
  610 F.3d 497 (7th Cir. 2010) ..................................................................................... 5

*Eagle Indus. v. DeVilbiss Health Care*,
  702 A.2d 1228 (Del. 1997) ........................................................................................ 7

*Greer v. O'Dell*,
  305 F.3d 1297 (11th Cir. 2002) ................................................................................. 6

*JFE Steel Corp. v. ICI Ams., Inc.*,
  797 F. Supp. 2d 452 (D. Del. 2011) ........................................................................... 6

*LC Assocs. v. Pensignorkay, Inc.*, C.A. No. 98-3531,
  1996 U.S. Dist. LEXIS 4272 (E.D. Pa. Mar. 29, 1996) ............................................. 3

*Lerman v. Joyce Int'l, Inc.*,
  10 F.3d 106 (3d Cir. 1993) ......................................................................................... 6

*Schaub v. Geico Ins. Co.*, C.A. No. 14-5570 (MAS)(LHG),
  2015 U.S. Dist. LEXIS 69567 (D.N.J. May 29, 2015) ............................................. 6

*U.S. Bank Nat'l Ass'n v. Gunn*,
  31 F. Supp. 3d 636 (D. Del. 2014) ............................................................................. 5

*United Rentals, Inc. v. Ram Holdings, Inc.*,
  937 A.2d 810 (Del. Ch. 2007) .................................................................................... 9

**Rules**                                                                                                                                      **Page(s)**

Fed. R. Civ. P. 56(c)(2) ................................................................................................ 3

Fed. R. Evid. 901(b)(1) ................................................................................................ 3

**Preliminary Statement**

PSTL does not contest that it assigned the amounts at issue to Flex Jersey as of the date of the invoices or that the amounts at issue are now due and payable to Flex Jersey. Nor does PSTL contest that the Guaranty limits JMC's obligations to amounts "due and payable by Unipower . . . to PSTL[.]"

PSTL claims instead that it is authorized to service Unipower's debt to Flex Jersey. But PSTL did not sue Unipower, and PSTL's status as Flex Jersey's debt servicer is not the issue. The issue is whether PSTL can enforce a Guaranty that expressly limits JMC's obligations to amounts "due and payable by Unipower . . . to PSTL[.]" The question under the Guaranty is thus who owns the receivables, and no one disputes that the owner is Flex Jersey. JMC has no obligation to pay <u>any</u> amounts owed to Flex Jersey under the Guaranty, regardless of who the plaintiff is.

PSTL argues that JMC's analysis is "incomplete" based on two unsigned, unauthenticated documents.[1] These documents are inadmissible and the Court should disregard them. But even if the Court considers them, both confirm that Flex Jersey holds full, unencumbered title to the receivables at issue. And neither changes the undisputed facts: the Guaranty only obligates JMC to pay amounts owed to PSTL, and PSTL irrevocably assigned all right, title, and interest in the Unipower

---

[1] JMC will refer to the Third Amended and Restated Servicing Agreement as the "Servicing Agreement" (B002) and the Fourth Amended and Restated Receivables Purchase Agreement as the "Purchase Agreement" (B079).

receivables to Flex Jersey. Thus, any amounts due by Unipower are—and always have been—due and payable to Flex Jersey, not to PSTL.

PSTL claims—with no evidence—that JMC's "restrictive interpretation" of the Guaranty is contrary to the parties' intent. But the Guaranty is clear and unambiguous on its face, and the Flex Jersey agreements are dated September 2014—more than three years before PSTL and JMC entered into the Guaranty. The Guaranty does not include language covering PSTL's successors and assigns—like Flex Jersey—as Flex has done in numerous other guaranties (including one between PSTL and JMC for another PSTL customer). Nor is there any indication that JMC was aware of Flex's internal machinations and tax-avoidance structures during the negotiation process, as PSTL never disclosed any of this information to JMC. PSTL's failure to ensure coverage for amounts assigned to other Flex entities is a problem of PSTL's own making, and it provides no basis for the Court to rewrite the Guaranty to expand JMC's payment obligations to include amounts due and payable to Flex Jersey.

Because JMC did not breach its payment obligations under the Guaranty, PSTL has suffered no damages from JMC's alleged breach—including the speculative harms claimed in PSTL's answering brief.

## Argument

### I.    PSTL's additional documents are inadmissible and support JMC's motion.

"Facts supporting summary judgment must be capable of being 'presented in a form that would be admissible in evidence.'" *Bacon v. Avis Budget Grp., Inc.*, 959 F.3d 590, 603 (3d Cir. 2020) (quoting Fed. R. Civ. P. 56(c)(2)). "Authenticating evidence under Federal Rule of Evidence 901 may be satisfied by testimony of a witness with personal knowledge 'that an item is what it is claimed to be.'" *Id.* (quoting Fed. R. Evid. 901(b)(1)); *see also LC Assocs. v. Pensignorkay, Inc.*, C.A. No. 93-3531, 1996 U.S. Dist. LEXIS 4272, at *6 (E.D. Pa. Mar. 29, 1996) (noting that an "unsigned draft of the 'Agreement,' being neither properly identified nor authenticated, is inadmissible under [Rule] 901").

The Servicing Agreement and the Purchase Agreement are facially inauthentic. Neither includes a signature page or attestation. (B069 ("This Third Amended and Restated Servicing Agreement was duly executed in its original form by each of the original parties to it."); B162 ("This Fourth Amended and Restated Receivables Purchase Agreement was duly executed in its original form by each of the original parties to it.")). Moreover, the Servicing Agreement is a schedule to another agreement that is not in the record—a fact that PSTL neither acknowledges nor explains. (B002 (referring to the Servicing Agreement as "SCHEDULE 2" of an undisclosed agreement)).

PSTL submitted a sworn declaration from someone who could have authenticated these documents, but the declaration failed to do so. (B306). Mr. Hollywood (who was never identified in PSTL's initial disclosures) is "a Director of Flex Jersey Limited" and claims to be "competent to testify as to the matters" set forth in his declaration (*id.*), but offers no testimony on whether these documents are the authentic agreements that PSTL claims them to be. The only attempted authentication is by an associate attorney at PSTL's outside law firm, a person not competent to authenticate any PSTL document—now or at trial. Given all these failures, the documents are inadmissible and the Court should disregard them. *Bacon*, 959 F.3d at 603.

If the Court considers these inadmissible documents, both confirm that the Unipower receivables are due and payable to Flex Jersey:

- Servicing Agreement, § 5.1.25: "Upon each purchase of Receivables, the Jersey SPV shall have acquired <u>full legal, valid and enforceable ownership</u>, free of any other interest . . . ." (B026 (emphasis added).

- Servicing Agreement, § 6.1.11: PSTL agreeing that "it will itself hold or, if applicable, will cause such payments to be <u>held in trust for the exclusive benefit</u> of the Jersey SPV and its assigns." (B037 (emphasis added)).

- Servicing Agreement, § 6.1.25: PSTL agreeing to "include a statement in each invoice sent to any Obligor in respect of any Receivable the subject of any sale" stating that PSTL "'*has transferred all its right, title and interest in the receivable under this invoice to Flex Jersey Limited.*" (B041 (italics in original)).

- Servicing Agreement, § 6.2.5: PSTL agreeing that "[i]t will not . . . account for or treat . . . the transactions contemplated hereby <u>in any manner other than the sale and/or contribution and absolute assignment of the Receivables . . . to the Jersey SPV</u>[.]" (B044-45 (emphasis added)).

- Purchase Agreement, § 5.2(f): "The Jersey SPV is <u>the legal and beneficial owner of the Receivables and Related Security and Collections</u> with respect thereto, free and clear of any Adverse Claim (other than Permitted Claims)." (B107 (emphasis added)).

## II. PSTL's status as a debt servicer is irrelevant.

PSTL does not dispute that that the amounts at issue have been due and payable to Flex Jersey since the date of the invoices. For this reason, PSTL's focus on the "real party in interest" requirement is misplaced. JMC has no financial obligations for amounts due and payable to Flex Jersey <u>at all</u>—regardless of who the plaintiff is.

In each of the servicer cases cited by PSTL, the issue was whether the servicer could appear in its own name to pursue collection of the debt that is the subject of the litigation. *U.S. Bank Nat'l Ass'n v. Gunn*, 31 F. Supp. 3d 636, 639 (D. Del. 2014) (noting the issue as whether "a loan servicer is a real party in interest with standing in cases where the loan serviced by the servicer is the subject of litigation"); *CWCapital Asset Mgmt., LLC v. Chi. Props., LLC*, 610 F.3d 497, 499 (7th Cir. 2010) ("This appeal in a dispute over a commercial mortgage requires us to decide whether the plaintiff is entitled to bring this suit in its own name" against "a commercial landlord and the mortgagor[,]" the "guarantors of the mortgage loan[,]" and the

landlord's "former tenants"); *Greer v. O'Dell*, 305 F.3d 1297, 1299 (11th Cir. 2002) ("At issue in this case is whether a loan servicer may appear in Bankruptcy Court to protect a claim relating to the debt that it services.").

This is not litigation brought by PSTL against Unipower to collect Unipower's debt to Flex Jersey, and PSTL made the choice not to collect from Unipower directly (as it could have done under the MSA). (A057-58, § 17). This case involves a different set of facts: whether PSTL can collect <u>from JMC</u> Unipower's debt <u>to Flex Jersey</u>, when JMC never agreed to guarantee such a debt. Under these circumstances, "'the act of assignment itself extinguishes all of the assignor's rights in everything that is being assigned.'" *Schaub v. Geico Ins. Co.*, C.A. No. 14-5570-MAS-LHG, 2015 U.S. Dist. LEXIS 69567, at *6-7 (D.N.J. May 29, 2015) (citation omitted); *see also JFE Steel Corp. v. ICI Ams., Inc.*, 797 F. Supp. 2d 452, 465 (D. Del. 2011) (noting Third Circuit law stating that "assignments extinguish assignor's right to assert legal claims") (citing *Lerman v. Joyce Int'l, Inc.*, 10 F.3d 106, 112-13 (3d Cir. 1993)).

For the same reason, PSTL's purported "ratification" is irrelevant. Flex Jersey is not a party to the Guaranty, and it has no authority to alter the scope of JMC's contractual payment obligations to PSTL.

### III. The Court should not rewrite the Guaranty as PSTL suggests.

PSTL correctly notes that "PSTL assigns its receivables to Flex Jersey the moment they arise[,]" but draws the wrong conclusion from this undisputed fact—claiming that "JMC's restrictive interpretation is . . . contrary to the parties' plain intent." (D.I. 120 at 8). But the language of the Guaranty is clear and unambiguous on its face. *Eagle Indus. v. DeVilbiss Health Care*, 702 A.2d 1228, 1232 (Del. 1997) ("If a contract is unambiguous, extrinsic evidence may not be used to interpret the intent of the parties . . . .").

If PSTL wanted to ensure that JMC's guaranty of Unipower's obligations flowed to PSTL's successors and assigns, it could have easily accomplished this—just as Flex did in numerous other guaranties. (*See, e.g.*, C001, § 1.1; C006, § 1.1; C010, § 1.1).[2] In fact, PSTL and JMC entered into a guaranty during the same timeframe for a different PSTL customer (Civiq), which contains language that would have accomplished PSTL's desired result here:

---

[2] PSTL produced dozens of other guaranties with similar or identical language extending the guaranty to successors and assigns.

| **Guaranty at Issue Here** **(A067 (emphasis added))** | **Civiq Guaranty** **(C006 (emphasis added))** |
|---|---|
| § 1.1: "Guarantor hereby irrevocably and unconditionally guarantees to PSTL the payment of the Guaranteed Obligations as and when the same shall be due and payable. Guarantor hereby irrevocably and unconditionally covenants and agrees that it is liable for the Guaranteed Obligations as a primary obligor." <br><br> § 1.2: "As used herein**,** the term Guaranteed Obligations means **any amount or amounts that may become due and payable** by Unipower, LLC, a Delaware limited liability company ('Unipower') **to PSTL** pursuant to a bona fide invoice issued by PSTL to Unipower under, and in accordance with the terms and conditions of, the Agreement." | § 1.1: "Guarantor hereby absolutely, irrevocably and unconditionally guarantees, as primary obligor and not merely as surety or guarantor of collection, **to Flextronics and its successors and assignees** the due and punctual payment of **each amount that each Customer is or may become obligated to pay under and in accordance with the terms of the Agreement** within thirty (30) days after written notice from Flextronics to Guarantor of such default (such payment and other obligations of the Customers being herein referred to as the 'Obligations')." |

Unlike the Civiq guaranty, the Guaranty at issue here <u>does not</u> guarantee amounts due and payable to PSTL's successors and assigns. These agreements demonstrate that PSTL's public policy concerns are unfounded, as successors and assigns can easily be accounted for in the drafting process. Nor is there any evidence that JMC knew about this debt assignment structure when the parties entered into the Guaranty. PSTL has provided no basis for the Court to rewrite an agreement

between PSTL and JMC based on information that was within PSTL's sole possession when the Guaranty was drafted.[3]

Likewise, the subjective understanding of the Guaranty by Mr. Bero is not probative of contractual meaning. *See United Rentals, Inc. v. Ram Holdings, Inc.*, 937 A.2d 810, 835 (Del. Ch. 2007) ("the private, subjective feelings of the negotiators are irrelevant and unhelpful to the Court's consideration of a contract's meaning"). In addition, while PSTL refers to Mr. Bero as "JMC's corporate designee," PSTL's improper contention questions were outside the scope of PSTL's 30(b)(6) notice—a fact made clear in the objections omitted by PSTL:

- "Objection to form and outside the scope." (D.I. 90, A128 at 195:23-24).

- "Same objections and calls for a party's contentions." (*Id.*, A129 at 196:8-9).

- "Same objections." (*Id.*, A129-30 at 196:15, 196:22, 197:5).

Last, PSTL wrongly claims that "[a]t no point before this motion did JMC contend that PSTL's disclosed financing and servicing arrangement with Flex Jersey precluded PSTL from enforcing the Guaranty." (D.I. 120 at 7). JMC made its position clear in its interrogatory responses:

> In addition, JMC is not aware of any amount "due and payable by Unipower, LLC . . . to PSTL" as required by section 1.2. The invoices issued to Unipower state that "Power Systems Technologies Ltd. has assigned all its right, title and interest in the

---

[3] Nor has PSTL brought or proven a claim for reformation of the Guaranty.

>receivable under this invoice to Flex Jersey Ltd." Thus, there are no "Guaranteed Obligations" because there are no amounts "due and payable . . . to PSTL."

(C027).

### IV. PSTL suffered no damages because JMC did not breach any payment obligations under the Guaranty.

PSTL claims to have "suffered direct injury as a result of JMC's failure to pay[,]" citing its costs and fees in this action, "potential contractual liability to Flex Jersey[,]" and a "diminished . . . potential servicing fee payable to PSTL[.]" (D.I. 120 at 10). But PSTL made a tactical choice to sue under the Guaranty instead of following the MSA's dispute resolution process against Unipower (presumably because of the Guaranty's fee-shifting provision). Moreover, all of PSTL's claimed harms are predicated on JMC failing to satisfy its payment obligations under the Guaranty. If JMC did not breach, then PSTL has no contractual right to recover fees, expenses, or anything else from JMC.

PSTL's claimed harms are also speculative, as PSTL has cited no evidence that JMC has done anything to create "potential contractual liability to Flex Jersey" or "diminished the potential servicing fee payable to PSTL[.]" (*Id.*). In fact, PSTL does not even claim that <u>PSTL</u> is entitled to any servicing fee at all, noting in a parenthetical that any fee might be owed to "[PSTL's] parent, Flex[.]" (*Id.*).

## Conclusion

The facts are straightforward and undisputed: JMC is only obligated to pay amounts due and payable "to PSTL"; the amounts at issue are not due and payable to PSTL; thus, JMC has not breached its payment obligations under the Guaranty and PSTL has suffered no damages from any alleged breach. If PSTL wanted the Guaranty to cover any amounts due and payable by Unipower to any person under the MSA, then it should have drafted the Guaranty accordingly. PSTL chose not to do so, and JMC should not be penalized for PSTL's failure to account for the implications of Flex's internal tax-avoidance structures.

Dated: October 27, 2021

/s/ David M. Fry
John W. Shaw (No. 3362)
David M. Fry (No. 5486)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
dfry@shawkeller.com
*Attorneys for Defendant*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to the Court's November 6, 2019 Standing Order, I hereby confirm that this brief complies with the type and number limitations set forth in the Standing Order. I certify that this document contains 2,500 words, which were counted using the word count feature in Microsoft Word, in 14-point Times New Roman font. The word count does not include the cover page, tables, or the counsel blocks.

*/s/ David M. Fry*
John W. Shaw (No. 3362)
David M. Fry (No. 5486)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawekeller.com
dfry@shawkeller.com
*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I, David M. Fry, hereby certify that on October 27, 2021, this document was served on the persons listed below in the manner indicated:

**BY EMAIL**

William M. Alleman, Jr.
BENESCH, FRIEDLANDER, COPLAN
  & ARONOFF LLP
1313 N. Market Street, Suite 1201
Wilmington, DE 19801
(302) 442-7010
walleman@beneschlaw.com

Andrew J. Jarzyna
BENESCH, FRIEDLANDER, COPLAN
  & ARONOFF LLP
71 South Wacker Drive, Suite 1600
Chicago, IL 60606
(312) 212-4950
ajarzyna@beneschlaw.com

*/s/ David M. Fry*
John W. Shaw (No. 3362)
David M. Fry (No. 5486)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
dfry@shawkeller.com
*Attorneys for Defendant*