IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| POWER SYSTEMS TECHNOLOGIES, LTD., <br><br> Plaintiff, <br><br> v. <br><br> JMC PLATFORM FUND I-A, L.P., <br><br> Defendant. | Civil Action No. 20-16-CFC |

## MEMORANDUM ORDER

Plaintiff Power Systems Technology LTD. (PSTL) has sued Defendant JMC Platform Fund I-A, L.P. to collect payment under a guaranty agreement. D.I. 29. Pending before me are JMC's First Motion for Summary Judgment (No Breach), D.I. 92, and JMC's Second Motion for Summary Judgment (Lack of Standing), D.I. 96. Because both motions are predicated on the same theory, I will address them together here.

I.   BACKGROUND

The following facts are undisputed. Unipower, LLC and PSTL entered into an Agreement for Manufacturing Services (MSA) effective July 15, 2016. D.I. 123 ¶ 1. On December 5, 2017, PSTL and JMC entered into a second amended guaranty agreement, under which JMC is liable for the Guaranteed Obligations.

D.I. 123 ¶¶ 2, 3. The Guaranteed Obligations are any amount "due and payable by Unipower . . . to PSTL pursuant to a bona fide invoice issued by PSTL to Unipower under, and in accordance with" the MSA. D.I. 123 ¶ 4. PSTL assigned all rights, titles, and interests in any amounts due and payable by Unipower to Flex Jersey Limited. D.I. 123 ¶ 6. PSTL has now sued JMC under the guaranty agreement to collect the payment that PSTL alleges Unipower failed to make within 30 days of notice of default. D.I. 29.

## II. LEGAL STANDARDS

### A. Summary Judgment

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those "that could affect the outcome" of the proceeding. *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011). "[A] dispute about a material fact is genuine if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party." *Id.* (internal quotation marks omitted). A non-moving party asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, . . . admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the

opposing party] do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1). The non-moving party's evidence "must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460–61 (3d Cir. 1989).

## III. DISCUSSION

JMC's two motions are both based on the same underlying theory: PSTL's assignment of its interest in receivables to Flex Jersey extinguished PSTL's ownership interest in those invoices. D.I. 94 at 2; D.I. 97 at 1. In its first summary judgment motion, JMC argues that PSTL's claims are not for amounts due and payable to PSTL as required by the guaranty agreement with JMC, so no reasonable factfinder could find that JMC breached its contract with PSTL. D.I. 94 at 2. In its second summary judgment motion, JMC argues that PSTL's assignment extinguished any claims PSTL had to the receivables, so PSTL has no standing to sue. D.I. 97 at 1.

In response, PSTL offers additional documents detailing a servicer agreement between PSTL and Flex Jersey. *See generally* D.I. 123. PSTL argues that these documents show (1) that PSTL has standing to sue to collect the receivables on Flex Jersey's behalf, D.I. 122 at 2, and (2) that JMC has breached the guaranty agreement because PSTL may enforce the agreement as Flex Jersey's

3

servicer, D.I. 120 at 2. JMC disputes the authenticity of PSTL's additional documents. D.I. 140 at 1–4; D.I. 142 at 1–4.

A. **Authenticity of PSTL's Documents**

"Facts supporting summary judgment must be capable of being 'presented in a form that would be admissible in evidence.'" *Bacon v. Avis Budget Grp., Inc.*, 959 F.3d 590, 603 (3d Cir. 2020) (quoting Fed. R. Civ. P. 56(c)(2)). "To satisfy the requirement of authenticating . . . evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). JMC argues that the two documents produced by PSTL are "facially inauthentic" because neither "includes a signature page or attestation." D.I. 140 at 3. Further, JMC faults PSTL for its "attempted authentication" by "an associate attorney at PSTL's outside law firm" because the attorney is "not competent to authenticate any PSTL document—now or at trial." D.I. 140 at 4.

But the Third Circuit has "repeatedly noted that the burden of proof for authentication is slight." *Lexington Ins. Co. v. W. Pennsylvania Hosp.*, 423 F.3d 318, 328 (3d Cir. 2005) (internal quotation marks and original alterations omitted). "The showing of authenticity is not on a par with more technical evidentiary rules, such as hearsay exceptions, governing admissibility. *Rather, there need be only a prima facie showing, to the court, of authenticity, not a full argument on*

4

*admissibility.*" *Id.* at 329 (internal quotation marks omitted; original emphasis). And the Third Circuit has found that circumstantial evidence, such as a document being produced pursuant to discovery requests, can create a "sufficient foundation for a jury to determine that th[e] document is what it is purported to be." *Id.*

PSTL's additional documents (titled "Third Amended and Restated Servicing Agreement" and "Fourth Amended and Restated Servicing Agreement") appear to be documents PSTL produced to JMC in response to JMC's request for production. D.I. 98-G at A113 (PSTL's response to a request for production stating that "Plaintiff is contemporaneously producing the following agreements: (1) Amended and Restated Mauritius Receivables Securitisation Agreement, (2) Third Amended and Restated Servicing Agreement, and (3) Fourth Amended and Restated Servicing Agreement"). Tellingly, JMC does not argue that these documents are different than the ones PSTL produced in discovery but only that PSTL should have had someone else attest to the documents' authenticity. D.I. 140 at 4. I find that there is a *prima facie* showing of authenticity based on the contents of the documents and the circumstances of their production. *See* Fed. R. Evid. 901(b)(4) ("[A]ppearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances" can establish authenticity.); *see also McQueeney v. Wilmington Tr. Co.*, 779 F.2d 916, 929 (3d Cir. 1985) ("[T]he fact that the copies [of the records] were produced

by the plaintiff in answer to an explicit discovery request for his Sea Service Records, while not dispositive on the issue of authentication, is surely probative."). I thus consider these documents when adjudicating the present motions to dismiss.

**B.    Standing**

Article III of the Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559 (1992). Standing is "an essential and unchanging part" of this case-or-controversy requirement. *Id.* at 560. "Only a party with standing can invoke the jurisdiction of the federal courts." *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014). To have standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). The personal injury must be "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal quotation marks and citations omitted).

JMC argues that PSTL has not suffered injury in fact because it assigned its interest in its receivables to Flex Jersey. D.I. 97 at 8. But the agreement between Flex Jersey and PSTL is not as simple as JMC suggests because PSTL is Flex Jersey's local servicer. *See* D.I. 98-A at A003 ¶ 3 (identifying PSTL as the local

6

servicer of certain receivables); D.I. 123-1 at B009 § 1.2 ("'Local Servicer' means each Originator . . . ."); D.I. 123-1 at B011 § 2.21 ("[E]ach of the Originators agrees to act[] as a Local Servicer . . . ."). As the local servicer, PSTL is obligated to pursue collection of its original receivables. *See* D.I. 98-A at A004 ¶ D (providing that local servicer "will procure . . . the collection of all Collections in respect of the Receivables"); D.I. 123-1 at B012 § 3.1.1 ("[T]he Servicers shall carry out all servicing and collection functions in relation to the Receivables . . . ."); D.I. 123-1 at B012 § 3.1.3 ("[E]ach Local Servicer shall have full power and authority to do any and all things in connection with such servicing and collection functions . . . ."); D.I. 123-1 at B014 § 3.3.1(p) (Local Servicer functions include "endeavouring, at its own expense[,] to recover amounts due from faulting Obligors in respect of Receivables . . . .").

The Seventh Circuit has held that a "servicer is much like an assignee for collection, who must render to the assignor the money collected by the assignee's suit on his behalf (minus the assignee's fee) but can sue in his own name." *CWCapital Asset Mgmt., LLC v. Chicago Properties, LLC*, 610 F.3d 497, 500 (7th Cir. 2010). *CWCapital* explained that "[t]here is no doubt about Article III standing in this case; though the plaintiff may not be an assignee, it has a personal stake in the outcome of the lawsuit because it receives a percentage of the proceeds of a defaulted loan that it services." *Id.* at 501; *see also Greer v. O'Dell*, 305 F.3d

7

1297, 1303 (11th Cir. 2002) (finding that a loan servicer has standing to conduct the legal affairs of the investor relating to the debt that it services because servicer was obligated "to collect payments[] and to perform administrative services with respect to the claim" and because servicer's economic interest was directly affected as it was "entitled to a fee with respect to amounts it collected").

As in *CWCapital*, the delegation of authority to PSTL in connection with its servicing agreement is comprehensive, *see* D.I. 123-1 at B012 § 3.1.3, and PSTL has a financial interest in collecting the receivable, *see* D.I. 123-1 at B020 § 4.1 ("[E]ach Local Servicer will be entitled to a servicing fee . . . ."); *see also* D.I. 123-1 at B021 § 4.3 ("Any Collections received . . . which are not required to be utilized . . . shall constitute an additional servicing fee payable . . . to the Originators, as Local Servicers . . . ."). Therefore, following *CWCapital* and *Greer*, I decline to find that PSTL does not have standing to sue as a result of its assignment of interests to Flex Jersey.[†]

JMC argues that PSTL's documents show that the receivables are due to Flex Jersey, but this argument does not change the standing calculus. The

---

[†] JMC cites *Lerman v. Joyce International, Inc.*, 10 F.3d 106 (3d Cir. 1993) for the proposition that "assignments extinguish assignor's right to assert legal claims." D.I. 97 at 8. But *Lerman* is inapplicable here. *Lerman* dealt with the issue of whether the right to assert a RICO claim had been expressly assigned. 10 F.3d at 112–13. The case does not address assigning rights to receivables in light of a servicing agreement as is the issue here.

8

agreement provides that the Local Servicer will remit any receivables it collects to owner of the receivable interest. D.I. 123-1 at B037 § 6.1.11. If PSTL collects any receivables as a result of this lawsuit, it may have to remit the collection to Flex Jersey, but it still has standing to sue. JMC also argues that this case is different from the cases cited by PSTL because PSTL is not trying to collect from Unipower but rather from JMC. D.I. 140 at 6. But JMC does not explain why the analysis to determine whether a servicer has standing is altered when the servicer is trying to collect from a guarantor. Thus, neither argument changes my determination to deny JMC's summary judgment motion regarding standing.

### C. Breach

JMC argues that it has not breached "its obligation to PSTL to pay 'Guaranteed Obligations' because any amounts 'due and payable by Unipower' are owed to Flex Jersey—not to PSTL." D.I. 94 at 10. JMC explains that "the Guaranty at issue here does not guarantee amounts due and payable to PSTL's successors and assigns." D.I. 142 at 11. But JMC's contract interpretation would require reading additional provisions into the contract. The guaranty agreement requires that JMC "pay the amount due on the Guaranteed Obligations to PSTL." D.I. 95-C at A067 § 1.4. A Guaranteed Obligation is "any amount . . . due and payable by Unipower . . . to PSTL . . . ." D.I. 95-C at A067 § 1.2. Even after PSTL's assignment to Flex Jersey, PSTL, as the servicer, is obligated to collect its

9

receivables. *See* D.I. 121-1 at B014 § 3.3.1(p). PSTL then must remit any collection on the receivables. *See* D.I. 121-1 at B037 § 6.1.11. The guaranty agreement does not prohibit PSTL from collecting as a servicer for Flex Jersey nor does it require that PSTL collect the receivable with no intention of remitting the payment. Thus, PSTL's assignment to Flex Jersey does nothing to extinguish JMC's obligations under the guaranty agreement. I decline to read additional terms into the contract. *See Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.*, 702 A.2d 1228, 1232 (Del. 1997) ("Contract terms themselves will be controlling when they establish the parties' common meaning so that a reasonable person in the position of either party would have no expectations inconsistent with the contract language.").

Finally, JMC's concerns that it might be liable again to Flex Jersey after paying PSTL, D.I. 94 at 9, are unfounded. Flex Jersey has delegated collection obligations to PSTL, and PSTL must remit any collections. *See* D.I. 121-1 at B012 § 3.1.3, B037 § 6.1.11. Thus, I decline to make a finding that, as a matter of law, JMC did not breach the contract.

## IV. CONCLUSION

NOW THEREFORE, at Wilmington this Twenty-seventh day of December in 2021, **IT IS HEREBY ORDERED** that JMC's First Motion for Summary

10

Judgment (No Breach) (D.I. 92) and JMC's Second Motion for Summary Judgment (Lack of Standing) (D.I. 96) are **DENIED**.

                                                 _____
                                                           United States District Judge